The Honorable Marsha J. Pechman

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

| | |
|---|---|
| RYAN KARNOSKI, *et. al*, | Case No: 2:17-cv-1297-MJP |
| Plaintiffs, | |
| v. | STATE OF WASHINGTON'S STATEMENT IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |
| DONALD TRUMP, *et. al.*, | |
| Defendants. | |

STATE OF WASHINGTON,

*Intervenor-Plaintiff,*

v.

DONALD TRUMP, *et. al.*,

*Intervenor-Defendants.*

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

1

# TABLE OF CONTENTS

2   I.   INTRODUCTION ................................................................................................ 1

3   II.  ARGUMENT ..................................................................................................... 1

4        A.   Relevant Procedural History .................................................................. 1

5        B.   The State Will Suffer Irreparable Harm if This Court Does Not Issue a
              Preliminary Injunction ........................................................................... 2
6
             1.   Washington would suffer irreparable injury if its residents continue to be
7                 subjected to the Ban ........................................................................ 3

8            2.   Washington would suffer irreparable harm to its proprietary interests if
                  Defendants are not enjoined from continuing the Ban ....................... 4
9
             3.   Washington would suffer irreparable harm to its sovereign interests if
10                Defendants are not enjoined from continuing the Ban ....................... 5

11  III. CONCLUSION ................................................................................................ 6

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592 (1982) .................. 4, 6

4

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ......................................... 2

5

*Doe v. Trump*, No. 17-1597, 2017 WL 4873042 (D.D.C. Oct. 30, 2017) ................................. 3

6

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014) ............................................. 2

7

*Elrod v. Burns*, 427 U.S. 347 (1976) ........................................................................................ 4

8

*Melendres v. Arpaio*, 695 F.3d 990

9
    (9th Cir. 2012) ....................................................................................................................... 4

10

*Rent-A-Center, Inc. v. Canyon Tel. Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991) ......... 5

11

*Small v. Avanti Health Sys., LLC*, 664 F.3d 1180 (9th Cir. 2011) ............................................. 2

12

*Washington v. Trump*, 847 F.3d 1151
    (9th Cir. 2017) ....................................................................................................................... 4

13

*Winter v. Nat'l Resources Defense Council, Inc.*, 555 U.S. 7 (2008) ......................................... 2

14

<u>Statutes</u>

15

Wash. Rev. Code § 49.60.040 .................................................................................................. 6

16

Wash. Rev. Code § 49.60.180 .................................................................................................. 6

17

Wash. Rev. Code § 49.60.010 .................................................................................................. 6

18

Wash. Rev. Code §§ 49.60.010 – 49.60.505 ........................................................................... 6

19

Wash. Rev. Code §§ 49.60.030 ................................................................................................ 6

20

<u>Other Authorities</u>

21

*How Many Adults Identify as Transgender in the United States?* 4 (2016), *available at*
    http://williamsinstitute.law.ucla.edu/wp-content/uploads/How-Many-Adults-
    Identify-as-Transgender-in-the-United-States.pdf (last visited Oct. 20, 2017) ...................... 3

22

23

24

25

26

STATE OF WASHINGTON'S STATEMENT
IN SUPPORT OF PLS.' MOT. FOR
PRELIMINARY INJUNCTION

ii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 442-4492

# I.    INTRODUCTION

Washingtonians who serve in the United States military and in the National Guard defend our national interests and protect us in times of emergencies and great need. In Washington, we particularly rely on the National Guard to provide lifesaving assistance during natural disasters and emergencies. The service members we rely upon are people who willingly put their lives, safety, and comfort on the line to serve their state and country, and include transgender individuals who serve openly or silently. Our country, our state, and the fundamental principles of equal treatment and due process are threatened and offended by the Defendants' targeting of transgender service and Guard members and transgender individuals who wish to serve in the military or Guard for disparate treatment based solely on their transgender status, gender identity, and sex – which has no bearing on an individual's fitness to serve in the military or the Guard.

The Defendants' discriminatory Transgender Military Service Ban ("Ban"), by targeting transgender Washingtonians, creates very real, imminent harms to Washington's sovereign, quasi-sovereign, and proprietary interests. To protect those interests, Washington joins the *Karnoski* Plaintiffs' Motion for Preliminary Injunction as a movant.

# II.    ARGUMENT

## A.    Relevant Procedural History

On September 14, 2017, the *Karnoski* Plaintiffs filed a Motion for Preliminary Injunction requesting this Court bar "Defendants and those acting in concert with them or subject to their control from taking any action relative to transgender individuals, pending resolution of this case that is inconsistent with the *status quo* that existed on July 25, 2017." Mot. for Prelim. Inj. at 24, ECF 32. On September 25, Washington moved to intervene to protect its sovereign, quasi-sovereign, and proprietary interests. Mot. to Intervene, ECF 55. Defendants oppose Plaintiffs' motion for preliminary relief, ECF 69, and the parties' briefing completed on November 9, ECF

STATE OF WASHINGTON'S STATEMENT
IN SUPPORT OF PLS.' MOT. FOR
PRELIMINARY INJUNCTION

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

1    90. This Court heard oral argument on Washington's Motion to Intervene on November 14 and

2    allowed Washington to intervene as of right and by permission. *See* ECF 96.

3        Washington, as Plaintiff-Intervenor, joins the pending Motion for Preliminary Injunction

4    to ensure its interests are before the Court the motion is considered. To avoid any prejudice to

5    Defendants, Washington presents no new substantive arguments in this motion, and instead

6    Washington joins in full the arguments for preliminary injunctive relief advanced by the

7    *Karnoski* Plaintiffs. Washington briefs here only why it will suffer irreparable harm absent a

8    preliminary injunction.

9    **B.    The State Will Suffer Irreparable Harm if This Court Does Not Issue a Preliminary Injunction**

10

11        A plaintiff seeking a preliminary injunction must establish that they are: (1) likely to

12   succeed on the merits; (2) likely to suffer irreparable harm in the absence of preliminary relief;

13   (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public

14   interest. *Winter v. Nat'l Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "When the

15   government is a party, these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d

16   1073, 1092 (9th Cir. 2014). Where there is a likelihood of irreparable injury and the injunction

17   would serve the public interest, a preliminary injunction should issue when serious questions

18   going to the merits are raised and the balance of hardships tips sharply in the plaintiff's favor.

19   *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Further, for purposes

20   of preliminary injunction, a plaintiff "need not prove that irreparable harm is certain or even

21   nearly certain." *Small v. Avanti Health Sys., LLC*, 664 F.3d 1180, 1191 (9th Cir. 2011). That is

22   particularly true when the practice to be enjoined has employment-related consequences as

23   "permitting an alleged unfair labor practice to reach fruition … *is* irreparable harm." *Id.* at 1191.

24

25

26

STATE OF WASHINGTON'S STATEMENT
IN SUPPORT OF PLS.' MOT. FOR
PRELIMINARY INJUNCTION

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

The Court granted Washington intervention so that it could protect its unique state interests. The same State interests that the Court considered sufficient to warrant intervention will be injured by the Ban if this Court does not issue a preliminary injunction.[1]

### 1.   Washington will suffer irreparable injury if its residents continue to be subjected to the Ban

Washington State is home to approximately 60,000 active, reserve, and National Guard members, approximately 45,000 of whom are active duty service members. Decl. L. Baker Ex. B, ECF 56-2. Each of these Washingtonians works for the military and is part of an entity that is engaging in discrimination against a distinct and politically vulnerable population. As such, each of these Washingtonians are impacted by the discriminatory Ban – regardless of whether they are transgender – because their service is governed by a policy that targets their colleagues and teaches them that the military is willing to discriminate against its own. Further, there are approximately 32,850 transgender adults living in Washington, and each and every one is currently subject to a facially discriminatory government policy that singles them out for disfavored treatment.[2] The Washington National Guard has 8,000 members. Each of these Guard members' service is impacted by the discriminatory policy just as Washington-based service members are. Mot. to Intervene at 6-8, ECF 55; Decl. D. Postman at ¶¶ 8-16, ECF 57.

The Ban also bars access to transitional related surgical care for transgender military service members who may need such medical treatment. As such, at a minimum, the Ban compromises the bodily integrity and physical well-being of transgender service members who have not already started medical treatment to transition. *See* Supplemental Jane Doe Decl. at ¶¶

---

[1] Although the district court in the District of Columbia issued a preliminary injunction in *Doe v. Trump*, No. 17-1597, 2017 WL 4873042, at *1 (D.D.C. Oct. 30, 2017), that injunction cannot be relied upon to protect Washington's interests. The *Doe* injunction could be narrowed, reversed, or vacated for circuit-specific reasons. Further, Defendants have consistently attacked the standing of the *Doe* plaintiffs and their standing could be undercut by specific factual developments. *See* Mot. to Dismiss at 20-23, *Doe*, No. 17-1597 (D.D.C. Aug. 9, 2017), ECF 45 (arguing that the plaintiffs lack standing).

[2] *See* Andrew R. Flores et al., The Williams Institute, *How Many Adults Identify as Transgender in the United States?* 4 (2016), *available at* http://williamsinstitute.law.ucla.edu/wp-content/uploads/How-Many-Adults-Identify-as-Transgender-in-the-United-States.pdf (last visited Oct. 20, 2017).

STATE OF WASHINGTON'S STATEMENT
IN SUPPORT OF PLS.' MOT. FOR
PRELIMINARY INJUNCTION

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 442-4492

3-4, ECF 92. Also, because the military has changed its policy stance, transgender Washington military service and Guard members, who may be not be serving openly, have a legitimate reason to fear repercussions if the military learns of their transgender status.

A policy that restricts employment based on immutable characteristics like sex and gender identity, restricts access to health care based on those characteristics, and causes the harms discussed above violates constitutional due process and equal protections. Such a policy also implicates the "the health and well-being—both physical and economic—of [Washington] residents." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982). Indeed, as we speak, the Ban's discriminatory practices are causing "political, social, and moral damage" that this Court should protect against by issuing a preliminary injunction. *Id*. Issuing such an injunction is well within the authority of this Court. Indeed, courts have long found that constitutional deprivation of rights, such as that suffered by Washingtonians under the Ban, is sufficient injury to sustain a finding of irreparable harm and the issuance of a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) (refusing to stay a preliminary injunction of travel ban and reaffirming that a "deprivation of constitutional rights unquestionably constitutes irreparable injury"); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (affirming that "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury'") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

### 2. Washington will suffer irreparable harm to its proprietary interests if Defendants are not enjoined from continuing the Ban

Washington's economic and proprietary interests are harmed absent a preliminary injunction. Washington collects taxes from all workers in Washington State, and, the State's tax revenue will be impacted by the loss of any military and Guard service member or advancement opportunities for Washingtonians who are transgender. Prop. Compl. at ¶ 8, ECF 55. Such losses would also have ripple effects in Washington's economy, impacting property and sales tax

STATE OF WASHINGTON'S STATEMENT
IN SUPPORT OF PLS.' MOT. FOR
PRELIMINARY INJUNCTION

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

revenues that would be contributed by transgender Washingtonian military service members and their families.[3] These reductions in Washington's tax base will negatively impact Washington's proprietary interest in its own economic health and growth.

Further, and critically, absent a preliminary injunction, Washington will be irreparably harmed because it will be forced to continue to expend its scarce resources to support a discriminatory policy when it provides funding or deploys its National Guard. Decl. of D. Postman at ¶¶ 9-13. The State is likewise harmed by policies that hinder recruitment and retention efforts. Prop. Compl. at 9; "[I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm." *Rent-A-Center, Inc. v. Canyon Tel. Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). These harms will continue as long as the Ban is in place.

### 3.    Washington will suffer irreparable harm to its sovereign interests if Defendants are not enjoined from continuing the Ban

Washington's sovereign interests in protecting its territory and maintaining its anti-discrimination laws will be harmed if Defendants are not enjoined from implementing the Ban. In Washington, a critical part of the National Guard's mission is to prevent and minimize damage caused by natural disasters like wildfires, landslides, flooding, and earthquakes. Decl. D. Postman ¶¶ 6-11. Excluding transgender Washingtonians from the pool of candidates who can join the National Guard diminishes numbers of service members who can provide emergency response and disaster mitigation in emergent situations when Washington needs their assistance most. Further, non-transgender individuals may likewise forego National Guard service in favor of an inclusive and nondiscriminatory employer. Any reduction in qualified service members negatively impacts the State's interest in responding to and mitigating harms to its territory.

In addition to protecting its natural resources, Washington has a sovereign interest in maintaining and enforcing its longstanding anti-discrimination laws. *See* Wash. Rev. Code

---

[3] *See e.g.* Decl. D. Postman ¶ 16 (describing transgender Guard member).

STATE OF WASHINGTON'S STATEMENT
IN SUPPORT OF PLS.' MOT. FOR
PRELIMINARY INJUNCTION

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

§ 49.60.010 (legislative finding that discrimination "menaces the institutions and foundation of a free democratic state"); Decl. D. Postman ¶ 4. "[T]he exercise of sovereign power . . . involves the power to create and enforce a legal code; both civil and criminal[.]" *Snapp*, 458 U.S. at 601. The Ban infringes on Washington's sovereign interest by overriding its longstanding anti-discrimination law, the Washington Law Against Discrimination. Wash. Rev. Code §§ 49.60.010 – 49.60.505. The Ban injures Washington by permitting discrimination against Washingtonians and even requiring the State to discriminate against its own people by barring transgender people from joining the Washington National Guard. *Contra* Wash. Rev. Code §§ 49.60.030; 49.60.040(26); 49.60.180 (guaranteeing a civil right to be free from sex or gender identity discrimination, including in employment); Decl. D. Postman ¶ 4. Without a preliminary injunction, the Ban will cause irreparable harm to the State's unique interest in protecting its natural resources and in enforcing its civil rights protections.

## III.    CONCLUSION

Washington will suffer irreparable harm if the Ban, or any part of it, continues to be implemented. Washington joins the *Karnoski* Plaintiffs' request for a preliminary injunction and requests that the Court consider the nature and scope of the harms to Washington's unique state interests in considering whether to grant preliminary relief. These harms, when added to the factual and legal showings made by the *Karnoski* Plaintiffs, merit preliminary injunctive relief.

Respectfully submitted November 17, 2017.

ROBERT W. FERGUSON
Washington Attorney General

*/s/ La Rond Baker*
LA ROND BAKER, WSBA No. 43610
Assistant Attorney General
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
LaRondB@atg.wa.gov

STATE OF WASHINGTON'S STATEMENT
IN SUPPORT OF PLS.' MOT. FOR
PRELIMINARY INJUNCTION

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Unit
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

1

**CERTIFICATE OF SERVICE**

2    I hereby certify that on November 17, 2017, I electronically filed State of Washington's

3    Statement in Support of Plaintiffs' Motion for Preliminary Injunction with the Clerk of the Court

4    using the CM/ECF system which will send notification of such filings to all counsel in this

5    matter.

6

7

8    Dated this 17th day of November, 2017, at Seattle, Washington.

9

10                                    */s/ La Rond Baker*
                                      LA ROND BAKER, WSBA #43610
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STATE OF WASHINGTON'S STATEMENT          7          ATTORNEY GENERAL OF WASHINGTON
IN SUPPORT OF PLS.' MOT. FOR                                   Civil Rights Unit
PRELIMINARY INJUNCTION                                  800 Fifth Avenue, Suite 2000
                                                            Seattle, WA  98104
                                                             (206) 442-4492