UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RYAN KARNOSKI, et al. | CASE NO. C17-1297-MJP |
| Plaintiffs, | ORDER DENYING MOTION FOR CLARIFICATION AND PARTIAL STAY OF PRELIMINARY INJUNCTION PENDING APPEAL |
| v. | |
| DONALD J. TRUMP, et al. | |
| Defendants. | |
| STATE OF WASHINGTON, | |
| Intervenor, | |
| v. | |
| DONALD J. TRUMP, et al. | |
| Defendants. | |

THIS MATTER comes before the Court on Defendants' Motion for Clarification and Motion for Partial Stay of Preliminary Injunction Pending Appeal. (Dkt. No. 106.) Having reviewed the Motion, the Responses (Dkt. Nos. 114, 119), and all related papers, the Court

DENIES the proposed clarification set forth in Defendants' Motion for Clarification and DENIES Defendant's Motion for Partial Stay of Preliminary Injunction Pending Appeal.

**BACKGROUND**

On July 26, 2017, President Donald J. Trump announced on Twitter that the United States government will no longer allow transgender individuals to serve in any capacity in the military. (Dkt. No. 34, Ex. 6.) Prior to this announcement, the military concluded that transgender individuals should be permitted to serve openly. On June 30, 2016, the Secretary of Defense issued a directive-type memorandum stating that "[n]ot later than July 1, 2017," the military would begin accession of transgender enlistees. (Dkt. No. 48, Ex. C at § 2.) On June 30, 2017, Secretary of Defense James N. Mattis deferred the deadline to January 1, 2018. (Dkt. No. 34-3.) President Trump's July 26, 2017 announcement and the August 25, 2017 Presidential Memorandum thereafter prohibited the accession of openly transgender enlistees indefinitely (the "Accessions Directive"). (Dkt. No. 34, Exs. 6, 7.)

On December 11, 2017, the Court entered an order granting Plaintiffs' Motion for a Preliminary Injunction. (Dkt. No. 103.) The order enjoined Defendants from "taking any action relative to transgender individuals that is inconsistent with the status quo that existed prior to President Trump's July 26, 2017 announcement" regarding military service by transgender individuals. (Id. at 23.)

Defendants now request clarification as to the terms of the Court's Order. (Dkt. No. 106.) Specifically, Defendants seek clarification as to whether Secretary Mattis may exercise "independent discretion" to further postpone the January 1, 2018 deadline for accession by transgender enlistees "to further study whether the policy will impact military readiness and lethality or to complete further steps needed to implement the policy." (Id. at 2.) In the

alternative, Defendants move for a partial stay of the preliminary injunction as to the Accessions Directive. (Id. at 4.)

**DISCUSSION**

I.  **Motion for Clarification**

Defendants move for clarification of the Court's Order as to the Accessions Directive. Essentially, Defendants contend that the Court's Order does not prohibit Secretary Mattis from implementing a policy this Court has already enjoined. This claim is without merit. The Court's Order clearly enjoined Defendants from "taking any action relative to transgender individuals that is inconsistent with the status quo that existed prior to President Trump's July 26, 2017 announcement" regarding military service by transgender individuals. (Dkt. No. 103 at 23.) Prior to July 26, 2017, the status quo was a policy permitting accession of transgender individuals no later than January 1, 2018. (See Dkt. No. 48, Ex. C; Dkt. No. 34-3.) Any action by any Defendant that is inconsistent with this status quo is preliminarily enjoined.

II.  **Motion for Partial Stay**

In the alternative, Defendants move for a partial stay of the Court's Order granting a preliminary injunction as to the Accessions Directive, pending review by the Ninth Circuit. Defendants contend – for the first time during these proceedings – that they are not prepared to begin accessions of transgender enlistees by January 1, 2018. (Dkt. No. 106 at 4-6.) Defendants contend that Plaintiffs will not be harmed by a stay, and that they are likely to prevail on the merits of their appeal. (Id. at 6-8.) The Court will not stay its preliminary injunction pending appeal.

A stay pending appeal "is an intrusion into the ordinary processes of administration and judicial review." Nken v. Holder, 556 U.S. 418, 427 (2009) (citation omitted). In determining

whether to grant a stay, the Court considers: (1) whether Defendants have made a strong showing that they are likely to succeed on the merits; (2) whether Defendants will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure Plaintiffs and Washington State; and (4) whether the public interest supports a stay. See Nken, 556 U.S. at 434. The first two factors are the most critical. Id.; see also Washington v. Trump, 847 F.3d 1151, 1164 (9th Cir. 2017).

### A. Likelihood of Success on the Merits

The Court finds that Defendants have not made a "strong showing" that they are likely to succeed on the merits of their appeal. Nken, 556 U.S. at 434. Each of the arguments raised by Defendants already has been considered and rejected by the Court, and Defendants have taken no action to remedy the constitutional violations that supported entry of a preliminary injunction in the first place. (See Dkt. No. 103 at 15-20.) Defendants' argument that Secretary Mattis has "independent authority to extend the effective date" for accessions by transgender enlistees is also unpersuasive. (Dkt. No. 106 at 7.) Secretary Mattis does not have authority to effectuate an unconstitutional policy, and certainly not one which has been enjoined.

### B. Irreparable Injury to Defendants

The Court finds that Defendants have not shown that they will be irreparably harmed without a stay. Defendants contend that complying with the Court's Order will "impose extraordinary burdens" on the military as accession by transgender enlistees "necessitates preparation, training, and communication to ensure those responsible for application of the accession standards are thoroughly versed in the policy and its implementation procedures." (Dkt. 107 at ¶ 5; see also Dkt. No. 106 at 4-5.) In particular, Defendants claim that "the military will need to promulgate new, complex, and interdisciplinary medical standards that will

necessarily require evaluation across several medical specialties, including behavior and mental health, surgical procedures, and endocrinology." (Dkt. No. 106 at 4-5.)  Defendants have had since June 2016 to prepare for accessions of transgender enlistees into the military, and the record indicates that considerable progress has been made toward this end.  (See Dkt. No. 115 at ¶¶ 4-5; Dkt. No. 116 at ¶¶ 2-4; Dkt. No. 117 at ¶ 3.)  In fact, on December 8, 2017, the Department of Defense issued a policy memorandum setting forth specific guidance for "processing transgender applicants for military service," including guidelines for medical personnel.  (Dkt. No. 120-1.)  Notwithstanding their implementation efforts to date, Defendants claim that "the Department still would not be adequately and properly prepared to begin processing transgender applicants for military service by January 1, 2018."  (Dkt. No. 107 at 107.)  However, Defendants have provided no evidence that the accessions criteria for transgender enlistees are any more complex or burdensome than the criteria for non-transgender enlistees.  (Dkt. No. 107 at ¶ 9.)  Defendants' conclusory claims are unsupported by evidence and insufficient to establish a likelihood of irreparable harm.

### C.  Injury to Plaintiffs and Washington State and Impact on Public Interest

Having found that Defendants have not shown either a likelihood of success on the merits or a likelihood of irreparable injury absent a stay, the Court need not reach the remaining factors.  See Washington v. Trump, 847 F.3d at 1164.  However, the Court also finds that these remaining factors do not support entry of a stay.

The Court already found that Plaintiffs and Washington State are likely to suffer irreparable injury absent a preliminary injunction, and for the same reasons, will be injured by a stay.  With regard to the Individual Plaintiffs, the Court found that the Accessions Directive violates their constitutional rights, denies them dignity, and subjects them to stigmatization.  (Id.

at 8, 20-21.) With regard to Washington State, the Court found that the policy threatens the State's ability to recruit and retain members of the Washington National Guard (and thereby protect its territory and natural resources) and to protect its residents from discrimination. (Id. at 11-12, 21.) For similar reasons, the Court found that a preliminary injunction furthers the public interest. (Dkt. No. 103 at 21-22.) Defendants have provided no evidence to the contrary.

## CONCLUSION

Because Defendants have been enjoined from "taking *any action* relative to transgender individuals that is inconsistent with the status quo that existed prior to President Trump's July 26, 2017 announcement" regarding military service by transgender individuals, the Court CLARIFIES that *any action* intended to further delay the January 1, 2018 deadline for accession by transgender enlistees is enjoined, whether taken by Secretary Mattis or any other government agency or employee. Because Defendants have not demonstrated that a partial stay of the Court's Order is warranted, the Court DENIES Defendant's Motion.

The clerk is ordered to provide copies of this order to all counsel.

Dated December 29, 2017.

Marsha J. Pechman
United States District Judge