The Honorable Marsha J. Pechman

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

| | |
|---|---|
| RYAN KARNOSKI, et al.,<br>Plaintiffs,<br>v.<br>DONALD J. TRUMP, et al.,<br>Defendants. | No. 2:17-Cv-1297-MJP<br>**DEFENDANTS' MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL**<br>NOTED FOR CONSIDERATION: May 18, 2018 |

DEFENDANTS' MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL
*Karnoski, et al. v. Trump, et al.*, No. 2:17-cv-1297 (MJP)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-4336**

## INTRODUCTION

On April 13, 2018, this Court entered an order granting in part and denying in part Plaintiffs' and Intervenor Washington's motions for summary judgment, granting in part and denying in part Defendants' motion for partial summary judgment, and striking Defendants' motion to dissolve the preliminary injunction.[1] Mem. Op., ECF No. 233. In its order, the Court expanded its injunction to preclude Defendants other than the President from implementing the Department of Defense's ("DoD") new policy announced on March 23, 2018. *Id.* at 30–31. Defendants subsequently filed a timely notice of appeal, *see* ECF No. 236, and the Court's order is now on appeal before the United States Court of Appeals for the Ninth Circuit.

Defendants now move to stay the Court's preliminary injunction pending appeal, so that the Defense Department can implement its new policy. Unless stayed, the Court's injunction will irreparably harm the government (and the public) by compelling the military to adhere to a policy it has concluded poses substantial risks. A stay, by contrast, would not likely injure any of the plaintiffs, many of whom may continue to serve under DoD's new policy. Defendants are also likely to succeed on the merits of this case because they are defending a professional decision of military leaders, to which significant deference is due. At a minimum, the Court should stay the preliminary injunction insofar as it grants nationwide relief.

## ARGUMENT

### I. The Court Should Stay The Preliminary Injunction Pending Appeal, So That DoD Can Implement Its New Policy.

Federal Rule of Civil Procedure 62(c) grants district courts discretion to "'suspend, modify, restore, or grant an injunction' during the pendency of the defendant's interlocutory appeal." *Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir. 2001) (quoting Fed. R. Civ. P. 62(c)). In deciding whether to stay a preliminary injunction pending appeal, district courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3)

---

[1] The Court's order striking Defendants' Motion to Dissolve the Preliminary Injunction, without permitting the parties to finish briefing the issues, is understood as a denial of Defendants' motion.

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-4336**

whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Doe v. Trump*, 284 F. Supp. 3d 1172, 1178 (W.D. Wash. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

To be sure, these are the same factors that governed Defendants' Motion to Dissolve the Preliminary Injunction, which the Court recently denied. *See* Mem. Op. 31; *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983) ("The standard for evaluating stays pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction."). But courts regularly find cause to stay their own rulings entering, dissolving, or modifying injunctions. *See, e.g.*, *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 842 (D.C. Cir. 1977) (holding that district court did not abuse its discretion by entering permanent injunction and then staying it pending appeal); *Thiry v. Carlson*, 891 F. Supp. 563, 567 (D. Kan. 1995) (granting stay pending appeal of court's own order dissolving preliminary injunction). Although the Court ruled that its preliminary injunction now covers DoD's new policy, the Court should stay its injunction pending Defendants' appeal, so that the new policy can be implemented.

A stay is critical to prevent irreparable harm to military interests. The nation's military leaders have concluded that absent implementation of the new policy, there will remain "substantial risks" that threaten to "undermine readiness, disrupt unit cohesion, and impose an unreasonable burden on the military that is not conducive to military effectiveness and lethality." Memorandum by Secretary of Defense James Mattis ("Mattis Memorandum") 2 (Feb. 22, 2018), ECF No. 216-1; *see also, e.g.*, Department of Defense Report and Recommendations on Military Service by Transgender Persons ("DoD Report") 32–35, 41, 44 (Feb. 2018). In their professional military judgment, departing from the Carter framework is necessary to protect these military interests. DoD Report 30–32. Such "specific, predictive judgments" from senior military officials, including the Secretary of Defense himself, "about how the preliminary injunction would reduce the effectiveness" of the military, merit significant deference. *Winter v. NRDC*, 555 U.S. 7, 27 (2008). The Court's decision striking Defendants' Motion to Dissolve the

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-4336**

Preliminary Injunction did not grapple with these military judgments. Thus, the Court may still stay the preliminary injunction pending appeal, so that DoD can implement its new policy.

In contrast to Defendants, Plaintiffs face little risk of harm. Many of the individual Plaintiffs would qualify for the new policy's reliance exception—and thus would be able to continue serving in their preferred gender, obtain commissions, and receive medical treatment—because they received a diagnosis of gender dysphoria from a military medical provider while the Carter policy was in effect. *See* First Am. Compl. ¶¶ 53, 79, 88, 100, 111, ECF No. 30; Easley Decl. ¶ 3, ECF No. 72; DoD Report 43. These Plaintiffs are thus highly unlikely to sustain any injury under the new policy.[2] And as for the remaining Plaintiffs and Washington, although the Court has determined that they may have satisfied the requirements for Article III standing, it does not follow that they are likely to suffer an irreparable harm to any significant degree, especially in comparison to the critical military interests at stake. As Defendants have argued previously, *see* Defs.' Mot. to Dismiss 16, ECF 69, the individual Plaintiffs seeking to access into the armed forces have not demonstrated that they have been stable for at least 18 months post-transition, as required under the Carter policy. And even assuming that the implementation of the new policy during the appeal would prevent some plaintiffs from accessing, that harm would only be temporary, lasting at most the length of Defendants' appeal. *Cf. Hartikka v. United States*, 754 F.2d. 1516, 1518 (9th Cir. 1985) (damage to reputation as well as lost income, retirement, and relocation pay resulting from less-than-honorable discharge not irreparable). For similar reasons, neither the organizational plaintiffs nor Washington would face harm to any significant degree. Indeed, while Washington asserts that the new policy would "undermine the efficacy of its National Guard," Mem. Op. 19, senior military leaders have studied the issue extensively and come to the opposite conclusion. Accordingly, the judgment of military leaders

[2] In the Court's decision, it suggested that the record did not support the conclusion that the current service member Plaintiffs were diagnosed with gender dysphoria by a military medical provider after June 30, 2016. Mem. Op. 15–16, 15 n.7. But the Court did not address the fact that service members could receive treatment under the Carter policy—which all of these Plaintiffs did—only if they had received a diagnosis of gender dysphoria by a military medical provider after that policy took effect. *See* Declaration of Ryan B. Parker, Exh. 1 (Department of Defense Instruction 1300.28).

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-4336**

is that not implementing the new policy would undermine the readiness and efficacy of the military—including the Washington National Guard. Mattis Memorandum 2; *see also, e.g.*, DoD Report 32–35, 41, 44; *cf. Winter*, 555 U.S. 7, 27 (2008) ("The lower courts failed properly to defer to senior Navy officers' specific, predictive judgments about how the preliminary injunction would reduce the effectiveness of the Navy's SOCAL training exercises.").

The likelihood of success on the merits also favors granting a stay. In the Court's decision, it expressly reserved final ruling on the degree of deference that DoD's new policy should receive. Mem. Op. at 27. When the Ninth Circuit and/or this Court ultimately address that question, they are highly likely to conclude that significant deference is appropriate. Although the armed forces are subject to constitutional constraints, "the tests and limitations to be applied may differ because of the military context." *Rostker v. Goldberg*, 453 U.S. 57, 67 (1981). For instance, judicial "review of military regulations challenged on First Amendment grounds is far more deferential than constitutional review of similar laws or regulations destined for civilian society." *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986). As one of the many "complex, subtle, and professional decisions as to the composition … of a military force, which are essentially professional military judgments," *Winter*, 555 U.S. at 24 (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)), the Department's new policy, which simply declines to generally accommodate gender transition, survives the highly deferential review applicable here. Drawing on the experience and judgment of senior military leadership, evidence from before and after the adoption of the Carter policy, and its experience with the Carter policy so far, the Department concluded that continuing to provide a general accommodation for gender transition would pose unacceptable risks to military interests. DoD Report 18. The Department's professional military judgments on these interests, which involved a sensitive consideration of risks, costs, and internal discipline, clearly satisfy the deferential form of review required of such determinations.[3]

[3] It is also likely that the Ninth Circuit will disagree with the Court's conclusion that DoD's new policy is subject to strict scrutiny. Mem. Op. 24. As an initial matter, the new policy applies to a medical condition and its attendant treatment—gender dysphoria and transition—not on the basis of whether a person is transgender. Yet even if that were not the case, the Court's decision did not cite to a single instance where a court had ruled that a policy that classifies on the basis of transgender status was subject to strict scrutiny. *See generally id.* Relatedly, the Ninth Circuit

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-4336**

The public interest favors staying the Court's preliminary injunction as well. The Court's previous ruling on the President's 2017 Memorandum and statement on Twitter hinged on its belief that the Carter policy had no "documented negative effects." Order 22, ECF No. 103. That is no longer accurate. DoD has now detailed the risks associated with the Carter policy and explained why, in its professional military judgment, it was "necessary" to depart from that framework. DoD Report 32. Staying the Court's preliminary injunction pending appeal serves the public interest by allowing the military to implement the policy that will best serve military interests, and therefore the security of the public.

Finally, at a minimum, the Court should stay the preliminary injunction insofar as it grants nationwide relief. Under Article III, "[t]he remedy" sought must "be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Lewis v Casey*, 518 U.S. 343, 357 (1996). Likewise, equitable principles require that an injunction "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994). The Court determined that nine individuals have standing to challenge the new policy. Mem. Op. 15–17. But it did not limit its remedy to their injuries; instead, it barred implementation of the new policy "nationwide." *Id.* at 2. A narrow injunction, barring the application of the new policy to the nine individual plaintiffs, would provide those plaintiffs with full preliminary relief. *See U.S. Dep't of Def. v. Meinhold*, 510 U.S. 939 (1993) (staying injunction against military policy to the extent it conferred relief on anyone other than plaintiff); *Meinhold v. U.S. Dep't of Def.*, 34 F.3d 1469, 1480 (9th Cir. 1994) (vacating injunction save to the extent it applied to plaintiff).

## II. Request For Expedited Ruling

If this Court has not ruled on Defendants' motion by May 4, 2018, Defendants intend to file for a stay of the Court's preliminary injunction with the Ninth Circuit Court of Appeals. If this Court rules on Defendants' motion after Defendants' have filed their motion with the Ninth Circuit, Defendants will provide the Ninth Circuit with this Court's ruling.

---

is also likely to reject the Court's implicit conclusions that Plaintiffs are likely to succeed on the merits of their equal protection, substantive due process, and First Amendment claims.

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-4336**

Defense counsel has conferred with counsel for both Plaintiffs and Washington regarding this motion. Washington opposes the motion. Plaintiffs' counsel requested that Defendants include the following statement of Plaintiffs' position: "Plaintiffs intend to oppose the motion to stay. Plaintiffs also respectfully request that the Court refrain from ruling on Defendants' motion until after receiving Plaintiffs' opposition which will be timely filed in accordance with the Local Rules."

Dated: April 30, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Branch Director

ANTHONY J. COPPOLINO
Deputy Director

*/s/ Ryan B. Parker*
RYAN B. PARKER
Senior Trial Counsel
ANDREW E. CARMICHAEL
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
Telephone: (202) 514-4336
Email: ryan.parker@usdoj.gov

*Counsel for Defendants*

DEFENDANTS' MOTION TO STAY PRELIMINARY
INJUNCTION PENDING APPEAL - 6
*Karnoski, et al. v. Trump, et al.*, No. 2:17-cv-1297 (MJP)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-4336**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2018, I electronically filed the foregoing Motion to Stay Preliminary Injunction Pending Appeal using the Court's CM/ECF system, causing a notice of filing to be served upon all counsel of record.

Dated: April 30, 2018

*/s/ Ryan Parker*

RYAN B. PARKER
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
Telephone: (202) 514-4336
Email: ryan.parker@usdoj.gov

*Counsel for Defendants*

DEFENDANTS' MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL - 7
*Karnoski, et al. v. Trump, et al.*, No. 2:17-cv-1297 (MJP)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 514-4336**