UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RYAN KARNOSKI, <br><br> Plaintiff, <br><br> v. <br><br> DONALD J. TRUMP, <br><br> Defendant. | CASE NO. C17-1297-MJP <br><br> ORDER DENYING MOTION TO STAY PRELIMINARY INJUNCTION |

THIS MATTER comes before the Court on Defendants' Motion to Stay the Preliminary Injunction Pending Appeal. (Dkt. No. 238.) Having reviewed the Motion, the Responses (Dkt. Nos. 250, 257), the Reply (Dkt. No. 261), the Jurisdictional Briefing (Dkt. Nos. 275, 276, 277) and all related papers, the Court DENIES the Motion.

**Background**

On December 11, 2017, the Court issued a nationwide preliminary injunction barring Defendants from "taking any action relative to transgender individuals that is inconsistent with the status quo" that existed prior to President Trump's July 26, 2017 announcement" of a policy

excluding transgender people from serving openly in the military (the "Ban"). (Dkt. No. 103 at 23.)

On March 23, 2018, Defendants released an Implementation Plan and a 2018 Memorandum which purported to "revoke" the 2017 Memorandum and replace it with a "new policy" that does not mandate a "categorical prohibition on transgender service members," but rather targets those who have been diagnosed with gender dysphoria. (Dkt. No. 226 at 3-7; see also Dkt. No. 224, Exs. 1, 3.)

On April 13, 2018, the Court granted partial summary judgment for Plaintiffs and the State of Washington, and ordered the preliminary injunction to remain in effect. (See Dkt. No. 233.) In so doing, the Court rejected Defendants' claim that the subsequent Implementation Plan and 2018 Memorandum represented a "new policy." (Id. at 12.) Instead, the Court found that the Implementation Plan and 2018 Memorandum "threaten the very same violations that caused it and others to enjoin the Ban in the first place." (Id.)

On April 30, 2018, Defendants filed a notice of appeal with the Ninth Circuit. (See Dkt. No. 236.) On the same day, Defendants filed this motion requesting an expedited ruling no later than May 4, 2018. (Dkt. No. 238.) After the Court declined to issue an expedited ruling (Dkt. No. 240), Defendants filed a separate Motion for a Stay Pending Appeal in the Ninth Circuit. See Karnoski v. Trump, No. 18-35347, Dkt. No. 3 (9th Cir. May 4, 2018). The Ninth Circuit has yet to issue a ruling.

**Discussion**

I.  **Jurisdiction**

While the filing of a notice of appeal generally divests a district court of jurisdiction, Federal Rule of Civil Procedure 62(c) allows the Court "to issue further orders with respect to an

injunction, even pending appeal, in order to preserve the status quo or ensure compliance with its earlier orders." Doe v. Trump, 284 F. Supp. 3d 1172 (W.D. Wash. 2018) (citing Nat. Res. Def. Council, Inc. v. Southwest Marine, Inc., 242 F.3d 1163, 1166 (9th Cir. 2001)). The Court's exercise of jurisdiction may not "adjudicate anew the merits of the case" nor "materially alter the status of the case on appeal." Southwest Marine, 242 F.3d at 1166.

**II. Motion to Stay**

A stay pending appeal "is an intrusion into the ordinary processes of administration and judicial review." Nken v. Holder, 556 U.S. 418, 427 (2009) (internal quotation marks and citation omitted). In determining whether to grant a stay, the Court considers: (1) whether Defendants have made a strong showing that they are likely to succeed on the merits; (2) whether Defendants will be irreparably injured absent a stay; (3) whether a stay will substantially injure Plaintiffs and Washington; and (4) whether the public interest supports a stay. Id. at 434.

**A. Likelihood of Success on the Merits**

The Court finds that Defendants have not made a "strong showing" that they are likely to succeed on the merits of their appeal.

First, each of the arguments raised by Defendants already has been considered and rejected by the Court, and Defendants have done nothing to remedy the constitutional violations that supported entry of a preliminary injunction in the first instance. Instead, Defendants attempt, once again, to characterize the Implementation Plan and 2018 Memorandum as a "new and different" policy, distinct from the one this Court and others enjoined. (See Dkt. No. 261 at 3.) The Court was not persuaded by this argument before, and it is not persuaded now.

Second, while Defendants claim—without explanation—that "the Ninth Circuit and/or this Court ultimately . . . are highly likely to conclude that significant deference is appropriate"

(Dkt. No. 238 at 5), whether *any* deference is due remains unresolved. (See Dkt. No. 233 at 24-27.) Defendants bear the burden of providing a "genuine" justification for the Ban. To withstand judicial scrutiny, that justification must "describe actual state purposes, not rationalizations" and must not be "hypothesized or invented *post hoc* in response to litigation." United States v. Virginia, 518 U.S. 515, 533, 535-36 (1996); see also Sessions v. Morales-Santana, 137 S.Ct. 1678, 1696-97 (2012). To date, Defendants have steadfastly refused to put before the Court evidence of any justification that predates this litigation. (See Dkt. No. 211.)

Finally, the Court notes that the Ban currently is enjoined by four separate courts. See Doe 1 v. Trump, 275 F. Supp. 3d 167 (D.D.C. 2017); Stone v. Trump, 280 F. Supp. 3d 747 (D. Md. 2017); Stockman v. Trump, No. 17-cv-1799-JGB-KK, Dkt. No. 79 (C.D. Cal. Dec. 22, 2017). As a practical matter, Defendants face the challenge of convincing each of these courts to lift their injunctions before they may implement the Ban.

**B. Likelihood of Irreparable Harm**

The Court finds that Defendants have not shown that they will be irreparably harmed without a stay. Defendants contend that unless stayed, the injunction "will irreparably harm the government (and the public) by compelling the military to adhere to a policy it has concluded poses substantial risks." (Dkt. No. 238 at 2.) In particular, Defendants contend that allowing transgender people to serve openly—as they have for nearly two years—threatens to "undermine readiness, disrupt unit cohesion, and impose an unreasonable burden on the military that is not conducive to military effectiveness and lethality." (Id. at 3.)

Since the preliminary injunction has been in effect, the Senate Committee on Armed Services has heard testimony from high-ranking military officials on the effect of open service

by transgender people.  Army Chief of Staff General Mark Milley testified that he "monitor[s] very closely" the situation and had received "precisely zero" reports of problems related to unit cohesion, discipline, and morale.  (Dkt. No. 255, Ex. 14 at 6.)  Chief of Naval Operations Admiral John Richardson testified that he, too, had received no negative reports, and that in his experience, "[i]t's steady as she goes."  (Dkt. No. 255, Ex. 15.)  As this testimony makes clear, Defendants' hypothetical and conclusory claims are unsupported by evidence and do not establish a likelihood of irreparable harm.

### C. Injury to Plaintiffs and Washington and Impact on Public Interest

Having found that Defendants have not established either a likelihood of success on the merits or a likelihood of irreparable harm absent a stay, the Court need not reach these remaining factors.  See Washington v. Trump, 847 F.3d at 1164.  However, the Court also finds that these factors do not support entry of a stay.

The Court already found that Plaintiffs and Washington are likely to suffer irreparable injury absent a preliminary injunction, and for the same reasons, will be injured by a stay.  (See Dkt. No. 103 at 20-21.)  Further, maintaining the injunction pending appeal advances the public's interest in a strong national defense, as it allows skilled and qualified service members to continue to serve their country.

### D. Scope of the Preliminary Injunction

The Court declines to stay the preliminary injunction insofar as it grants nationwide relief.  While Defendants contend that the injunction should be limited to the nine Individual Plaintiffs (Dkt. No. 238 at 2), the Court disagrees.  The scope of injunctive relief is to be "dictated by the extent of the violation established." Califano v. Yamasaki, 442 U.S. 682, 702

(1979). The Ban, like the Constitution, would apply nationwide. Accordingly, a nationwide injunction is appropriate.

## Conclusion

Because Defendants have not established that a stay of the preliminary injunction is appropriate, the Court DENIES Defendants' Motion. The status quo shall remain "steady as she goes," and the preliminary injunction shall remain in full force and effect nationwide.

The clerk is ordered to provide copies of this order to all counsel.

Dated June 15, 2018.

*[signature]*

The Honorable Marsha J. Pechman
United States Senior District Court Judge