UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RYAN KARNOSKI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, et al.,<br><br>Defendants. | CASE NO. C17-1297-MJP<br><br>ORDER GRANTING MOTION TO COMPEL; DENYING MOTION FOR PROTECTIVE ORDER |

THIS MATTER comes before the Court on Plaintiffs' Motion to Compel Defendants' Discovery Withheld Under the Deliberative Process Privilege (Dkt. No. 245) and Defendants' Motion for Protective Order (Dkt. No. 268). Having reviewed the Motions, the Responses (Dkt. Nos. 266, 278), the Replies (Dkt. Nos. 273, 281), the Supplemental Briefs (Dkt. Nos. 289, 292, 293) and the related record, and having considered the submissions of the parties at oral argument, the Court GRANTS Plaintiffs' Motion to Compel and DENIES Defendants' Motion for Protective Order.

# Background

## I. Procedural History

On July 26, 2017, President Donald J. Trump announced a ban on military service by openly transgender people (the "Ban"). On March 23, 2018, following the Court's entry of a preliminary injunction, the President issued a Presidential Memorandum (the "2018 Memorandum") directing the Department of Defense ("DoD") to implement the Ban. (Dkt. No. 224, Ex. 3.) That same day, Defendants moved to dissolve the preliminary injunction. (Dkt. No. 215.) On March 29, 2018, Defendants requested to preclude discovery pending resolution of their motion to dissolve the preliminary injunction. (Dkt. No. 225.) The Court denied that request and ordered discovery in the case to proceed. (Dkt. No. 235.) The Court explained:

> To the extent that Defendants intend to claim executive privilege, they must "expressly make the claim" and provide a privilege log "describ[ing] the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

(Id. at 3 (quoting Fed. R. Civ. P. 26(b)(5)(i)-(ii)).)

On April 13, 2018, the Court ordered the preliminary injunction to remain in effect and granted partial summary judgment against the Ban. (See Dkt. No. 233.) The Court held that the Ban would be subject to strict scrutiny, but declined to rule on its constitutional adequacy. (Id.) The Court observed that "[w]hether Defendants have satisfied their burden of showing that the Ban is constitutionally adequate (i.e., that it was sincerely motivated by compelling state interests, rather than by prejudice or stereotype) necessarily turns on facts related to Defendants' deliberative process." (Id. at 28.) Because those facts were not yet before it, the Court directed the parties "to proceed with discovery and prepare for trial on the issues of whether, and to what

extent, deference is owed to the Ban and whether the Ban violates equal protection, substantive due process, and the First Amendment." (Id. at 31.) Defendants filed a notice of appeal and requested that the Ninth Circuit stay the preliminary injunction pending its review. (Dkt. No. 236); see also Karnoski v. Trump, No. 18-35347, Dkt. No. 3 (9th Cir. May 4, 2018). On July 18, 2018, the Ninth Circuit denied the request, holding that "a stay of the preliminary injunction would upend, rather than preserve, the status quo." (Dkt. No. 295.) The appeal is set to be heard in October 2018. (Dkt. No. 296.)

## II. The Requested Discovery

Throughout this litigation, Plaintiffs have sought discovery regarding:

- The identity of the individuals with whom President Trump discussed or corresponded regarding policies on military service by transgender people;

- The date on which President Trump decided that transgender people should be banned from military service;

- The process by which President Trump formulated the Ban, including identification of "all sources of fact or opinion" he "consulted, considered, or otherwise referred to" in formulating the Ban;

- Documents and communications related to President Trump's consultation with employees, agents, contractors, or consultants of the United States Armed Forces regarding military service by transgender people;

- Documents and communications relating to, and including all drafts of, the 2017 Memorandum;

- Communications between President Trump and Congress concerning military service by transgender people prior to August 26, 2017; and

- Documents relating to visits and communications between President Trump and his Evangelical Advisory Board.

(Dkt. No. 278 at 3-4; Dkt. No. 268 at 4-5.)

To date, Defendants have objected to each of these requests and have withheld or redacted tens of thousands of documents based on the deliberative process privilege. President

1 | Trump has refused to substantively respond at all based on the presidential communications
2 | privilege. (Dkt. No. 245 at 8-9; Dkt. No. 246, Ex. 28; Dkt. No. 278 at 4-5.)
3 | On May 10, 2018, Plaintiffs moved to compel responses withheld under the deliberative
4 | process privilege. (Dkt. No. 245.) On May 21, 2018, Defendants moved to preclude discovery
5 | directed at President Trump. (Dkt. No. 268.) These motions are now before the Court.

**Discussion**

I. **Trump v. Hawaii**

Before turning to the merits of the pending discovery motions, the Court addresses the impact of the Supreme Court's recent ruling in Trump v. Hawaii, 138 S.Ct. 2392 (2018). In Hawaii, the Supreme Court held that President Trump's policy restricting the entry of certain foreign nationals did not violate the Immigration and Nationality Act or the Establishment Clause. The majority found the policy to be "facially neutral toward religion" and plausibly related to the government's stated national security objectives. Id. at 2418-24. While Defendants claim that the same reasoning precludes discovery directed to President Trump in this case, the Court disagrees for the following reasons:

First, Hawaii involved an entirely different standard of scrutiny. The Court already ruled that the Ban is subject to strict scrutiny (Dkt. No. 233 at 20-24) and rejects Defendants' suggestion that it "turns on a medical condition—gender dysphoria—and its treatment, not on any protected status." (Dkt. No. 289 at 5.) Unlike the policy in Hawaii, the Court need not "look behind the face" of the Ban, as the Ban is facially discriminatory. 138 S.Ct. at 2420. President Trump's announcement explains that "the United States Government will not accept or allow . . . Transgender individuals to serve in any capacity in the U.S. Military" (Dkt. No. 149, Ex. 1); the 2017 Memorandum, 2018 Memorandum, and Implementation Plan are titled "Military Service

by Transgender Individuals." (Dkt. No. 149, Ex. 2; Dkt. No. 224, Exs. 1, 3.) That the Ban turns on transgender identity—and not on any medical condition—could not be clearer.[1]

Second, the majority in Hawaii repeatedly emphasized that the exclusion policy was formulated following a "worldwide, multi-agency review." See, e.g., 138 S.Ct. at 2404-06, 2408, 2421. This review considered risks "identified by Congress or prior administrations" and involved the Department of Homeland Security (DHS), the State Department, "several intelligence agencies," and "multiple Cabinet members and other officials." Id. at 2403-05. The majority considered this process "persuasive evidence" that the policy had "a legitimate grounding in national security concerns, quite apart from any religious hostility." Id. at 2421. In contrast, Defendants in this case have provided no information whatsoever concerning the process by which the Ban was formulated.

Finally, Hawaii does not purport to address the scope of discovery or the application of any privilege. For these reasons, the Court finds that Hawaii does not impact its consideration of either of the pending motions.

## II. Plaintiffs' Motion to Compel

Plaintiffs move to compel documents withheld under the deliberative process privilege. (Dkt. No. 245.)

The deliberative process privilege protects documents and materials which would reveal "advisory opinions, recommendations and deliberations comprising part of a process by which

---

[1] The Implementation Plan prohibits transgender people who have *never* been diagnosed with gender dysphoria from serving unless they are "willing and able to adhere to all standards associated with their biological sex." (Dkt. No. 224, Ex. 1 at 4, Ex. 2 at 7.) As the Court previously noted, "[r]equiring transgender people to serve in their 'biological sex' . . . would force [them] to suppress the very characteristic that defines them as transgender in the first place." (Dkt. No. 233 at 13.)

governmental decisions and policies are formulated." N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975). For the privilege to apply, a document must be (1) "predecisional," meaning that it was "generated before the adoption of an agency's policy or decision," and (2) "deliberative," meaning that it contains "opinions, recommendations, or advice about agency policies."[2] FTC v. Warner Commc'ns Inc., 742 F.2d 1156, 1161 (9th Cir. 1984). "Purely factual material that does not reflect deliberative processes is not protected." Id.

The deliberative process privilege is not absolute. Several courts have recognized that the privilege does not apply in cases involving claims of governmental misconduct or where the government's intent is at issue. See, e.g., In re Sealed Case, 121 F.3d 729, 738, 746 (D.C. Cir. 1997); In re Subpoena Duces Tecum, 145 F.3d 1422, 1424-25 (D.C. Cir. 1998). However, "[t]his appears to be an open question in the Ninth Circuit," Vietnam Veterans of Am. v. CIA, 2011 WL 4635139, at *10 (N.D. Cal. Oct. 5, 2011), and even where there are claims of governmental misconduct, courts in this district and circuit have applied a balancing test. See, e.g., Wagafe v. Trump, No. 17-094RAJ, Dkt. No. 189 (W.D. Wash. May 21, 2018); All. for the Wild Rockies v. Pena, No. 16-294RMP, 2017 WL 8778579, at *6-8 (E.D. Wash. Dec. 12, 2017); Thomas v. Cate, 715 F. Supp. 2d 1012, 1021 (E.D. Cal. 2010). For purposes of this motion, the Court assumes, without deciding, that applying the balancing test set forth in Warner, 742 F.2d at 1161, is appropriate.

In Warner, the Ninth Circuit instructed courts to consider whether "[Plaintiffs'] need for the materials and the need for accurate fact-finding override the government's interest in

---

[2] Plaintiffs contend that Defendants have improperly asserted the deliberative process privilege over categories of documents that are facially outside its scope (i.e., post-decisional documents generated after President Trump's July 26, 2017 announcement and non-deliberative documents containing purely factual information). (Dkt. No. 245 at 15-17.) Because the Court finds that the deliberative process privilege does not apply at all, it need not address its scope.

nondisclosure." Id. In making this determination, relevant factors include: "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." Id.

As with all evidentiary privileges, "the deliberative process privilege is narrowly construed" and Defendants bear the burden of establishing its applicability. Greenpeace v. Nat'l Marine Fisheries Serv., 198 F.R.D. 540, 543 (W.D. Wash. 2000) (citations omitted). In addition to showing that withheld documents are privileged, Defendants must comply with formal procedures necessary to invoke the privilege. Id. "Blanket assertions of the privilege are insufficient. Rather [Defendants] must provide 'precise and certain' reasons for preserving the confidentiality of designated material." Id.

**A. Relevance of the Evidence**

The evidence Plaintiffs seek is undoubtedly relevant. The Court has already found that the Ban's constitutionality "necessarily turns on facts related to Defendants' deliberative process." (Dkt. No. 233 at 28.) Defendants may not simultaneously claim that deference is owed to the Ban because it is the product of "considered reason [and] deliberation," "exhaustive study," and "comprehensive review" by the military (Dkt. No. 194 at 17; Dkt. No. 226 at 9) while also withholding access to information concerning these deliberations, including whether the military was even involved.[3] This information is central to the litigation and should not be withheld from the searching judicial inquiry that strict scrutiny requires. See In re Subpoena, 145 F.3d at 1424; see also Johnson v. California, 543 U.S. 499, 506 (2005) (observing that strict scrutiny is intended to assure that the government "is pursuing a goal important enough to

---

[3] The Court notes that Defendants have steadfastly refused to identify even one general or military official President Trump consulted before announcing the Ban.

warrant use of a highly suspect tool."); Arizona Dream Act Coalition v. Brewer, 2014 WL 171923, at *3 (D. Ariz. Jan. 15, 2014) (holding that withheld communications were "highly relevant" because the "Court must consider the actual intent behind Arizona's driver's license policy when it considers the merits of this case."). This factor weighs in favor of disclosure.

### B. Availability of Other Evidence

Defendants possess all of the evidence concerning their deliberations over the Ban, and there is no suggestion that this evidence can be obtained from other sources. Defendants' production of non-privileged documents and an administrative record do not obviate Plaintiffs' need for responsive documents concerning the deliberative process. (See Dkt. No. 235 at 2.) This factor weighs in favor of disclosure.

### C. Government's Role in the Litigation

There is no dispute that the government is a party to this litigation. This factor weighs in favor of disclosure.

### D. Extent to Which Disclosure Would Hinder Independent Discussion

While Defendants claim that disclosure "risks chilling future policy discussions on sensitive personnel and security matters" and could "potentially lead[] to a direct negative impact to national security" (Dkt. No. 266 at 12-13), they cannot avoid disclosure based on mere speculation. Instead, Defendants must identify specific, credible risks which cannot be mitigated by the existing protective order in this case (Dkt. No. 183), and must explain why these risks outweigh the Court's need to perform the "searching judicial inquiry" that strict scrutiny requires. Johnson, 543 U.S. at 506. Because they have failed to do so, this factor weighs in favor of disclosure.

1 | Having found that the deliberative process privilege does not apply in this case, the Court
2 | GRANTS Plaintiffs' Motion to Compel.

**III.    Defendants' Motion for Protective Order**

Defendants move for a protective order precluding discovery directed at President Trump. (Dkt. No. 268.) Defendants concede that the President has not provided substantive responses or produced a privilege log, but contend that because the requested discovery raises "separation-of-powers concerns," Plaintiffs must exhaust discovery "from sources other than the President and his immediate White House advisors and staff" before he is required to do formally invoke the privilege. (Id. at 8, 10-11.)

The Supreme Court has recognized that discovery directed at the President involves "special considerations," and that his "constitutional responsibilities and status are factors counseling judicial deference and restraint in the conduct of litigation" against him. Cheney v. U.S. Dist. Court for Dist. of Columbia, 542 U.S. 367, 385, 387 (2004) (citation omitted). Nevertheless, the President is not immune from civil discovery. Courts have permitted discovery directed at the President where, as in this case, he is a party or has information relevant to the issues in dispute. See, e.g., United States v. Nixon, 418 U.S. 683, 706 (1974) (rejecting "an absolute, unqualified Presidential privilege of immunity from judicial process under all circumstances"); Clinton v. Jones, 520 U.S. 681, 704 (1997) (noting that "[s]itting Presidents have responded to court orders to provide testimony and other information with sufficient frequency that such interactions between the Judicial and Executive Branches can scarcely be thought a novelty.").

The President may invoke the privilege "when asked to produce documents or other materials that reflect presidential decisionmaking and deliberations that [he] believes should

remain confidential." In re Sealed Case, 121 F.3d at 744.  Once he does so, those documents and materials are presumed to be privileged.  Id.  However, "the privilege is qualified, not absolute, and can be overcome by an adequate showing of need."  Id. at 745.  If the Court finds that an adequate showing has been demonstrated (i.e., that the materials contain evidence "directly relevant to issues that are expected to be central to the trial" and "not available with due diligence elsewhere"), it may then proceed to review the documents in camera to excise non-relevant material.  Id. at 754, 759.

To date, President Trump and his advisors have failed to invoke the presidential communications privilege, to respond to a single discovery request, or to produce a privilege log identifying the documents, communications, and other materials they have withheld.  While Defendants claim they need not do so until Plaintiffs "exhaust other sources of non-privileged discovery, meet a heavy, initial burden of establishing a heightened, particularized need for the specific information or documents sought, and at a minimum substantially narrow any requests directed at presidential deliberations" (Dkt. No. 268 at 3), the Court finds no support for this claim.  To the extent the President intends to invoke the privilege, the Court already ordered that he "'expressly make the claim' and provide a privilege log 'describ[ing] the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.'" (Dkt. No. 235 at 3 (quoting Fed. R. Civ. P. 25(b)(5)(i)-(ii).)  Only then can the Court evaluate whether the privilege applies and if so, whether Plaintiffs have established a showing of need sufficient to overcome it.

Having found that President Trump has failed to demonstrate that he need not invoke the presidential communications privilege, the Court DENIES Defendants' Motion for a Protective Order.

**Conclusion**

The Court ORDERS as follows:

1. The Court GRANTS Plaintiffs' Motion to Compel and ORDERS Defendants to turn over those documents that have been withheld solely under the deliberative process privilege within 10 days of the date of this Order;

2. The Court DENIES Defendants' Motion for a Protective Order and ORDERS Defendants to produce a privilege log identifying the documents, communications, and other materials they have withheld under the presidential communications privilege within 10 days of the date of this Order;

3. The Court notes that the government privilege logs it has reviewed to date are deficient and do not comply with Federal Rule of Civil Procedure 26(b)(5)(A)(i)-(ii). (See Dkt. No. 246, Exs. 11-27.) Privilege logs must provide sufficient information to assess the claimed privilege and to this end must (a) identify individual author(s) and recipient(s); and (b) include *specific*, *non-boilerplate* privilege descriptions *on a document-by-document basis*. To the extent they have not already done so, the Court ORDERS Defendants to produce revised privilege logs within 10 days of the date of this Order;

4. Should any discovery disputes remain following Defendants' compliance with the above directives, the parties shall bring them before the Court jointly using the procedure set forth in LCR 37.

The clerk is ordered to provide copies of this order to all counsel.

Dated July 27, 2018.

*Marsha J. Pechman*
Marsha J. Pechman
United States District Judge