The Honorable Marsha J. Pechman

1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**
           **WESTERN DISTRICT OF WASHINGTON**
9                       **AT SEATTLE**

10

11   RYAN KARNOSKI, et al.,                    Case No. 2:17-cv-01297-MJP

12           *Plaintiffs*, and                 **PLAINTIFFS' OPPOSITION TO**
                                                **DEFENDANTS' MOTION TO STAY**
13   STATE OF WASHINGTON,                       **PENDING RESOLUTION OF**
                                                **MANDAMUS PETITION**
14           *Plaintiff-Intervenor*,

15           v.

16   DONALD J. TRUMP, in his official capacity
17   as President of the United States, et al.,

18           *Defendants*.

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

Table of Contents ........................................................................................................ ii

3

4

Table of Authorities .................................................................................................. iii

5

Introduction ................................................................................................................. 1

6

7

Argument ..................................................................................................................... 2

8

     A.   Defendants' Mandamus Petition Is Unlikely to Succeed. ......................... 2

9

         1.   Defendants Cannot Show Any Error, Let Alone Clear Error, in the Court's Denial of Their Motion for a Protective Order. ................................. 2

10

         2.   The Court Did Not Commit Clear Legal Error in Granting Plaintiffs' Motion to Compel Documents Withheld Under the Deliberative Process Privilege ........ 6

11

12

     B.   Defendants Will Not Suffer Irreparable Harm. ...................................... 8

13

     C.   A Stay Will Harm Plaintiffs and Unnecessarily Delay This Proceeding. ............... 10

14

     D.   The Public Interest Lies With Ensuring Compliance With the Court's Order. ....... 10

15

     E.   The Court Can Obviate Defendants' Claimed Prejudice While Ensuring They Comply With the Order Pending Resolution of Their Mandamus Petition............. 11

16

17

Conclusion ................................................................................................................. 12

18

19

Certificate of Service ................................................................................................ 14

20

21

22

23

24

25

26

27

28

PL.S' OPP'N TO DEF.'S MOT. TO STAYii
[Case No.: 2:17-cv-01297-MJP]

**NEWMAN DU WORS LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Allen v. Woodford*,
4    No. CV-F-05-1104 OWW LJO, 2007 WL 309945 (E.D. Cal. Jan. 30, 2007) .......................... 8

5

*Ariz. Dream Act Coal. v. Brewer*,
    No. CV-12-02546-PHX-DGC, 2014 WL 171923 (D. Ariz. Jan. 15, 2014) ............................. 7
6

7    *Berne Corp. v. Virgin Islands*,
    No. 2000-141, 2008 WL 4371518 (D.C.V.I. 2008) ................................................................. 11
8

9    *Burka v. N.Y.C. Transit Auth.*,
    110 F.R.D. 660 (S.D.N.Y. 1986) .............................................................................................. 8

10    *Cheney v. U.S. Dist. Court for Dist. of Columbia*,
    542 U.S. 367 (2004) ...................................................................................................... 3, 4, 5, 10
11

12    *Children First Found., Inc. v. Martinez*,
    No. 1:04-CV-0927(NPM/RFT), 2007 WL 4344915 (N.D.N.Y. Dec. 10, 2007) ..................... 8

13    *Coastal States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) .................................................................................................. 7
14

15    *FTC v. Warner Communc'ns, Inc.*,
    742 F.2d 1156 (9th Cir. 1984) ............................................................................................... 6, 7
16

17    *Greenpeace v. Nat'l Marine Fisheries Serv.*,
    198 F.R.D. 540 (W.D. Wash. 2000) ......................................................................................... 8

18

19    *In re Bundy*,
    840 F.3d 1034 (9th Cir. 2016) .................................................................................................. 2

20    *In re Sealed Case*,
    121 F.3d 729 (D.C. Cir. 1997) ............................................................................................... 3, 4
21

22    *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*,
    145 F.3d 1422 (D.C. Cir. 1998) ............................................................................................. 7, 8

23    *In re Van Dusen*,
    654 F.3d 838 (9th Cir. 2011) .................................................................................................... 2
24

25    *Jones v. City of Coll. Park, Ga.*,
    237 F.R.D. 517 (N.D. Ga. 2006) .............................................................................................. 8
26

27    *Lair v. Bullock*,
    697 F.3d 1200 (9th Cir. 2012) .................................................................................................. 8

28

PL.S' OPP'N TO DEF.'S MOT. TO STAY iii
[Case No.: 2:17-cv-01297-MJP]

**NEWMAN DU WORS LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

*Leiva-Perez v. Holder*,
  640 F.3d 962 (9th Cir. 2011) ..................................................................... 8

*Mohawk Industries, Inc. v. Carpenter*,
  558 U.S. 100 (2009).................................................................................... 9

*Nken v. Holder*,
  556 U.S. 418 (2009)............................................................................... 2, 10

*Our Lady of Peace v. City of San Diego*,
  No. 09CV0962 WGH (MDD), 2011 WL 6826636 (S.D. Cal. Dec. 28, 2011) ......................... 7

*Texaco P.R., Inc. v. Dep't of Consumer Affairs*,
  60 F.3d 867 (1st Cir. 1995)......................................................................... 6

*United States v. Lake Cnty. Bd. of Comm'rs*,
  233 F.R.D. 523 (N.D. Ind. 2005).................................................................... 8

*United States v. Nixon*,
  418 U.S. 683 (1974)........................................................................... passim

*United States v. Sumitomo Marine & Fire Ins. Co.*,
  617 F.2d 1365 (9th Cir. 1980) ..................................................................... 11

*Viet. Veterans of Am. v. C.I.A.*,
  No. 09-CV-0037 CW JSC, 2011 WL 4635139 (N.D. Cal. Oct. 5, 2011) ................................ 6

*Warshawer v. Tarnutzer*,
  No. C14-1042 RSM, 2016 WL 4496893 (W.D. Wash. Feb. 1, 2016) .................................. 12

*Washington v. Trump*,
  847 F.3d 1151 (9th Cir. 2017) ...................................................................... 2

**Rules**

Fed. R. Civ. P. 26(b)(5)............................................................................... 8, 12

PL.S' OPP'N TO DEF.'S MOT. TO STAY iv
[Case No.: 2:17-cv-01297-MJP]

**NEWMAN DU WORS LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

**INTRODUCTION**

Defendants' request to stay enforcement of the Court's July 27, 2018 discovery order is without merit and should be denied. In making that request, Defendants eschewed alternative avenues of relief, such as asking for an extension of the Court's ten day compliance deadline. Instead, they simply declared compliance was "impossible," petitioned for the extraordinary remedy of mandamus, and moved for a stay. The reason is plain: Defendants again hope to grind this case to a halt as they re-litigate meritless arguments on appeal. The Court should deny Defendants' stay request.

Defendants do not satisfy any of the requirements for a stay. They are not likely to succeed in obtaining mandamus, because they cannot show any error, let alone the clear error necessary to obtain such extraordinary relief. Nor will Defendants suffer any irreparable harm by complying with the Court's order while their petition is pending. Plaintiffs, by contrast, will be harmed as this case will remain stalled while mandamus is decided. Finally, the public interest clearly favors advancing this case in order to ensure the rule of law is upheld and the Court's core Article III duties are discharged.

While Defendants' motion should be denied, the Court can obviate any purported claim of irreparable prejudice by making the following modifications to its order, which Plaintiffs would not oppose. The deadline for compliance would be extended until October 10, 2018, when the Ninth Circuit will hear argument on Defendants' petition, provided Defendants use this additional time to actually comply with the Court's order by (a) preparing a legally sufficient log of documents withheld on the grounds of the presidential communications privilege and submitting that log to the Court *in camera* (but not providing it to Plaintiffs unless and until the petition is denied), and (b) preparing documents withheld on grounds of the deliberative process privilege for production and certifying to the Court they have done so (but without producing such documents to Plaintiffs unless and until the petition is denied).

These modifications will ensure Defendants comply with the Court's order, guarantee that discovery is not further delayed by allowing Defendants to avoid any effort to comply until after their petition is denied, and avoid the purported harm they claim from immediate compliance.

PL.S' OPP'N TO DEF.'S MOT. TO STAY - 1
[Case No.: 2:17-cv-01297-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

**ARGUMENT**

A stay pending appeal is extraordinary. It is "not a matter of right, even if irreparable injury might otherwise result." *Washington v. Trump*, 847 F.3d 1151, 1164 (9th Cir. 2017) (internal citation omitted). In deciding a stay request, this Court considers (1) whether the government "has made a *strong showing* that [it] is likely to succeed on the merits, (2) whether the [government] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* (emphasis added). The government's burden is even higher here because it is seeking a writ of mandamus, "a 'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *In re Van Dusen*, 654 F.3d 838, 840 (9th Cir. 2011). "[O]nly exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify the invocation of this extraordinary remedy." *Id.* Moreover, the government bears the heavy burden of showing that its "right to issuance of the writ is 'clear and indisputable.'" *Id.* at 840-41. The government cannot meet this exceptionally high burden for obtaining a stay here.

**A.     Defendants' Mandamus Petition Is Unlikely to Succeed.**

The most important factor in considering a writ of mandamus is "whether the district court's order is clearly erroneous as a matter of law." *In re Van Dusen*, 654 F.3d at 841. The absence of this factor "will always defeat a petition for mandamus." *In re Bundy*, 840 F.3d 1034, 1041 (9th Cir. 2016). Clear error review "is significantly deferential." *Id.* The standard "is not met unless the reviewing court is left with a definite and firm conviction that a mistake has been committed." *Id.* Thus, it is the government's burden to make a "strong showing," *Nken v. Holder*, 556 U.S. 418, 434 (2009), that it has a "clear and indisputable" right to the "drastic and extraordinary" remedy of mandamus, *In re Van Dusen*, 654 F.3d at 840. The government cannot do so here.

**1.     Defendants Cannot Show Any Error, Let Alone Clear Error, in the Court's Denial of Their Motion for a Protective Order.**

When the rhetoric is stripped away, the only legal error Defendants claim with respect to the Court's order requiring the government to submit a privilege log of documents withheld on

PL.S' OPP'N TO DEF.'S MOT. TO STAY - 2
[Case No.: 2:17-cv-01297-MJP]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1   grounds of the presidential communications privilege is that *Cheney v. U.S. Dist. Court for Dist.*

2   *of Columbia*, 542 U.S. 367 (2004), requires that, before the government even has to invoke the

3   privilege and provide a log of the documents withheld, the Court must "narrow plaintiffs' broad

4   discovery requests, consider the non-privileged discovery that is available, and ask whether

5   plaintiffs have demonstrated a particularized need." Defs' Pet. for Mandamus, Dkt. 302-1,

6   ("Pet.") at 25; *see also id.* at 21-27; Defs' Mot. to Stay, Dkt. 300, ("Mot.") at 5. But *Cheney* does

7   not contain any such holding and did not purport to establish a general rule for all cases where

8   the President is sued or subpoenaed for documents.

9        As Plaintiffs demonstrated both in their opposition and at oral argument, *Cheney* was a

10  narrow, fact-bound decision that was limited to the unique circumstances presented in that case.

11  *See* Dkt. 278 at 7-8. It involved a claim under an arcane federal statute requiring federal advisory

12  committees to disclose certain information about their meetings. 542 U.S. at 373. At the motion

13  to dismiss stage, the district court was unable to determine whether a statutory exemption that

14  would result in dismissal of plaintiffs' claims against executive officials applied. To resolve this

15  limited issue, the court permitted plaintiffs to conduct "tightly-reined" discovery to assess

16  whether the statutory exemption applied. *Id.* at 375-76. But despite the limited nature of the

17  inquiry, plaintiffs propounded "overly broad discovery requests," which essentially asked for the

18  exact meeting records they hoped to gain in the event they succeeded on the merits, "and much

19  more besides." *Id.* at 386, 388; *see also id.* at 393 (Stevens, J., concurring) ("In other words,

20  respondents sought to obtain, through discovery, information about the [the advisory

21  committee's] work in order to establish their entitlement *to the same information*." (emphasis in

22  original)). The Supreme Court concluded that "*in these circumstances*" the government was not

23  required to "bear the onus of critiquing the unacceptable discovery requests line by line" before

24  its separation-of-powers concerns were addressed. *Id.* at 388 (emphasis added).

25       In so holding, the Court recognized that the controlling case on the presidential

26  communications privilege was *Nixon*, where the Court required the President to "first assert

27  privilege to resist disclosure." *Cheney*, 542 U.S. at 384; *see United States v. Nixon*, 418 U.S. 683,

28  713 (1974); *In re Sealed Case*, 121 F.3d 729, 744-45 (D.C. Cir. 1997). But it concluded that

PL.S' OPP'N TO DEF.'S MOT. TO STAY - 3
[Case No.: 2:17-cv-01297-MJP]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1    *Nixon* did not apply in the circumstances of that case. This was because there—unlike in *Nixon*

2    and here—the information withheld on a claim of presidential privilege did not relate to a

3    constitutional right or other issue of "constitutional dimension"; did not interfere with a "court's

4    ability to fulfill its constitutional responsibility to resolve cases and controversies within its

5    jurisdiction"; and did not undermine separation of powers by "interfer[ing] with the function of

6    the courts under Art. III," and "hamper[ing] another branch's ability to perform its 'essential

7    functions.'" *Cheney*, 542 U.S. at 384-86.

8        Moreover, here as in *Nixon*—and unlike *Cheney*—"there are various constraints . . . to

9    filter out insubstantial legal claims" that might "disrupt the functioning of the Executive branch."

10   *Cheney*, 542 U.S. at 386. Indeed, there can be no concern with requiring the Executive Branch to

11   respond to frivolous claims here. Plaintiffs challenge a Ban that: was ordered directly by the

12   President; on its face expressly discriminates against a minority group, implicating serious

13   constitutional issues involving fundamental rights; and raises constitutional claims to which the

14   discovery in question is not only relevant, but indispensable, to the searching, fact-based

15   heightened scrutiny analysis this Court is constitutionally required to perform. Moreover, and

16   unlike *Cheney*, this case is in a procedural posture where Plaintiffs' claims have not only been

17   judicially reviewed and sustained on motions to dismiss and for summary judgment, but the

18   Court has twice concluded that Plaintiffs are likely to succeed on the merits. Like *Nixon*,

19   Plaintiffs claims have survived "various constraints" that "filter out insubstantial legal claims."

20   542 U.S. at 386.

21        In short, and as Plaintiffs explained at argument, almost every aspect of *Nixon* that made it

22   "fundamentally differen[t]" from *Cheney* applies with equal force here. The Court was correct in

23   holding that *Cheney* does not control here, and it followed well settled-precedent under *Nixon*

24   and *In re Sealed Case* in placing the burden on the government to invoke the privilege in the first

25   instance and to provide an adequate privilege log. Only then can the Court determine whether the

26   privilege applies, and if so, whether Plaintiffs have met their burden of overcoming it. *In re*

27   *Sealed Case*, 121 F.3d at 744-45.

28

PL.S' OPP'N TO DEF.'S MOT. TO STAY - 4
[Case No.: 2:17-cv-01297-MJP]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1   But even if *Cheney did* require the threshold showing Defendants claim, it would be

2   satisfied here. First, there are no other sources from which Plaintiffs could obtain this

3   indispensable evidence. By definition, it concerns the *President's* "communications and

4   deliberations," and even if such information *were* available from other sources, Defendants claim

5   the privilege would apply to those sources as well. Dkt. 268, at 1. Tellingly, Defendants do not

6   even purport to specify what other sources Plaintiffs could pursue for this information, or what

7   further showing of need they could make.

8   For similar reasons, Plaintiffs have shown a "heightened, particularized need" for this

9   information. As Plaintiffs explained at oral argument, this evidence is the sort of "indispensable

10  information" on which the Court's "ability to fulfill its constitutional responsibility . . . hinges."

11  *Cheney*, 542 U.S. at 385. The Court cannot perform the "searching judicial inquiry" that strict

12  scrutiny requires without evidence of the true motivations and actual justifications for the Ban at

13  the time it was announced. Order Granting Mot. to Compel; Den. Mot. for Protective Order

14  ("Order") at 7. The same is true of the Implementation Plan, which Defendants claim is a "new

15  policy." As to both, Plaintiffs are entitled to know who was consulted and what information was

16  considered and they cannot learn that without obtaining the withheld discovery.

17  Finally, the requests on their face call for information that is not just relevant, but central to

18  the constitutional analysis. Defendants' general, unsupported assertions to the contrary do not

19  even attempt to show that any specific request was overbroad. Moreover, at this point, all the

20  Court has ordered is that Defendants finally provide a legally sufficient log. It has not yet ruled

21  whether the privilege applies, or if it does, whether Plaintiffs have met their burden of

22  overcoming it. Defendants will have ample opportunity to argue that specific documents or

23  categories of documents are not relevant to the Court's constitutionally required analysis.

24  At bottom, the draconian yet amorphous, three-part threshold showing Defendants

25  advocate would make the President effectively immune from discovery, in direct conflict with

26  *Nixon*. 418 U.S. at 706 (rejecting an "absolute, unqualified Presidential privilege of immunity

27  from judicial process"). That threshold showing, which Defendants have made up out of whole

28  cloth and which is not found in *Cheney* or any other case, is one the government could always

PL.S' OPP'N TO DEF.'S MOT. TO STAY - 5
[Case No.: 2:17-cv-01297-MJP]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1  claim is not met, and thereby avoid any judicial review of presidential claims of privilege.

2  Defendants have not shown any error in the Court's rejection of this unsupported argument, let

3  alone the clear error required for mandamus.[1]

4  
5         **2.**      **The Court Did Not Commit Clear Legal Error in Granting Plaintiffs' Motion to Compel Documents Withheld Under the Deliberative Process Privilege.**

6         Defendants also fail to show any clear legal error in the Court's order granting Plaintiffs'

7  motion to compel the production of documents withheld solely on grounds of the deliberative

8  process privilege. Defendants do not dispute that the Court properly applied the balancing test

9  established in *FTC v. Warner Communc'ns, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984), and do

10  not seriously critique the Court's application of that test to the facts here, which is subject to

11  highly deferential review.  Pet. at 29; *see, e.g. Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60

12  F.3d 867, 885 (1st Cir. 1995) (explaining "the deliberative process privilege is 'a discretionary

13  one'" and therefore refusing "to tinker with the [district] court's determination that that the

14  [plaintiff's] interest in due process and fairness outweighed [the government's] interest in

15  shielding its deliberations from public view"). While Defendants characterize the Court's

16  analysis of the fourth *Warner* factor—the extent to which disclosure would hinder frank and

17  independent discussions—as a "radical discounting of the government's interest in

18  confidentiality," Pet. at 31, they do not cite a single authority in support of that contention, and

19  Defendants' own supporting authority says the opposite, rejecting application of the privilege

20  even in the military and national security context. *See Viet. Veterans of Am. v. C.I.A.*, No. 09-

21  CV-0037 CW JSC, 2011 WL 4635139, at *12 (N.D. Cal. Oct. 5, 2011) (finding "this factor

22  
---

[1] On August 6, 2018, the court in *Doe v. Trump*, Civ. Action No. 17-1597 (D.D.C.), issued two decisions that may
23  bear indirectly on the issues here. The first denied Defendants' motions to dismiss or in the alternative for summary
judgment and to dissolve the court's prior preliminary injunction. Among other things, it adopted (and quoted)
24  this Court's reasoning in rejecting Defendants' argument that the case was moot and plaintiffs lacked standing and
the injunction should be dissolved because the Mattis Implementation Plan is a "new" policy. *See* Dkt. 157 at 9
25  ("[T]he Mattis Implementation Plan is just that -- a plan that *implements* the President's directive that transgender
people be excluded from the military."); *see also id.* at 17 n.6, 24, 25, 29. In a second decision, the court granted
26  Defendants' motion to dismiss the President as a party "to avoid unnecessary constitutional confrontations," but
"emphasiz[ed]" that such dismissal would not prevent the court from "review[ing] the legality of the President's
27  actions" or awarding Plaintiffs "*all* of the relief they seek" if they prevail. Dkt. 155 at 2. Once again, the court
expressly noted, and later reiterated, that "[t]o the extent that there exists relevant and appropriate discovery related
28  to the President, Plaintiffs will still be able to obtain that discovery despite the President not being a party to the
case." *Id.* at 6; *see also id.* at 8.

PL.S' OPP'N TO DEF.'S MOT. TO STAY - 6
[Case No.: 2:17-cv-01297-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

alone is not dispositive" and holding plaintiffs' need for documents overcame government's

interest in confidentiality). Defendants also criticize the Court's conclusion that all the withheld

documents are relevant, challenging in particular the relevance of documents pertaining to the

Carter Policy. Mot. at 6 (quoting Order at 7). But Plaintiffs already squarely rebutted this

argument, explaining that "documents demonstrating that the same issues and concerns

Defendants now cite to support the Ban were previously considered and rejected by military

leaders are relevant to Plaintiffs' rebuttal that Defendants' purported justifications are simply

post-hoc rationalizations sought to justify animus and discriminatory intent." Dkt. 273, at 4. And

the fact that the Court concluded the withheld documents are relevant is no surprise. After all,

Defendants identified them as responsive to Plaintiffs' requests and withheld them precisely

because they pertain to deliberations about military service by transgender individuals.

Defendants' principal complaint is that the Court erred by applying its *Warner* analysis "en

masse rather than assessing specific documents or categories of documents." Pet. at 30. Once

again, however, Defendants cite no authority even suggesting the Court must apply the *Warner*

factors on a document-by-document basis as to each of the 19,000 documents Defendants have

withheld on deliberative process grounds. The lone case they cite, *Coastal States Gas Corp. v.*

*Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980), held only that it is the government's

burden to demonstrate the privilege applies on a document-by-document basis. It did not address

the separate question of whether the privilege may be *overcome* by arguments that apply

universally to all documents withheld—and in fact the same court the government cites, the D.C.

Circuit, subsequently considered that very question and squarely held that it could. *In re*

*Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422,

1424 (D.C. Cir. 1998); *accord Ariz. Dream Act Coal. v. Brewer*, No. CV-12-02546-PHX-DGC,

2014 WL 171923, at *3 (D. Ariz. Jan. 15, 2014) ("Even if Defendants had made this threshold

showing [that every document were privileged], the Court would conclude, under the four factors

articulated in *Warner*, that the qualified privilege should not be applied *in this case*." (emphasis

added)); *Acad. of Our Lady of Peace v. City of San Diego*, No. 09CV0962 WGH (MDD), 2011

WL 6826636, at *8 (S.D. Cal. Dec. 28, 2011) ("Accordingly, even if privileged, the Court

PL.S' OPP'N TO DEF.'S MOT. TO STAY - 7
[Case No.: 2:17-cv-01297-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1   ORDERS the withheld documents disclosed as the qualified deliberative process privilege is

2   overcome *in this case.*" (emphasis added)).

3          Defendants also simply ignore a separate body of settled law holding that the deliberative

4   process privilege has no application where, as here, Plaintiffs' claims turn on the government's

5   intent and deliberations. *See In re Subpoena Duces Tecum*, 145 F.3d at 1424 ("If the plaintiff's

6   cause of action is directed at the government's intent, however, it makes no sense to permit the

7   government to use the privilege as a shield. For instance, it seems rather obvious to us that the

8   privilege has no place . . . in a constitutional claim for discrimination. . . . We therefore see no

9   need to engage in the balancing test applied in deliberative process privilege cases." (footnote

10  omitted)).[2] These cases provide an independent basis for the Court's holding.

11         In sum, Defendants cannot show any error, much less the clear error required for

12  mandamus. For this reason alone, their request for a stay should be denied.

13  **B.     Defendants Will Not Suffer Irreparable Harm.**

14         A further, essential prerequisite for a stay is a showing that, absent a stay, the movant will

15  be irreparably harmed. *Lair v. Bullock*, 697 F.3d 1200, 1214 (9th Cir. 2012); *Leiva-Perez v.*

16  *Holder*, 640 F.3d 962, 970 (9th Cir. 2011). Defendants do not, and cannot, show such harm here.

17  For that reason, too, their motion should be denied.

18         As to the presidential communications privilege, this Court ordered only that Defendants

19  finally comply, by a date certain, with its prior April 19, 2018 order that they provide a legally

20  sufficient log. Defendants do not even attempt to show how that order, or their compliance with

21  their legal obligation under Rule 26(b)(5), somehow constitutes irreparable harm. To the extent

22  Defendants assert they cannot prepare the legally required log without disclosing privileged

23  information, Mot. at 2; Pet. at 26-27, Rule 26(b)(5) itself provides the answer: it expressly

24  permits a party to produce a log "without revealing information itself privileged or protected."

25  Fed. R. Civ. P. 26(b)(5). Moreover, Defendants do not cite any authority for the proposition that

26  _____

27  [2] *Accord, e.g., Greenpeace v. Nat'l Marine Fisheries Serv.*, 198 F.R.D. 540 (W.D. Wash. 2000); *Allen v. Woodford*, No. CV-F-05-1104 OWW LJO, 2007 WL 309945, at *9 (E.D. Cal. Jan. 30, 2007); *Children First Found., Inc. v. Martinez*, No. 1:04-CV-0927(NPM/RFT), 2007 WL 4344915, at *7 (N.D.N.Y. Dec. 10, 2007); *Jones v. City of Coll. Park, Ga.*, 237 F.R.D. 517, 521 (N.D. Ga. 2006); *United States v. Lake Cnty. Bd. of Comm'rs*, 233 F.R.D. 523, 526 (N.D. Ind. 2005); *Burka v. N.Y.C. Transit Auth.*, 110 F.R.D. 660, 667 (S.D.N.Y. 1986).

28

1  identifying the individuals advising the President is in and of itself privileged such that the

2  government cannot be compelled to prepare a compliant log. On that theory, courts and

3  requesting parties could never evaluate claims of presidential communications privilege.

4       As for the deliberative process privilege, where the Court did order disclosure, Defendants'

5  suggestion that disclosing documents claimed to be privileged constitutes irreparable harm is

6  undermined, if not eliminated entirely, by the Supreme Court's decision in *Mohawk Industries,*

7  *Inc. v. Carpenter*, 558 U.S. 100 (2009). There, the Court rejected Mohawk's claim that "the right

8  to maintain attorney-client confidences" would be "irreparably destroyed absent immediate

9  appeal of adverse privilege rulings":

10           In our estimation, postjudgment appeals generally suffice to protect the rights
             of litigants and ensure the vitality of the attorney-client privilege. Appellate
11           courts can remedy the improper disclosure of privileged material in the same
             way they remedy a host of other erroneous evidentiary rulings: by vacating an
12           adverse judgment and remanding for a new trial in which the protected
             material and its fruits are excluded from evidence. . . . Mohawk is undoubtedly
13           correct that an order to disclose privileged information intrudes on the
             confidentiality of attorney-client communications. But deferring review until
14           final judgment does not meaningfully reduce the *ex ante* incentives for full and
             frank consultations between clients and counsel.
15

16

17  *Id.* at 108-09. Tellingly, the cases Defendants cite to the contrary were all decided prior to

18  *Mohawk*. *See* Mot. at 3.

19       Perhaps recognizing that disclosure does *not* constitute irreparable harm, Defendants

20  appear to place their principal reliance on the purported "staggering burden" of complying with

21  the Court's order within ten days. Mot. at 3-4. However, Defendants simply ignore that they

22  created this burden by invoking the presidential communications privilege as to every single

23  responsive document from the White House (apparently 9,000 documents in total) and by

24  invoking the deliberative process privilege as to "every document remotely connected to the

25  deliberative process here," Pet. at 30-31 (19,000 documents in total). They then compounded it

26  by failing to comply for three-and-a-half months with the Court's April 19, 2018 order that they

27  prepare a legally sufficient log of all documents withheld on grounds of the presidential

28  communications privilege, and by evading Plaintiffs' repeated requests, starting in February

1    2018, for adequate privilege logs as to thousands of documents withheld on other grounds.

2    Defendants also ignore that if the ten day deadline for compliance were truly Defendants'

3    concern, they could have addressed it by simply requesting more time.

4        In any event, the harm Defendants complain about will be avoided if the Court modifies its

5    order to grant an extension of time and make the other modifications with respect to Defendants'

6    compliance set forth in Section E below.

7    **C.    A Stay Will Harm Plaintiffs and Unnecessarily Delay This Proceeding.**

8        A stay would harm Plaintiffs—and reward Defendants for filing a meritless petition for

9    mandamus—by further and indefinitely delaying any effort by Defendants: (1) to prepare the log

10   of documents withheld on grounds of executive privilege that this Court first ordered three-and-

11   a-half months ago; (2) to remedy the deficiencies in their other privilege logs that Plaintiffs have

12   been complaining about since February; and (3) to review and prepare for production the 19,000

13   documents they have withheld solely on grounds of deliberative process privilege. This would

14   mean that if and when Defendants' petition is denied, discovery will be further delayed while

15   Defendants then comply with the Court's July 27, 2018 order. This further and wholly

16   unnecessary delay can be avoided by denying Defendants' motion for a stay, extending the

17   deadline for compliance, and making the other modifications to the Order discussed in Part E

18   below.

19   **D.    The Public Interest Lies With Ensuring Compliance With the Court's Order.**

20       Finally, Defendants bear the burden of showing "where the public interest lies," *Nken v.*

21   *Holder*, 556 U.S. 418 (2009), and here they do not carry it. Nor could they. The public interest

22   favors enforcing compliance with the Court's order for at least two reasons. First, the

23   government's attempt to stay enforcement unnecessarily delays the Court's ability to obtain

24   information that is indispensable to the performance of its core Article III responsibilities to

25   evaluate and vindicate Plaintiffs' constitutional rights. *Cheney*, 542 U.S. at 385 (noting that the

26   "availability of certain indispensable information" may impair a "court's ability to fulfill its

27   constitutional responsibilities to resolve cases and controversies within its jurisdiction"); *Nixon*,

28

PL.S' OPP'N TO DEF.'S MOT. TO STAY - 10
[Case No.: 2:17-cv-01297-MJP]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1   418 U.S. at 707. Without this discovery, the District Court cannot perform the "searching judicial

2   inquiry that strict scrutiny requires." Order at 7.

3       Second, the public interest lies with upholding the nation's "historic commitment to the

4   rule of law," and ensuring that even the President is not above the law. *Nixon*, 418 U.S. at 708

5   ("The very integrity of the judicial system and public confidence in the system depend on full

6   disclosure of all the facts, within the framework of the rules of evidence."). That includes

7   complying with court orders, which is particularly relevant here, where a stay would allow the

8   government to continue to disregard this Court's prior April 19, 2018 order that it prepare a

9   legally sufficient privilege log. *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d

10   1365, 1370 (9th Cir. 1980) ("The public interest requires not only that Court orders be obeyed

11   but further that Governmental agencies which are charged with the enforcement of laws should

12   set the example of compliance with Court orders." ) (alterations omitted); *see also Berne Corp. v.

13   Virgin Islands*, No. 2000-141, 2008 WL 4371518, at *6 (D.C.V.I. 2008) ("[T]he public interest

14   disfavors such deliberate contumacy by the very government that expects compliance with its

15   laws.").

16   **E.    The Court Can Obviate Defendants' Claimed Prejudice While Ensuring They**
**       Comply With the Order Pending Resolution of Their Mandamus Petition.**
17

18       While a stay is not warranted, Plaintiffs believe there is room for reasonable modifications

19   to the Court's order to obviate the two harms Defendants claim while at the same time ensuring

20   that they comply with the order while their mandamus petition is pending. First, Defendants

21   claim that complying with the Court's ten day deadline is an "impossible," "herculean task."

22   Mot. at 1, 3-4; Pet. at 3, 6. This claimed prejudice would be eliminated by extending the deadline

23   for compliance with respect to the portions of the Court's order Defendants complain about to

24   October 10, 2018, when the Ninth Circuit has scheduled argument on Defendants' petition,

25   which Plaintiffs would not oppose. With more than 60 additional days to comply, Defendants

26   cannot credibly argue the schedule is impossible.

27       Second, Defendants claim that they will suffer irreparable harm from complying because it

28   "may" result in the disclosure of information they believe is privileged. The Court can mitigate

PL.S' OPP'N TO DEF.'S MOT. TO STAY - 11
[Case No.: 2:17-cv-01297-MJP]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1  any purported harm from disclosure by establishing procedures that allow for Defendants to

2  demonstrate their compliance with the order while not requiring disclosure to Plaintiffs unless

3  and until the Ninth Circuit denies their mandamus petition. *See Warshawer v. Tarnutzer*, No.

4  C14-1042 RSM, 2016 WL 4496893, at *4 (W.D. Wash. Feb. 1, 2016) (denying motion to stay

5  where court could adopt procedures to avoid disclosure of privileged documents "in a way that

6  protects them until the Petition for Writ of Mandamus is decided"). Thus, Defendants'

7  contention that the President's privilege log "may" disclose privileged information can be

8  addressed by requiring that Defendants submit the required log to the Court *in camera* by

9  October 10th, and then only disclose the log to Plaintiffs upon denial of Defendants' mandamus

10  petition. As to the Court's order that Defendants produce documents withheld under the

11  deliberative process privilege, the Court could require Defendants to perform the re-review they

12  claim is necessary, and certify to the Court and Plaintiffs that all documents are ready for

13  production, by October 10th. However, the documents would not be produced to Plaintiffs unless

14  and until mandamus is denied.

15      Defendants do not specifically address the Court's order that Defendants revise their *other*

16  privilege logs to "provide sufficient information to assess the claimed privilege" and satisfy Rule

17  26(b)(5)(a)(i)-(ii). Order at 11. As to that part of the Court's order, Plaintiffs would not oppose a

18  shorter extension of 14 additional days, or until August 20, 2018, for Defendants to comply.

19      These modifications would ensure that Defendants comply with the Court's order while

20  their petition is pending, guarantee that discovery is not further delayed by allowing Defendants

21  to avoid compliance until after their petition is denied, and avoid the purported harm Defendants

22  claim from immediate compliance.

23                          **CONCLUSION**

24      Defendants' motion to stay enforcement of the July 28, 2018 discovery order is legally

25  insufficient and should be denied. However, the purported harms Defendants assert can be

26  obviated by modifying the Court's order as discussed above, which Plaintiffs would not oppose.

27

28

PL.S' OPP'N TO DEF.'S MOT. TO STAY - 12
[Case No.: 2:17-cv-01297-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

Respectfully submitted August 8, 2018.

**NEWMAN DU WORS LLP**

_____

Derek A. Newman, WSBA No. 26967
*dn@newmanlaw.com*
Jason B. Sykes, WSBA No. 44369
*jason@newmanlaw.com*
2101 Fourth Ave., Ste. 1500
Seattle, WA 98121
(206) 274-2800

**LAMDBA LEGAL DEFENSE AND
EDUCATION FUND, INC.**
Tara Borelli, WSBA No. 36759
*tborelli@lambdalegal.org*
Camilla B. Taylor (admitted pro hac vice)
Peter C. Renn (admitted pro hac vice)
Sasha Buchert (admitted pro hac vice)
Kara Ingelhart (admitted pro hac vice)
Carl Charles (admitted pro hac vice)

**OUTSERVE-SLDN, INC.**
Peter Perkowski (admitted pro hac vice)

**KIRKLAND & ELLIS LLP**
James F. Hurst, P.C. (admitted pro hac vice)
Stephen R. Patton (admitted pro hac vice)
Jordan M. Heinz (admitted pro hac vice)
Scott Lerner (admitted pro hac vice)
Vanessa Barsanti (admitted pro hac vice)
Daniel I. Siegfried (admitted pro hac vice)

*Attorneys for Plaintiffs*

PL.S' OPP'N TO DEF.'S MOT. TO STAY - 13
[Case No.: 2:17-cv-01297-MJP]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1

**CERTIFICATE OF SERVICE**

2      The undersigned certifies under penalty of perjury under the laws of the United States of

3  America and the laws of the State of Washington that all participants in the case are registered

4  CM/ECF users and that service of the foregoing documents will be accomplished by the

5  CM/ECF system on August 8, 2018.

6

7

8                                            Jason B. Sykes, WSBA No. 44369
                                             *jason@newmanlaw.com*
9                                            2101 Fourth Ave., Ste. 1500
                                             Seattle, WA 98121
10                                           (206) 274-2800

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PL.S' OPP'N TO DEF.'S MOT. TO STAY - 14     Newman Du Wors LLP     2101 Fourth Avenue, Suite 1500
[Case No.: 2:17-cv-01297-MJP]                                     Seattle, Washington 98121
                                                                  (206) 274-2800