UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RYAN KARNOSKI, et al.,<br><br>                Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, et al.,<br><br>                Defendants. | CASE NO. C17-1297-MJP<br><br>ORDER DENYING MOTION TO STAY |

THIS MATTER comes before the Court on Defendants' Motion to Stay Compliance with the Court's Discovery Order. (Dkt. No. 300.) Having reviewed the Motion, the Response (Dkt. No. 306), the Reply (Dkt. No. 307), the Notices of Supplemental Authority (Dkt. Nos. 308, 309), and the related record, the Court DENIES the Motion. While the Court declines to stay its Order Granting Plaintiffs' Motion to Compel and Denying Defendants' Motion for a Protective Order ("Discovery Order") (Dkt. No. 299), it hereby ORDERS that the deadline for compliance be extended until the Ninth Circuit has ruled on Defendants' Emergency Petition for Writ of Mandamus ("Mandamus Petition"), on which oral argument is expected to be heard on October

ORDER DENYING MOTION TO STAY - 1

10, 2018. See In re Donald Trump, No. 18-72159, Dkt. No. 1 (9th Cir. Aug. 1, 2018); Dkt. No. 4 (9th Cir. Aug. 2, 2018). In the meantime, Defendants are directed to prepare legally sufficient privilege logs for documents withheld under the presidential communications and deliberative process privileges and prepare to turn over materials withheld solely under the deliberative process privilege. Defendants shall certify to the Court by no later than October 10, 2018 that they have taken these steps and are prepared to comply with its Discovery Order, but need not turn over their revised privilege logs or other withheld materials until further order.

**Background**

On July 27, 2018, the Court issued its Discovery Order granting Plaintiffs' motion to compel discovery withheld under the deliberative process privilege and denying Defendants' motion to preclude discovery directed at President Trump.[1] (Dkt. No. 299.) The Court ordered Defendants to (1) turn over documents withheld solely under the deliberative process privilege; (2) produce a privilege log identifying documents, communications, and other materials withheld under the presidential communications privilege; and (3) produce revised privilege logs that comply with Federal Rule of Civil Procedure 26(b)(5). (Id. at 11.) The Court ordered Defendants to comply within ten days. (Id.)

On July 31, 2018, Defendants filed this Motion to stay compliance with the Discovery Order pending resolution of their Mandamus Petition, which they filed with the Ninth Circuit on the following day. (Dkt. No. 300); see also In re Donald Trump, Dkt. No. 1. On August 2, the Ninth Circuit referred the Mandamus Petition to the panel assigned to hear Defendants' appeal regarding the preliminary injunction. In re Donald Trump, Dkt. No. 4. The panel granted a

---

[1] Many of the facts relevant to this Motion are set forth in the Discovery Order and the Court does not repeat them here. (See Dkt. No. 299 at 2-4.)

temporary stay of the Court's Discovery Order pending this Court's ruling on the instant Motion, which will remain in effect for seven days following the entry of this Order. (Id.)

**Discussion**

I.  **Motion to Stay**

A stay pending appeal "is an intrusion into the ordinary processes of administration and judicial review." Nken v. Holder, 556 U.S. 418, 427 (2009) (internal quotation marks and citation omitted). As such, it is "not a matter of right, even if irreparable injury might otherwise result." Id. at 433 (citation omitted). "It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." Id. (internal quotation marks and citation omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." Id. at 433-34.

In determining whether to grant a stay, the Court considers: (1) whether Defendants have made a strong showing that they are likely to succeed on the merits of their Mandamus Petition; (2) whether Defendants will be irreparably injured absent a stay; (3) whether a stay will substantially injure Plaintiffs; and (4) whether the public interest supports a stay. Id. at 434.

  **A.  Likelihood of Success on the Merits**

The Court finds that Defendants have not made a strong showing that they are likely to prevail on merits of their Mandamus Petition. A writ of mandamus is "a 'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" In re Van Dusen, 654 F.3d 838, 840 (9th Cir. 2011) (quoting Ex parte Fahey, 332 U.S. 258, 259-60 (1947)). The critical factor in determining whether to grant the writ is "whether the district court's order is clearly erroneous as a matter of law," and "only exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify the invocation of this . . . remedy."

Id. at 840-41 (quoting Cheney v. U.S. Dist. Ct. for the Dist. of Columbia, 542 U.S. 367, 380 (2004)). While recognizing that precedent concerning the presidential communications and deliberative process privileges is limited in the Ninth Circuit, the Court stands by its Discovery Order.

### (1) Presidential Communications Privilege

Defendants contend that discovery directed at President Trump is foreclosed by Cheney, such that Plaintiffs must "exhaust other sources of non-privileged discovery and establish a heightened, particularized need for the specific information or documents" before the President is required to assert the privilege or provide a privilege log. (Mandamus Pet. at 22, 28-35.) Defendants contend that "[t]he district court made no attempt to reconcile its order with Cheney and the separation-of-powers principles underlying that decision." (Id. at 29.)

The Court does not read Cheney to stand for the proposition claimed by Defendants, and concludes that they are unlikely to succeed on the merits of their petition as to the presidential communications privilege. In Cheney, the Supreme Court explained that discovery directed at the President implicates separation of powers concerns, such that courts should not "require the Executive Branch to bear the onus of critiquing . . . unacceptable discovery requests line by line." 542 U.S. at 388. But Cheney does not purport to preclude all civil discovery directed at the President, nor to impose any of the threshold requirements suggested by Defendants. The Supreme Court explained that the discovery requests at issue were "unacceptable" because they were "overly broad," "ask[ed] for everything under the sky," and sought "all the disclosure to which [plaintiffs] would be entitled in the event they prevail on the merits, and much more besides." Id. at 386, 388. The Court explained that the withheld information did not relate to a constitutional right or otherwise implicate a "constitutional dimension," nor would its

withholding interfere with the court's "ability to fulfill its constitutional responsibility to resolve cases and controversies within its jurisdiction" or "hamper [its] ability to perform its 'essential functions.'" Id. at 384 (quoting United States v. Nixon, 418 U.S. 683, 707 (1974)). For these reasons, and "*in these circumstances*," the Court found that the otherwise well-settled requirement that the President "first assert privilege to resist disclosure" did not apply. Id. at 384, 388 (emphasis added); see also Nixon, 418 U.S. at 709, 710.

The situation here is vastly different. The discovery that Plaintiffs seek from President Trump is not "unacceptable" or "overly broad" but is instead narrowly focused and indispensable to resolving this case on the merits. Plaintiffs challenge a Ban that was ordered by President Trump, announced by President Trump, and which appears to have been "devised by the President and the President alone." (Dkt. No. 233 at 29); see also Stone, et al. v. Trump, et al., 2018 WL 3866676, at *4 (D. Md. Aug. 14, 2018) ("The Presidential tweets put the President front and center as the potential discriminating official."). As in Nixon, this case involves a concern of "constitutional dimension," and indeed, one of the most critical that a court may be called upon to resolve—state-sponsored discrimination against a suspect class. (See Dkt. No. 233 at 20-24.) Also as in Nixon, President Trump's refusal to comply with the judicial process threatens to "upset the constitutional balance of 'a workable government' and gravely impair the role of the courts under Article III." Nixon, 418 U.S. at 707. Repeatedly, this Court has ordered Defendants to identify the "Generals and military experts" with whom President Trump consulted. (See, e.g., Dkt. Nos. 204, 210, 233.) Repeatedly, Defendants have refused to do so. To date, it remains the case that "the *only* evidence concerning the lead-up to [President Trump's] Twitter Announcement reveals that military officials were entirely unaware of the Ban, and that the abrupt change in policy was 'unexpected.'" (Dkt. No. 233 at 29 (citations omitted).)

The government's lack of candor in this regard is disconcerting, and provides all the more reason why the presidential communications privilege cannot be used in the manner claimed by Defendants.

Accordingly, the Court stands by its previous ruling that Nixon and In re Sealed Case—not Cheney—provide the applicable standard in this constitutional case. President Trump must expressly assert the presidential communications privilege and must provide a privilege log that complies with Rule 26(b)(5).[2]

### (2) Deliberative Process Privilege

Defendants' contend that the Court erred in its evaluation of the deliberative process privilege by failing to apply the balancing test from FTC v. Warner Commc'ns Inc., 742 F.2d 1156 (9th Cir. 1984) on a document-by-document basis. (Dkt. No. 300 at 6-7; see also Mandamus Pet. at 35-40.) In particular, Defendants contend that the Court's ruling will result in the disclosure of "deliberative documents related to the policy announced by former Secretary of Defense Ashton Carter during the prior administration, which are plainly not relevant to Plaintiffs' challenge to the President's 2017 Memorandum." (Dkt. No. 300 at 7.) Further, Defendants contend that "release of DoD information protected by the deliberative process

---

[2] Defendants claim there is a "significant risk that the Court's Order, which requires a highly specific privilege log, will itself require disclosure of privileged material." (Dkt. No. 307 at 3.) Rule 26(b)(5) specifically states that the log be produced "*without revealing information itself privileged or protected . . .*" Fed. R. Civ. P. 26(b)(5)(A)(ii) (emphasis added). Defendants do not cite any authority—and the Court is aware of none—that supports their claim that the presidential communications privilege "protects the President from being compelled to disclose the identities of the particular advisors from whom he sought advice on particular subjects" or, in particular, the identities of the "Generals and military experts" with whom he publicly proclaimed to have consulted. (Dkt. No. 307 at 3-4.) In any event, Defendants need not produce their revised privilege logs until the Ninth Circuit has ruled on the Mandamus Petition.

privilege would have a substantial and immediate chilling effect on policy deliberation and development within DoD." (Dkt. No. 307 at 7.)

The Court finds no support for Defendants' claim that the Warner factors must be applied on a document-by-document basis.³ To the contrary, the deliberative process privilege is qualified, and as the Court noted in its Discovery Order, other courts have recognized that the privilege does not apply *at all* in cases involving claims of governmental misconduct or where the government's intent is at issue. (Dkt. No. 299 at 6 (citing In re Sealed Case, 121 F.3d 729, 738 (D.C. Cir. 1997); In re Subpoena Duces Tecum, 145 F.3d 1422, 1424-25 (D.C. Cir. 1998)); see also Stone, 2018 WL 3866676, at *3 (explaining that the deliberative process privilege does not protect documents "likely to contain evidence reflecting Defendants' intent" regarding the Ban and that "[i]t also could not be more clear that the Defendants' intent—whether it was for military purposes or whether it was purely for political and discriminatory purposes—is at the very heart of this litigation.").

The Court also finds no support for Defendants' claim that the withheld documents are "plainly not relevant" to Plaintiffs' claims. (Dkt. No. 300 at 7.) Defendants themselves identified these documents as responsive to Plaintiffs' discovery requests, and each pertains to deliberations concerning military service by transgender people. The Court has already found

---

³ The Court also notes that, given the deficiencies in Defendants' privilege logs, it would not have been possible to evaluate the privilege on a document-by-document basis. The privilege logs reviewed by the Court categorize documents broadly and provide generic, non-specific descriptions as to their content and the reason for their withholding. (See, e.g., Dkt. No. 246, Ex. 11 (describing documents as "Slides for policymaking meeting"); Ex. 13 (describing document as "E-mail re: Slides (with attachments)" and describing reason for withholding as "Predecisional and deliberative internal agency document created as part of the agency's process of developing courses of action for implementing DoD's policy on the service and accessions of military personnel and the continuous process of assessing the policy's impact on military readiness.").)

that the Ban's constitutionality (i.e., whether it was sincerely motivated by compelling state interests, rather than by prejudice or stereotype) "necessarily turns on facts related to Defendants' deliberative process," including its review of the Carter Policy and the deliberations that preceded it. (Dkt. No. 233 at 28.)

Finally, for the same reasons identified in its Discovery Order, the Court rejects Defendants' claim that requiring them to turn over documents withheld solely under the deliberative process privilege would have a "substantial and immediate chilling effect on policy deliberation and development." (Dkt. No. 307 at 7.) It is Defendants' burden to show that the privilege applies, yet they have made no effort to explain *with specificity* why the disclosure of relevant, responsive documents—many of which appear to be factual and non-deliberative— would have a greater chilling effect in this case than in any other. Were the government permitted to withhold relevant documents and information based upon the abstract risk of a chilling effect, it is difficult to imagine a case in which the deliberative process privilege would not preclude disclosure.

Accordingly, the Court stands by its previous ruling that the deliberative process privilege does not apply in this case.

**B. Likelihood of Irreparable Harm**

In light of the Court's decision to extend the deadline for compliance with its Discovery Order pending the Ninth Circuit ruling on Defendants' Mandamus Petition, the Court finds that Defendants have not shown that they will suffer irreparable harm absent a stay. While Defendants contend that reviewing documents and revising their privilege logs will impose upon them a "staggering burden" requiring hundreds of hours of work and dozens of lawyers (Dkt. No. 300 at 4; Dkt. No. 307 at 2-3), they cite no authority for the proposition that requiring them

to comply with their *existing* obligations under Rule 26 can somehow constitute "irreparable harm." Further, any burden imposed by the Discovery Order is entirely of Defendants' own making. Over the past five months, the Court has repeatedly directed Defendants to turn over relevant documents and information and provide privilege logs that comply with Rule 26(b)(5). (See, e.g., Dkt. Nos. 204, 210, 233, 235.) Despite each of these orders, Defendants have maintained their overbroad and unsupported claims of privilege. Finally, while Defendants repeatedly point to the number of documents they will be required to review, they have failed to identify any reason why good faith compliance with the discovery process in this case would impose a greater burden or involve a greater allocation of resources than in any other. The Court is confident that the federal government has the resources to comply with its order between now and October 10, 2018.

### C. Injury to Plaintiffs and Impact on the Public Interest

The Court finds that the stay requested by Defendants would harm Plaintiffs and the public interest. This case is currently set to proceed to trial in April 2019. (See Dkt. No. 242.) Were the Court to permit Defendants to further delay compliance with its prior orders and their discovery obligations, there can be no doubt that Plaintiffs' ability to litigate the case and prepare for trial—and the Court's ability to enforce the rule of law and thereby perform its essential role in our system of government—would be harmed. See Nixon, 418 U.S. at 708 ("The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence."); see also United States v. Sumitomo Marine & Fire Ins. Co., Ltd., 617 F.2d 1365, 1370 (9th Cir. 1980) ("The public interest requires not only that Court orders be obeyed but further that Governmental agencies

which are charged with the enforcement of laws should set the example of compliance with Court orders.").

**Conclusion**

The Court ORDERS as follows:

(1) The Court DENIES Defendants' Motion for a Stay;

(2) The Court ORDERS Defendants to comply with its Discovery Order;

(3) The Court ORDERS that the deadline for compliance with its Discovery Order be extended until the Ninth Circuit has ruled on Defendants' Mandamus Petition; and

(4) The Court ORDERS Defendants to:

    (a) prepare legally sufficient privilege logs for documents withheld under the presidential communications and deliberative process privileges;

    (b) prepare to turn over materials withheld solely under the deliberative process privilege; and

    (c) certify to the Court by no later than October 10, 2018 that they have taken these steps and are prepared to comply with its Discovery Order.

(5) However, Defendants need not turn over their revised privilege logs or other withheld materials until further order of this Court.

The clerk is ordered to provide copies of this order to all counsel and to the Clerk of Court for the Ninth Circuit.

Dated August 20, 2018.

Marsha J. Pechman
United States District Judge