No. 18-72159

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

*In re* DONALD J. TRUMP, *et al.*,
Petitioners.

DONALD J. TRUMP, in his official capacity as President of the United States; UNITED STATES OF AMERICA; JAMES N. MATTIS, in his official capacity as Secretary of Defense; U.S. DEPARTMENT OF DEFENSE; U.S. DEPARTMENT OF HOMELAND SECURITY; KIRSTJEN M. NIELSEN, Secretary of Homeland Security,
Petitioners-Defendants,

v.

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON,
Respondent,

RYAN KARNOSKI; CATHRINE SCHMID; D.L.; LAURA GARZA; HUMAN RIGHTS CAMPAIGN; GENDER JUSTICE LEAGUE; LINDSEY MULLER; TERECE LEWIS; PHILLIP STEPHENS; MEGAN WINTERS; JANE DOE; CONNER CALLAHAN; AMERICAN MILITARY PARTNER ASSOCIATION;
Real Parties in Interest-Plaintiffs,

STATE OF WASHINGTON,
Real Party in Interest-Intervenor Plaintiff.

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3:
## RENEWED MOTION FOR A STAY PENDING CONSIDERATION OF THE
## GOVERNMENT'S PETITION FOR A WRIT OF MANDAMUS

CHAD A. READLER
  *Acting Assistant Attorney General*

HASHIM M. MOOPPAN
  *Deputy Assistant Attorney General*

BRINTON LUCAS
  *Counsel to the Assistant Attorney General*

MARK R. FREEMAN
MARK B. STERN
MARLEIGH D. DOVER
TARA S. MORRISSEY
BRAD HINSHELWOOD
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice, Room 7256*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530*

# CIRCUIT RULE 27-3 CERTIFICATE

The undersigned counsel certifies that the following is the information required by Circuit Rule 27-3:

**(1) Telephone numbers and addresses of the attorneys for the parties**

*Counsel for Petitioners Donald Trump, et al.:*

Chad A. Readler (Chad.A.Readler@usdoj.gov)
Hashim M. Mooppan (Hashim.Mooppan@usdoj.gov)
Brinton Lucas (Brinton.Lucas@usdoj.gov)

Mark R. Freeman (Mark.Freeman2@usdoj.gov)
Mark B. Stern (Mark.Stern@usdoj.gov)
Marleigh D. Dover (Marleigh.Dover@usdoj.gov)
Tara S. Morrissey (Tara.Morrissey@usdoj.gov)
Brad Hinshelwood (Bradley.A.Hinshelwood@usdoj.gov)
Attorneys, Appellate Staff
Civil Division, Room 7261
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530
202-353-9018

*Counsel for Real Party in Interest-Intervenor Plaintiff:*

La Rond Baker (larondb@atg.wa.gov)
Colleen M. Melody (colleenm1@atg.wa.gov)
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

*Counsel for Real Parties in Interest-Plaintiffs:*

Vanessa Barsanti (vanessa.barsanti@kirkland.com)
Jordan M. Heinz (jheinz@kirkland.com)
James F. Hurst (james.hurst@kirkland.com)
Scott Lerner (scott.lerner@kirkland.com)

Daniel I. Siegfried (Daniel.siegfried@kirkland.com)
Joseph B. Tyson (Ben.Tyson@kirkland.com)
Stephen R. Patton (Stephen.patton@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
312-862-2205

Tara Borelli (tborelli@lambdalegal.org)
Lambda Legal Defense & Education Fund, Inc.
730 Peachtree St., NE, Suite 640
Atlanta, GA 30308
404-897-1880

Jon W. Davidson (jdavidson@lambdalegal.org)
Natalie Nardecchia (nnardecchia@lambdalegal.org)
Peter C. Renn (prenn@lambdalegal.org)
Lambda Legal Defense & Education Fund, Inc.
4221 Wilshire Blvd, Suite 280
Los Angeles, CA 90010
213-382-7600

Sasha J. Buchert (sbuchert@lamdalegal.org)
Diana Katherine Flynn (dflynn@lamdalegal.org)
Lambda Legal Defense & Education Fund, Inc.
1875 I Street, NW, 5th Floor
Washington, DC 20006
202-999-8083

Carl S. Charles (ccharles@lambdalegal.org)
Lambda Legal Defense & Education Fund, Inc.
120 Wall St., 19th Floor
New York, NY 10005
212-890-8585

Kara N. Ingelhart (kingelhart@lambdalegal.org)
Camilla B. Taylor (ctaylor@lambdalegal.org)
Lambda Legal Defense & Education Fund, Inc.
105 W. Adams St., Suite 2600
Chicago, IL 60603-6208
312-663-4413

Paul D Castillo (pcastillo@lambdalegal.org)
Lambda Legal Defense & Education Fund, Inc.
3500 Oak Lawn Avenue, Ste 500
Dallas, TX 75219
214-302-2216

Samantha Everett (samantha@newmanlaw.com)
Derek Alan Newman (derek@newmanlaw.com)
Jason Sykes (jason@newmanlaw.com)
Newman & Du Wors LLP
2101 Fourth Avenue, Suite 1500
Seattle, WA 98121
206-274-2800

Peter E. Perkowski (peterp@outserve.org)
Outserve-SLDN, Inc.
c/o Perkowski Legal, PC
445 S. Figueroa St., Suite 3100
Los Angeles, CA 90071
213-426-2137

## (2) Facts showing the existence and nature of the emergency

The facts are set forth in detail in the petition filed on August 1, 2018. On July 27, 2018, the district court entered an extraordinarily burdensome discovery order. The court commanded the Executive Branch to comb through presidential communications and deliberations encompassing approximately 9,000 documents in order to produce a privilege log for the President "on a document-by-document basis," without even requiring plaintiffs to show that the information they seek is unavailable through other avenues, to limit the scope of their discovery, or to make a focused demonstration of need. The order also required the government to produce every document withheld solely under the deliberative process privilege, which would

reveal, *inter alia*, the military's internal deliberations regarding its policy on military service by transgender individuals. In so doing, the district court has created serious separation-of-powers concerns, imposed an extraordinary burden on the Executive Branch, and intruded on the government's decision-making process regarding military policies. And it has done all of this even though the government has already produced over 30,000 documents in discovery, including a complete administrative record, and has a fully briefed preliminary-injunction appeal pending in this Court, which, if successful, would eliminate the justification for much, if not all, of the requested discovery.

On July 31, the government filed in district court a motion for a stay of the discovery order. On August 1, the government filed in this Court a petition for a writ of mandamus and an emergency motion for a stay pending consideration of the petition. The next day, this Court granted a temporary stay of the discovery order pending the district court's decision on the government's stay motion. This Court provided that if the district court denies the motion to stay, "the temporary stay will remain in effect for 7 days following the entry of the district court's decision" and advised that the government may renew its stay motion within three days of the district court's decision on the stay motion.

On August 20, the district court denied the government's motion to stay compliance with the discovery order. Ex. A. It temporarily extended the deadline for compliance with its July 27 discovery order until this Court rules on the government's

mandamus petition, but ordered that the government must "prepare to" comply in the meantime, requiring it to "prepare legally sufficient privilege logs for documents withheld under the presidential communications and deliberative process privileges" and to "prepare to turn over materials withheld solely under the deliberative process privilege." Ex. A, at 10. The court further ordered defendants to certify, by October 10—the date on which this Court will hear argument on both the petition and the preliminary-injunction appeal—that they "have taken these steps." *Id.* The district court's orders thus still require the government to immediately undertake the extraordinary burdens described in its mandamus petition, before this Court has an opportunity to rule on—or even hear argument on—the petition.

Under the terms of this Court's August 2 order, this Court's temporary stay will expire on August 27. In accordance with this Court's order, the government thus moves to renew its emergency stay motion. This Court should stay both the July 27 discovery order and the August 20 order—including the requirements that the government prepare to comply with the discovery order and certify that it has done so by October 10—pending consideration of the petition for a writ of mandamus. This Court also should grant an immediate administrative stay. We respectfully request that the Court issue a decision on the stay motion by August 29, to permit the Solicitor General sufficient time to seek Supreme Court review if necessary, and to avoid imposing the very burdens at issue in the government's mandamus petition.

**(3)  When and how counsel notified**

Government counsel notified plaintiffs' counsel by e-mail of the government's intent to file this renewed stay motion.  Service will be effected by electronic service through the CM/ECF system.  Jordan M. Heinz, counsel for plaintiffs, indicated that plaintiffs oppose the stay motion.  Colleen M. Melody, counsel for the State of Washington, indicated that Washington takes no position and does not plan to participate in the mandamus proceedings.

**(4)  Submissions to the district court**

On July 31, 2018, the government moved for a stay in district court.  Doc.300. The district court denied the stay on August 20, 2018.

*Counsel for Defendants*

CHAD A. READLER
  *Acting Assistant Attorney General*

HASHIM M. MOOPPAN
  *Deputy Assistant Attorney General*

BRINTON LUCAS
  *Counsel to the Assistant Attorney General*

MARK R. FREEMAN
MARK B. STERN
MARLEIGH D. DOVER
TARA S. MORRISSEY
BRAD HINSHELWOOD
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice, Room 7256*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530*

**INTRODUCTION**

Petitioners respectfully renew their request for a stay of the district court's July 27, 2018 discovery order and request a stay of the August 20, 2018 order—which commands the government to prepare to comply with the discovery order and to certify that it has done so by October 10—pending this Court's consideration of the government's petition for a writ of mandamus. The Court has scheduled oral argument on the petition for October 10, and has scheduled argument on the district court's preliminary-injunction order for the same day. This Court previously stayed the discovery order pending the district court's consideration of the government's stay motion, and provided that the government could renew its stay motion within three days of an order denying the stay. D.E.4. The district court denied the stay on August 20. Ex. A.[1] This Court's temporary, administrative stay expires seven days after entry of the district court's action on the stay motion, on August 27. D.E.4. We ask that the Court immediately extend its administrative stay and that it act on this stay motion by August 29 to permit the Solicitor General sufficient time to seek Supreme Court review if necessary, and to avoid the enormous burdens on the Executive Branch of complying with the discovery orders by October 10.

---

[1] The district court's order denying the stay motion is attached as Exhibit A. Citations to Add.__ refer to the addendum to the government's petition for a writ of mandamus filed on August 1.

The government argues in its mandamus petition that it should not be compelled to comply with the district court's burdensome and intrusive discovery order on its own terms and that, at a minimum, it should not have to do so until this Court has had a chance to decide whether the legal premises for such discovery are correct in the pending preliminary-injunction appeal. In denying the stay motion, the district court never disputed that its July 27 discovery order is premised on issues currently before this Court in the pending preliminary-injunction appeal and mandamus petition. In fact, the district court sought to defend its July 27 discovery order by reiterating its views that its order was correct because the military policy in question was "devised by the President and the President alone," Ex. A, at 5; the policy reflects "state-sponsored discrimination against a suspect class," *id.*; and the constitutionality of the policy "necessarily turns on facts related to Defendants' deliberative process," *id.* at 8. For purposes of this motion, the question is whether the government should be compelled to undertake all the efforts necessary to comply with the challenged orders before this Court has resolved these related issues.

The answer is plainly no. Plaintiffs have already obtained a preliminary injunction requiring the government to keep in place the military policy that they prefer. Because that injunction fully protects plaintiffs' interests, a stay of discovery deadlines while this Court considers the government's mandamus petition would not cause plaintiffs any harm. On the other hand, the absence of a stay would force the government to endure the very burdens that it sought to avoid by seeking mandamus

relief in the first place—thereby distracting the Executive Branch from its constitutional duties and raising serious separation-of-powers concerns. The denial of a stay would thus result in irreparable harm to the government with no countervailing benefits for plaintiffs.

As the district court itself recognized, its most recent order of August 20 altered deadlines, but did not grant a stay. Ex. A, at 1-2. To the contrary, under the court's August 20 order, the government, by October 10, must certify both that the President has prepared a privilege log containing particularized, document-by-document assertions of executive privilege for a sweeping array of White House documents and communications and that the Department of Defense is prepared to turn over many thousands of documents withheld under the deliberative process privilege. *Id.* at 10.[2] The court gave no reason for imposing a deadline of October 10, which is the date this Court is scheduled to hear oral argument on the government's mandamus petition and appeal of the preliminary injunction. And the only explanation the court gave for why a stay would harm the plaintiffs was that it

---

[2] The court's directive that the government prepare to turn over documents withheld solely under the deliberative process privilege appears to apply to the President as well. As we explain in our mandamus petition and in this motion, such discovery as to the President is improper under *Cheney v. United States District Court for the District of Columbia*, 542 U.S. 367 (2004), and the President is not a proper party in this case. *See* Pet. 21-28; *infra* pp. 7-10. Because these principles protect the President from burdensome discovery—including production of documents withheld under the deliberative process privilege—we focus here on the impact of this directive on the Department of Defense.

would impair their ability to prepare for a trial scheduled to start in April 2019.  *Id.* at 9.  But the need for a trial is itself premised on the merits of the issues currently before this Court in the government's preliminary-injunction appeal, and the plaintiffs are fully protected by that preliminary injunction until this Court decides the appeal.

In short, the discovery obligations imposed by the district court constitute clear and significant error, and, unless stayed, will result in irreparable injury.  Given the seriousness of the concerns raised by these obligations and this Court's imminent review of the petition and related preliminary-injunction appeal, it is extraordinary that the district court would deny a stay and insist on deadlines that serve no discernible purpose—particularly because a stay will result in no harm whatsoever to plaintiffs, who have already obtained a preliminary injunction.  This Court should grant a stay of the district court's July 27 and August 20 orders, including the arbitrary command that the government certify that it is prepared to comply with the July 27 order by the day this Court is set to hold oral argument on that ruling.

## ARGUMENT

### THIS COURT SHOULD STAY THE DISTRICT COURT'S JULY 27 AND AUGUST 20 ORDERS PENDING CONSIDERATION OF THE GOVERNMENT'S MANDAMUS PETITION

The government's petition for a writ of mandamus details the multiple errors underlying the district court's July 27 discovery order, and we do not repeat that full discussion here.  More to the point, this Court has already noted that the petition "raises issues that warrant an answer," D.E.4, and scheduled oral argument on that

petition, making clear that the issues it raises merit serious consideration. Yet rather than permit this Court to consider those issues, the district court denied a stay and continued to insist on compliance before a mandamus ruling from this Court, adhering to its view that the separation-of-powers concerns raised by its July 27 order are insubstantial. The district court's refusal to stay these discovery obligations at this juncture is particularly egregious because a stay would cause no harm to the plaintiffs, who have already obtained a preliminary injunction that fully protects their interests. This Court regularly grants stays pending disposition of petitions for a writ of mandamus, including in cases involving challenges to discovery orders, and a stay is clearly warranted here. *See, e.g.*, Order, *In re United States*, No. 17-72917 (9th Cir. Oct. 24, 2017) (staying discovery and record supplementation); *Barton v. United States District Court for the Central District of California*, 410 F.3d 1104, 1106 n.2 (9th Cir. 2005) (similar); *Calderon v. United States District Court for the Northern District of California*, 98 F.3d 1102, 1104 (9th Cir. 1996) (similar).

**A.** As our mandamus petition explains, the July 27 discovery order is premised on legal conclusions that this Court will address in the government's pending preliminary-injunction appeal—including the level of scrutiny to be applied, whether courts may reexamine the thoroughness of the deliberative process underlying a military judgment, and whether the policy that plaintiffs challenge in their suit has already been revoked. Pet. 18-21. This Court has recognized that the mandamus

petition and the preliminary-injunction appeal are closely intertwined, as reflected by its decision to set oral argument in both cases for the same day in October. D.E.5.

Resolution of the preliminary-injunction appeal may eliminate the purported basis for the July 27 discovery order and will, at a minimum, clarify the issues presented on which plaintiffs are attempting to obtain discovery. *See* Pet. 18-21. These considerations alone support the entry of a stay pending resolution of the mandamus petition in this case. *See In re United States*, 138 S. Ct. 443, 445 (2017) (per curiam) (vacating denial of mandamus and recognizing that "the Government's threshold arguments . . . , if accepted, likely would eliminate the need for the District Court to examine" the requested discovery).

It makes little sense for the district court to force the government to comply with the discovery order before this Court hears argument in both cases and resolves the petition for a writ of mandamus. Indeed, the district court itself appears to have recognized this by "extend[ing]" the deadline for compliance with the discovery order until after this Court rules on the petition. Ex. A, at 10. But the district court then inexplicably required the government to undertake many of the burdens that are central to the government's mandamus petition in the meantime. Its August 20 order requires the government to fully comply with the requirement to create a revised, "document-by-document" privilege log for the President by October 10—before this Court even hears oral argument on the petition and the preliminary-injunction appeal. Add.11. And it requires the government to undertake the enormous burden of

6

preparing for production many thousands of documents reflecting internal military deliberations. The government would have to be prepared to produce the documents and the privilege logs on the date of oral argument on the petition—thus depriving the government of the full relief it seeks in the petition, even if the Court were to rule for the government on that same day. The district court's order, if left to stand, would interfere with this Court's full resolution of the important issues presented in the mandamus petition.

By contrast, a stay of the obligations imposed by the July 27 and August 20 orders would cause no harm to plaintiffs. Although the district court believed that a stay would impair plaintiffs' ability to prepare for a trial scheduled to begin in April 2019, eight months from now, Ex. A, at 9; *see* Doc.242, the need for a trial itself rests on the merits of the issues currently before this Court in the government's preliminary-injunction appeal. And until this Court decides that appeal, the plaintiffs are fully protected by the preliminary injunction. If upheld, the preliminary injunction will continue through trial; if vacated, then the course of proceedings will be dramatically altered. At the very most, plaintiffs can claim only a *potential* need for additional time to prepare for trial following a decision by this Court—a need that could be adequately addressed by an incremental delay in the trial date. Indeed, the government has requested that this Court decide the preliminary-injunction appeal expeditiously, no later than December 2018. In any event, the government has already produced over 30,000 documents in discovery, including a complete

7

administrative record, and this case may be decided on that robust record.  *See Trump v. Hawaii*, 138 S. Ct. 2392, 2420 (2018) (upholding presidential proclamation based solely on its text and the "review process" that supported it, without regard to previous executive orders or past statements by the President, or any discovery into that deliberative process).  A stay thus would not harm plaintiffs at all, while the absence of a stay would irreparably harm the government.  Given that lopsided balance in equities, this Court should grant a stay.

**B.**  A stay is warranted even apart from this Court's imminent consideration of the mandamus petition and the preliminary-injunction appeal.

**1.**  The district court's July 27 discovery order, which directs the President to create a "document-by-document" privilege log for 9,000 documents involving Presidential communications and deliberations, cannot be reconciled with the separation-of-powers principles emphasized in *Cheney v. United States District Court for the District of Columbia*, 542 U.S. 367 (2004).  Add.11.  *Cheney* makes clear that the Executive Branch should not "bear the onus of critiquing . . . unacceptable discovery requests line by line," particularly where, as here, the district court has not "explore[d] other avenues" that may be available, asked whether plaintiffs have demonstrated a particularized showing of need, modified the parties' overly broad discovery requests, or considered the availability of non-privileged discovery.  *Id.* at 388-90; *see* Pet. 21-26.  The district court's August 20 order once more illustrates that the court accepts no guidance from *Cheney*.  Instead, the district court emphasized that "President Trump

must expressly assert the presidential communications privilege." Ex. A, at 6. The court made no attempt to explain how this demand is consistent with the Supreme Court's admonition that "[e]xecutive privilege is an extraordinary assertion of power 'not to be lightly invoked'" or its instruction that the courts should take every opportunity to avoid setting "coequal branches of the Government . . . on a collision course" through adjudications of executive privilege. *Cheney*, 542 U.S. at 389 (quoting *United States v. Reynolds*, 345 U.S. 1, 7 (1953)).

The district court's August 20 order "extend[ing]" the deadline for compliance with the July 27 discovery order does not relieve these serious separation-of-powers concerns. Ex. A, at 10. The issue is not primarily one of deadlines, but whether the court fundamentally erred in directing the President to "prepare legally sufficient privilege logs for documents withheld under the presidential communications and deliberative process privileges," *id.*, a process that requires "line by line" objections to plaintiffs' discovery requests in a new, 9,000-entry privilege log, *Cheney*, 542 U.S. at 388; *see also* Add.11. The court's order only highlights its fundamental misunderstanding of the separation-of-powers principles discussed in *Cheney*.

The district court's most recent order also underscores that it expects the government to prepare a privilege log that would reveal privileged information. The court stated that it is unaware of any authority that the presidential communications privilege would protect "the identities of the particular advisors from whom [the President] sought advice on particular subjects" or "the identities of the 'Generals and

9

military experts'" with whom he consulted.  *See* Ex. A, at 6 n.2.  But as discussed in

our petition—and repeatedly in our filings before the district court, *e.g.*, Doc.268, at 9-

10; Doc.281, at 4; Doc.300, at 2; Doc.307, at 2-3—the presidential communications

privilege protects facts and "sources of information" that reflect presidential

decisionmaking and deliberations.  Pet. 27 (quoting *In re Sealed Case*, 121 F.3d 729,

744, 750 (D.C. Cir. 1997) (per curiam)).  The privilege thus protects the government

from being compelled to disclose the identities of the particular advisors from whom

the President sought advice on particular subjects, or the timing or sequence of those

deliberations.  *Id.*  In the district court's view, the President must reveal information

exposing his deliberations as a condition of asserting privilege over the documents

demanded by plaintiffs.

As explained in the petition for a writ of mandamus, the district court's order

constitutes clear error for the additional reason that the President is not a proper

defendant in this litigation.  Pet. 27-28.  As another district court recently recognized

in related litigation, separation-of-powers principles require that the President should

be dismissed altogether.  *Doe v. Trump*, No. 17-cv-1597, 2018 WL 3736435, at *2-4

(D.D.C. Aug. 6, 2018).  And another district court recently stayed discovery against

the President pending resolution of the motion to dismiss him as a party.  *Stone v.

Trump*, No. 17-cv-2459, 2018 WL 3866676, at *3-5 (D. Md. Aug. 14, 2018).  The

district court here, however, has proceeded on the theory that the President is a

proper defendant, *see* Ex. A, at 6 n.2 (citing privilege rules for when a party withholds

10

information), and relied on that flawed premise in mandating burdensome discovery directed at the White House.

**2.** The district court's order requiring the government, including the Department of Defense, to prepare to disclose many thousands of documents withheld under the deliberative process privilege is likewise improper. Rather than conduct the "document-by-document" or at least category-by-category analysis required by the deliberative process privilege, *see, e.g., In re United States*, 678 F. App'x 981, 987 (Fed. Cir. 2017); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980), the district court purported to apply to all the documents without differentiation the factors articulated in *FTC v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (per curiam). This *en masse* approach fails to address the application of the *Warner* factors to the wide variety of documents at issue. *See* Add.101-02 (noting examples of documents, including a draft memorandum to the President containing the Secretary's handwritten notes, a memorandum from the Under Secretary for Personnel and Readiness to the Deputy Secretary of Defense and Vice-Chairman of the Joint Chiefs of Staff, and pre-decisional documents prepared under Secretary Carter).

The district court's most recent order underscores the error of its *en masse* approach by suggesting for the first time that some of the Department's documents are "factual and non-deliberative." Ex. A, at 8. Although the government repeatedly urged that plaintiffs should "identify specific documents or . . . at the very least,

specific categories of documents," so that the government could review them "to determine whether to perfect the deliberative process privilege," Doc.267 at 1-2; *accord* Doc.245 at 4, plaintiffs instead insisted on taking a "threshold position" that "the privilege has no application in this case." Doc.245 at 4. As a result, in indiscriminately applying the *Warner* factors to the documents at issue, the district court itself specifically disclaimed any ruling on whether any of the Department's documents were non-deliberative. *See* Add.6 n.2 (noting that the court "need not address" plaintiffs' assertion that "categories of documents" are either "non-deliberative" or "post-decisional"). The district court cannot expect the government to address thousands of documents "with specificity" when both plaintiffs and the court itself have refused to focus the dispute on specific documents or categories of documents. Ex. A, at 8 (emphasis omitted). And it could not properly justify a disclosure order with an unadorned statement that some unspecified subset of the documents "appear[s] to be factual and non-deliberative." *Id.*

The district court compounded this error by discounting as "mere speculation," Add.8, the self-evident concern that mass disclosure of privileged communications would chill the willingness of government officials to engage in "open, frank discussion between subordinate and chief concerning administrative action," *EPA v. Mink*, 410 U.S. 73, 87 (1973); *see* Add.104-06 (describing impact of disclosure). The district court's August 20 order repeated this error, asserting that the government must "explain *with specificity* why the disclosure of relevant, responsive documents . . .

12

would have a greater chilling effect in this case than in any other." Ex. A, at 8. The district court's refusal to accept "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news," *Department of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001), underscores the error of its deliberative process analysis and its failure to properly balance the government's legitimate need for confidential deliberation against plaintiffs' asserted need for many thousands of deliberative documents held by the Department of Defense. The district court did not even address the Department's sworn explanation of the "substantial and immediate chilling effect" disclosure would have on internal deliberations, heightened here by the fact that the challenged action relates to military readiness and national security while implicating sensitive and controversial issues, and illustrated by the fact that the panel of experts received input from a variety of individuals who "understood" that their contributions would be kept "confidential." Add.105-06.

**3.** As explained above, no harm to plaintiffs will result from granting a stay of discovery while this Court considers the government's petition. *See supra* pp. 7-8. Plaintiffs already have obtained a preliminary injunction, and thus face no harm in the interim. By contrast, absent a stay, the discovery order will set the branches of government on a collision course and impose wholly unwarranted burdens. The deadlines included in the court's denial of a stay pending this Court's review leave in place obligations resulting in irreparable harm.

The district court's orders require creation of a privilege log for the President that addresses plaintiffs' discovery requests "*on a document-by-document basis*," Add.11, with "line by line" objections, *Cheney*, 542 U.S. at 358. *See* Add.82-83. As the Supreme Court explained in *Cheney*, "the public interest requires that a coequal branch of Government 'afford Presidential confidentiality'" great protection and that the judiciary "give recognition to the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties." 542 U.S. at 382. The district court has not heeded these mandates; indeed, its treatment of its order as merely requiring compliance with the government's "*existing* obligations under Rule 26," and its characterization of the concerns at issue as "overbroad and unsupported claims of privilege," Ex. A, at 8-9, highlight its failure to recognize the significant separation-of-powers concerns created by plaintiffs' efforts to delve into the deliberative processes of the Executive Branch in civil discovery and by its disregard of *Cheney*.

The district court was similarly dismissive in its treatment of the burden its order places on the Department of Defense. The district court ordered the government to prepare for release many thousands of documents subject to the deliberative process privilege, and to have them ready for disclosure by October 10, 2018. Ex. A, at 10. To do so, the Department must review all of the deliberative process documents at issue and redact information not relevant to this case. Add.101-02. The burden created by that process is heightened by particular features of many

of the documents, including the need for declassification review and segregation of nearly 1,000 documents containing classified material, Add.103-04, and many other documents containing sensitive information unrelated to this litigation, Add.103. The Department has limited resources to devote to document review—and those resources would be significantly strained by the obligations the military services would face in responding to the district court's order. Add.104. It is also entirely unclear why the district court has ordered the Department to revise its privilege logs with regard to documents that it has already concluded are not subject to the deliberative process privilege. And the district court thought it appropriate to impose these considerable burdens despite the fact that this Court's rulings on the preliminary-injunction appeal and the mandamus petition may render the Department's efforts wholly unnecessary. A stay is clearly warranted.

## CONCLUSION

For the foregoing reasons, this Court should, by August 29, 2018, grant a stay of the district court's July 27 discovery order and of its August 20 order—which commands the government to prepare to comply with the discovery order and to certify that it has done so by October 10—pending this Court's consideration of the government's petition for a writ of mandamus. In addition, this Court should grant an immediate administrative stay.

Respectfully submitted,

CHAD A. READLER
  *Acting Assistant Attorney General*

HASHIM M. MOOPPAN
  *Deputy Assistant Attorney General*

BRINTON LUCAS
  *Counsel to the Assistant Attorney General*

MARK R. FREEMAN
MARK B. STERN
MARLEIGH D. DOVER
TARA S. MORRISSEY

*s/ Brad Hinshelwood*
BRAD HINSHELWOOD
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice, Room 7256*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530*
  *202-514-7823*

AUGUST 2018

# CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the type-volume limitation of Ninth Circuit Rules 27-1 and 32-3 because it totals 3,879 words. I further certify that this motion complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27 because it has been prepared using Microsoft Word 2013 in a proportionally spaced typeface, 14-point Garamond font.

*s/ Brad Hinshelwood*
BRAD HINSHELWOOD

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2018, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system.  All of the real parties in interest are registered CM/ECF users and will be served by the appellate CM/ECF system.

The district court will be provided with a copy of this motion.

*s/ Brad Hinshelwood*
BRAD HINSHELWOOD

# ADDENDUM

Ex. A

Order Denying Motion to Stay
(Aug. 20, 2018)

1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT
                             WESTERN DISTRICT OF WASHINGTON
9                                        AT SEATTLE

10    RYAN KARNOSKI, et al.,                      CASE NO. C17-1297-MJP

11                          Plaintiffs,           ORDER DENYING MOTION TO
                                                  STAY
12           v.

13    DONALD J. TRUMP, et al.,

14                          Defendants.

15

16           THIS MATTER comes before the Court on Defendants' Motion to Stay Compliance with

17    the Court's Discovery Order.  (Dkt. No. 300.)  Having reviewed the Motion, the Response (Dkt.

18    No. 306), the Reply (Dkt. No. 307), the Notices of Supplemental Authority (Dkt. Nos. 308, 309),

19    and the related record, the Court DENIES the Motion.  While the Court declines to stay its Order

20    Granting Plaintiffs' Motion to Compel and Denying Defendants' Motion for a Protective Order

21    ("Discovery Order") (Dkt. No. 299), it hereby ORDERS that the deadline for compliance be

22    extended until the Ninth Circuit has ruled on Defendants' Emergency Petition for Writ of

23    Mandamus ("Mandamus Petition"), on which oral argument is expected to be heard on October

24

1   10, 2018.  See In re Donald Trump, No. 18-72159, Dkt. No. 1 (9th Cir. Aug. 1, 2018); Dkt. No. 4

2   (9th Cir. Aug. 2, 2018).  In the meantime, Defendants are directed to prepare legally sufficient

3   privilege logs for documents withheld under the presidential communications and deliberative

4   process privileges and prepare to turn over materials withheld solely under the deliberative

5   process privilege.  Defendants shall certify to the Court by no later than October 10, 2018 that

6   they have taken these steps and are prepared to comply with its Discovery Order, but need not

7   turn over their revised privilege logs or other withheld materials until further order.

8                                    **Background**

9          On July 27, 2018, the Court issued its Discovery Order granting Plaintiffs' motion to

10  compel discovery withheld under the deliberative process privilege and denying Defendants'

11  motion to preclude discovery directed at President Trump.[1]  (Dkt. No. 299.)  The Court ordered

12  Defendants to (1) turn over documents withheld solely under the deliberative process privilege;

13  (2) produce a privilege log identifying documents, communications, and other materials withheld

14  under the presidential communications privilege; and (3) produce revised privilege logs that

15  comply with Federal Rule of Civil Procedure 26(b)(5).  (Id. at 11.)  The Court ordered

16  Defendants to comply within ten days.  (Id.)

17         On July 31, 2018, Defendants filed this Motion to stay compliance with the Discovery

18  Order pending resolution of their Mandamus Petition, which they filed with the Ninth Circuit on

19  the following day.  (Dkt. No. 300); see also In re Donald Trump, Dkt. No. 1.  On August 2, the

20  Ninth Circuit referred the Mandamus Petition to the panel assigned to hear Defendants' appeal

21  regarding the preliminary injunction.  In re Donald Trump, Dkt. No. 4.  The panel granted a

22

23  _____

24         [1] Many of the facts relevant to this Motion are set forth in the Discovery Order and the
    Court does not repeat them here.  (See Dkt. No. 299 at 2-4.)

ORDER DENYING MOTION TO STAY - 2

temporary stay of the Court's Discovery Order pending this Court's ruling on the instant Motion, which will remain in effect for seven days following the entry of this Order.  (Id.)

## Discussion

### I.    Motion to Stay

A stay pending appeal "is an intrusion into the ordinary processes of administration and judicial review."  Nken v. Holder, 556 U.S. 418, 427 (2009) (internal quotation marks and citation omitted).  As such, it is "not a matter of right, even if irreparable injury might otherwise result."  Id. at 433 (citation omitted).  "It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case."  Id. (internal quotation marks and citation omitted).  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."  Id. at 433-34.

In determining whether to grant a stay, the Court considers: (1) whether Defendants have made a strong showing that they are likely to succeed on the merits of their Mandamus Petition; (2) whether Defendants will be irreparably injured absent a stay; (3) whether a stay will substantially injure Plaintiffs; and (4) whether the public interest supports a stay.  Id. at 434.

### A.  Likelihood of Success on the Merits

The Court finds that Defendants have not made a strong showing that they are likely to prevail on merits of their Mandamus Petition.  A writ of mandamus is "a 'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'"  In re Van Dusen, 654 F.3d 838, 840 (9th Cir. 2011) (quoting Ex parte Fahey, 332 U.S. 258, 259-60 (1947)).  The critical factor in determining whether to grant the writ is "whether the district court's order is clearly erroneous as a matter of law," and "only exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify the invocation of this . . . remedy."

1    Id. at 840-41 (quoting Cheney v. U.S. Dist. Ct. for the Dist. of Columbia, 542 U.S. 367, 380

2    (2004)).  While recognizing that precedent concerning the presidential communications and

3    deliberative process privileges is limited in the Ninth Circuit, the Court stands by its Discovery

4    Order.

5                        **(1) Presidential Communications Privilege**

6            Defendants contend that discovery directed at President Trump is foreclosed by Cheney,

7    such that Plaintiffs must "exhaust other sources of non-privileged discovery and establish a

8    heightened, particularized need for the specific information or documents" before the President

9    is required to assert the privilege or provide a privilege log.  (Mandamus Pet. at 22, 28-35.)

10   Defendants contend that "[t]he district court made no attempt to reconcile its order with Cheney

11   and the separation-of-powers principles underlying that decision."  (Id. at 29.)

12           The Court does not read Cheney to stand for the proposition claimed by Defendants, and

13   concludes that they are unlikely to succeed on the merits of their petition as to the presidential

14   communications privilege.  In Cheney, the Supreme Court explained that discovery directed at

15   the President implicates separation of powers concerns, such that courts should not "require the

16   Executive Branch to bear the onus of critiquing . . . unacceptable discovery requests line by

17   line."  542 U.S. at 388.  But Cheney does not purport to preclude all civil discovery directed at

18   the President, nor to impose any of the threshold requirements suggested by Defendants.  The

19   Supreme Court explained that the discovery requests at issue were "unacceptable" because they

20   were "overly broad," "ask[ed] for everything under the sky," and sought "all the disclosure to

21   which [plaintiffs] would be entitled in the event they prevail on the merits, and much more

22   besides."  Id. at 386, 388.  The Court explained that the withheld information did not relate to a

23   constitutional right or otherwise implicate a "constitutional dimension," nor would its

24

1  withholding interfere with the court's "ability to fulfill its constitutional responsibility to resolve

2  cases and controversies within its jurisdiction" or "hamper [its] ability to perform its 'essential

3  functions.'" Id. at 384 (quoting United States v. Nixon, 418 U.S. 683, 707 (1974)). For these

4  reasons, and "*in these circumstances*," the Court found that the otherwise well-settled

5  requirement that the President "first assert privilege to resist disclosure" did not apply. Id. at

6  384, 388 (emphasis added); see also Nixon, 418 U.S. at 709, 710.

7        The situation here is vastly different. The discovery that Plaintiffs seek from President

8  Trump is not "unacceptable" or "overly broad" but is instead narrowly focused and indispensable

9  to resolving this case on the merits. Plaintiffs challenge a Ban that was ordered by President

10  Trump, announced by President Trump, and which appears to have been "devised by the

11  President and the President alone." (Dkt. No. 233 at 29); see also Stone, et al. v. Trump, et al.,

12  2018 WL 3866676, at *4 (D. Md. Aug. 14, 2018) ("The Presidential tweets put the President

13  front and center as the potential discriminating official."). As in Nixon, this case involves a

14  concern of "constitutional dimension," and indeed, one of the most critical that a court may be

15  called upon to resolve—state-sponsored discrimination against a suspect class. (See Dkt. No.

16  233 at 20-24.) Also as in Nixon, President Trump's refusal to comply with the judicial process

17  threatens to "upset the constitutional balance of 'a workable government' and gravely impair the

18  role of the courts under Article III." Nixon, 418 U.S. at 707. Repeatedly, this Court has ordered

19  Defendants to identify the "Generals and military experts" with whom President Trump

20  consulted. (See, e.g., Dkt. Nos. 204, 210, 233.) Repeatedly, Defendants have refused to do so.

21  To date, it remains the case that "the *only* evidence concerning the lead-up to [President

22  Trump's] Twitter Announcement reveals that military officials were entirely unaware of the Ban,

23  and that the abrupt change in policy was 'unexpected.'" (Dkt. No. 233 at 29 (citations omitted).)

24

1   The government's lack of candor in this regard is disconcerting, and provides all the more reason

2   why the presidential communications privilege cannot be used in the manner claimed by

3   Defendants.

4        Accordingly, the Court stands by its previous ruling that <u>Nixon</u> and <u>In re Sealed Case</u>—

5   not <u>Cheney</u>—provide the applicable standard in this constitutional case. President Trump must

6   expressly assert the presidential communications privilege and must provide a privilege log that

7   complies with Rule 26(b)(5).[2]

8          **(2) Deliberative Process Privilege**

9        Defendants' contend that the Court erred in its evaluation of the deliberative process

10  privilege by failing to apply the balancing test from <u>FTC v. Warner Commc'ns Inc.</u>, 742 F.2d

11  1156 (9th Cir. 1984) on a document-by-document basis. (Dkt. No. 300 at 6-7; <u>see also</u>

12  Mandamus Pet. at 35-40.) In particular, Defendants contend that the Court's ruling will result in

13  the disclosure of "deliberative documents related to the policy announced by former Secretary of

14  Defense Ashton Carter during the prior administration, which are plainly not relevant to

15  Plaintiffs' challenge to the President's 2017 Memorandum." (Dkt. No. 300 at 7.) Further,

16  Defendants contend that "release of DoD information protected by the deliberative process

17

18

---

19      [2] Defendants claim there is a "significant risk that the Court's Order, which requires a

20  highly specific privilege log, will itself require disclosure of privileged material." (Dkt. No. 307 at 3.) Rule 26(b)(5) specifically states that the log be produced "*without revealing information

21  itself privileged or protected . . .*" Fed. R. Civ. P. 26(b)(5)(A)(ii) (emphasis added). Defendants do not cite any authority—and the Court is aware of none—that supports their claim that the

22  presidential communications privilege "protects the President from being compelled to disclose the identities of the particular advisors from whom he sought advice on particular subjects" or, in

23  particular, the identities of the "Generals and military experts" with whom he publicly proclaimed to have consulted. (Dkt. No. 307 at 3-4.) In any event, Defendants need not produce

24  their revised privilege logs until the Ninth Circuit has ruled on the Mandamus Petition.

1　privilege would have a substantial and immediate chilling effect on policy deliberation and

2　development within DoD."  (Dkt. No. 307 at 7.)

3　　　　The Court finds no support for Defendants' claim that the <u>Warner</u> factors must be applied

4　on a document-by-document basis.[3]  To the contrary, the deliberative process privilege is

5　qualified, and as the Court noted in its Discovery Order, other courts have recognized that the

6　privilege does not apply *at all* in cases involving claims of governmental misconduct or where

7　the government's intent is at issue.  (Dkt. No. 299 at 6 (citing <u>In re Sealed Case</u>, 121 F.3d 729,

8　738 (D.C. Cir. 1997); <u>In re Subpoena Duces Tecum</u>, 145 F.3d 1422, 1424-25 (D.C. Cir. 1998));

9　<u>see also</u> <u>Stone</u>, 2018 WL 3866676, at *3 (explaining that the deliberative process privilege does

10　not protect documents "likely to contain evidence reflecting Defendants' intent" regarding the

11　Ban and that "[i]t also could not be more clear that the Defendants' intent—whether it was for

12　military purposes or whether it was purely for political and discriminatory purposes—is at the

13　very heart of this litigation.").

14　　　　The Court also finds no support for Defendants' claim that the withheld documents are

15　"plainly not relevant" to Plaintiffs' claims.  (Dkt. No. 300 at 7.)  Defendants themselves

16　identified these documents as responsive to Plaintiffs' discovery requests, and each pertains to

17　deliberations concerning military service by transgender people.  The Court has already found

18

19　　　　　[3] The Court also notes that, given the deficiencies in Defendants' privilege logs, it would

20　not have been possible to evaluate the privilege on a document-by-document basis.  The
　　privilege logs reviewed by the Court categorize documents broadly and provide generic, non-
　　specific descriptions as to their content and the reason for their withholding.  (<u>See, e.g.</u>, Dkt. No.

21　246, Ex. 11 (describing documents as "Slides for policymaking meeting"); Ex. 13 (describing
　　document as "E-mail re: Slides (with attachments)" and describing reason for withholding as

22　"Predecisional and deliberative internal agency document created as part of the agency's process

23　of developing courses of action for implementing DoD's policy on the service and accessions of
　　military personnel and the continuous process of assessing the policy's impact on military

24　readiness.").)

1   that the Ban's constitutionality (i.e., whether it was sincerely motivated by compelling state

2   interests, rather than by prejudice or stereotype) "necessarily turns on facts related to

3   Defendants' deliberative process," including its review of the Carter Policy and the deliberations

4   that preceded it.  (Dkt. No. 233 at 28.)

5          Finally, for the same reasons identified in its Discovery Order, the Court rejects

6   Defendants' claim that requiring them to turn over documents withheld solely under the

7   deliberative process privilege would have a "substantial and immediate chilling effect on policy

8   deliberation and development."  (Dkt. No. 307 at 7.)  It is Defendants' burden to show that the

9   privilege applies, yet they have made no effort to explain *with specificity* why the disclosure of

10  relevant, responsive documents—many of which appear to be factual and non-deliberative—

11  would have a greater chilling effect in this case than in any other.  Were the government

12  permitted to withhold relevant documents and information based upon the abstract risk of a

13  chilling effect, it is difficult to imagine a case in which the deliberative process privilege would

14  not preclude disclosure.

15         Accordingly, the Court stands by its previous ruling that the deliberative process

16  privilege does not apply in this case.

17         **B.  Likelihood of Irreparable Harm**

18         In light of the Court's decision to extend the deadline for compliance with its Discovery

19  Order pending the Ninth Circuit ruling on Defendants' Mandamus Petition, the Court finds that

20  Defendants have not shown that they will suffer irreparable harm absent a stay.  While

21  Defendants contend that reviewing documents and revising their privilege logs will impose upon

22  them a "staggering burden" requiring hundreds of hours of work and dozens of lawyers (Dkt.

23  No. 300 at 4; Dkt. No. 307 at 2-3), they cite no authority for the proposition that requiring them

24

1   to comply with their *existing* obligations under Rule 26 can somehow constitute "irreparable

2   harm."  Further, any burden imposed by the Discovery Order is entirely of Defendants' own

3   making.  Over the past five months, the Court has repeatedly directed Defendants to turn over

4   relevant documents and information and provide privilege logs that comply with Rule 26(b)(5).

5   (See, e.g., Dkt. Nos. 204, 210, 233, 235.)  Despite each of these orders, Defendants have

6   maintained their overbroad and unsupported claims of privilege.  Finally, while Defendants

7   repeatedly point to the number of documents they will be required to review, they have failed to

8   identify any reason why good faith compliance with the discovery process in this case would

9   impose a greater burden or involve a greater allocation of resources than in any other.  The Court

10  is confident that the federal government has the resources to comply with its order between now

11  and October 10, 2018.

12  ### C.  Injury to Plaintiffs and Impact on the Public Interest

13          The Court finds that the stay requested by Defendants would harm Plaintiffs and the

14  public interest.  This case is currently set to proceed to trial in April 2019.  (See Dkt. No. 242.)

15  Were the Court to permit Defendants to further delay compliance with its prior orders and their

16  discovery obligations, there can be no doubt that Plaintiffs' ability to litigate the case and prepare

17  for trial—and the Court's ability to enforce the rule of law and thereby perform its essential role

18  in our system of government—would be harmed.  See Nixon, 418 U.S. at 708 ("The very

19  integrity of the judicial system and public confidence in the system depend on full disclosure of

20  all the facts, within the framework of the rules of evidence."); see also United States v.

21  Sumitomo Marine & Fire Ins. Co., Ltd., 617 F.2d 1365, 1370 (9th Cir. 1980) ("The public

22  interest requires not only that Court orders be obeyed but further that Governmental agencies

23

24

which are charged with the enforcement of laws should set the example of compliance with Court orders.").

## Conclusion

The Court ORDERS as follows:

(1) The Court DENIES Defendants' Motion for a Stay;

(2) The Court ORDERS Defendants to comply with its Discovery Order;

(3) The Court ORDERS that the deadline for compliance with its Discovery Order be extended until the Ninth Circuit has ruled on Defendants' Mandamus Petition; and

(4) The Court ORDERS Defendants to:

    (a) prepare legally sufficient privilege logs for documents withheld under the presidential communications and deliberative process privileges;

    (b) prepare to turn over materials withheld solely under the deliberative process privilege; and

    (c) certify to the Court by no later than October 10, 2018 that they have taken these steps and are prepared to comply with its Discovery Order.

(5) However, Defendants need not turn over their revised privilege logs or other withheld materials until further order of this Court.

The clerk is ordered to provide copies of this order to all counsel and to the Clerk of Court for the Ninth Circuit.

Dated August 20, 2018.

_Marsha J. Pechman_
Marsha J. Pechman
United States District Judge