1

The Honorable Marsha J. Pechman

2

3

4

5

6

7

8

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

9

10

11

RYAN KARNOSKI, et al.,

Case No. 2:17-cv-01297-MJP

12

*Plaintiffs*, and

13

STATE OF WASHINGTON,

14

*Plaintiff-Intervenor,*

15

v.

16

17

DONALD J. TRUMP, in his official capacity as President of the United States, et al.,

18

*Defendants*.

**PLAINTIFFS' RENEWED MOTION TO COMPEL DOCUMENTS WITHHELD UNDER THE DELIBERATIVE PROCESS PRIVILEGE**

NOTE ON MOTION CALENDAR:
September 27, 2019

ORAL ARGUMENT REQUESTED

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' RENEWED MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER THE
DELIBERATIVE PROCESS PRIVILEGE
[Case No.: 2:17-cv-01297-MJP]

**NEWMAN DU WORS LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

# TABLE OF CONTENTS

Page

Background ........................................................................................................... 1

    A.    Defendants use the deliberative process privilege to conceal information the Court needs to evaluate the alleged legitimacy of Defendants' discriminatory policies. ....................................................................................................... 1

    B.    The Ninth Circuit recognized that the Court may need to consider the events, information, and documents leading up to the Ban in order to evaluate it. .............. 2

    C.    Subsequent Meet and Confer ................................................................... 3

Legal Standard ................................................................................................... 4

Argument ............................................................................................................ 4

    A.    The deliberative process privilege is inapplicable in this case because the government's decisionmaking is the central issue. ........................................ 4

    B.    The privilege does not apply to many of Plaintiffs' requests, which do not seek deliberative material. ........................................................................... 11

Conclusion ......................................................................................................... 12

PLAINTIFFS' RENEWED MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER THE
DELIBERATIVE PROCESS PRIVILEGE - i
[Case No.: 2:17-cv-01297-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ariz. Dream Act Coal. v. Brewer*,
2014 WL 171923 (D. Ariz. Jan. 15, 2014) ................................................5

*Assembly of Cal. v. U.S. Dep't of Commerce*,
968 F.2d 916 (9th Cir. 1992) ......................................................11

*Carter v. U.S. Dep't of Commerce*,
307 F.3d 1084 (9th Cir. 2002) ......................................................9

*Del Socorro Quintero Perez v. United States*,
2016 WL 499025 (S.D. Cal. Feb. 9, 2016)................................10

*In re Delphi Corp.*,
276 F.R.D. 81 (S.D.N.Y. 2011) ......................................................5

*Ensco Offshore Co. v. Salazar*,
2010 WL 11538697 (E.D. La. Sept. 16, 2010) .............................11

*Fishermen's Finest Inc. v. Gutierrez*,
2008 WL 2782909 (W.D. Wash. July 15, 2008) (Pechman, J.) .............11

*FTC v. Warner Commc'ns Inc.*,
742 F.2d 1156 (9th Cir. 1984) ................................................ *passim*

*Greenpeace v. Nat'l Marine Fisheries Serv.*,
198 F.R.D. 540 (W.D. Wash. 2000) ......................................11

*Heffernan v. City of Paterson*,
136 S. Ct. 1412 (2016).............................................................10

*Johnson v. Wetzel*,
2016 WL 4158800 (M.D. Pa. Aug. 5, 2016) ...............................5

*Julian v. U.S. Dep't of Justice*,
806 F.2d 1411 (9th Cir. 1986) ......................................................11

*Karnoski v. Trump*,
926 F.3d 1180 (9th Cir. 2019) ................................................ *passim*

*Lahr v. Nat'l Transp. Safety Bd.*,
569 F.3d 964 (9th Cir. 2009) ......................................................11

*MacNamara v. City of N.Y.*,
249 F.R.D. 70 (S.D.N.Y. 2008) ..................................................10

PLAINTIFFS' RENEWED MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER THE
DELIBERATIVE PROCESS PRIVILEGE - ii
[Case No.: 2:17-cv-01297-MJP]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

*Marilley v. McCamman*,
2012 WL 4120633 (N.D. Cal. Sept. 19, 2012) ...........................................................9

*N. Pacifica, LLC v. City of Pacifica*,
274 F. Supp. 2d 1118 (N.D. Cal. 2003) ....................................................................5

*N.L.R.B. v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975)................................................................................................9, 11

*Newport Pac. Inc. v. Cty. of San Diego*,
200 F.R.D. 628 (S.D. Cal. 2001) ...............................................................................9

*United States ex rel. Poehling v. UnitedHealth Grp.*,
2018 WL 8459926 (C.D. Dec. 14, 2018)....................................................................5

*Sanchez v. Johnson*,
2001 WL 1870308 (N.D. Cal. Nov. 19, 2001) .........................................................10

*In re Sealed Case*,
121 F.3d 729 (D.C. Cir. 1997)....................................................................................9

*In re Subpoena Duces Tecum Served on the Office of the Comptroller of Currency*,
145 F.3d 1422 (D.C. Cir. 1998) .............................................................................5, 9

*Thomas v. Cate*,
715 F. Supp. 2d 1012 (E.D. Cal. 2010)......................................................................5

*United States v. Virginia*,
518 U.S. 515 (1996) ............................................................................................4, 6, 7

*Univ. of Penn. v. E.E.O.C.*,
493 U.S. 182 (1990)....................................................................................................8

**Statutes**

*Ariz. Dream Act*, 2014 ....................................................................................................6

**Rules**

Rule 34(b)(2)(C) ..............................................................................................................2

PLAINTIFFS' RENEWED MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER THE
DELIBERATIVE PROCESS PRIVILEGE - iii
[Case No.: 2:17-cv-01297-MJP]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1       This Court reached the correct conclusion when it overruled Defendants' deliberative

2  process privilege objections in July 2018. Since then, Defendants have only continued trying to

3  weaponize this narrowly construed, qualified privilege—invoking the privilege in response to

4  every single one of Plaintiffs' 68 document requests and citing it as the sole basis to withhold or

5  redact over 35,000 responsive and otherwise non-privileged documents. The information

6  Defendants are withholding goes to the heart of this matter: rebutting Defendants' assertion that

7  their policy originated from independent military judgment and identifying the government's

8  motivations for banning transgender people from serving in the military. And it is exactly the

9  information Plaintiffs and the Court need to test the government's justifications under heightened

10  scrutiny.

11       The Ninth Circuit vacated this Court's decision and remanded for the Court to assess the

12  propriety of the government's privilege claims under the balancing test articulated in *FTC v.*

13  *Warner Commc'ns Inc.*, 742 F.2d 1156 (9th Cir. 1984). Additional consideration of those four

14  factors, and even particularizing the analysis to specific categories of documents in dispute, only

15  reaffirms the Court's original conclusion: Plaintiffs' need for these materials overrides the

16  government's interest in non-disclosure, and the Court should overrule the government's

17  privilege objections. Separately, the privilege is wholly inapplicable to many of Plaintiffs'

18  document requests, which seek factual or other non-deliberative materials—an independent

19  reason why the Court should overrule those objections.

## BACKGROUND

21

**A.    Defendants use the deliberative process privilege to conceal information the Court**
22  **needs to evaluate the alleged legitimacy of Defendants' discriminatory policies.**

23       This lawsuit alleges unconstitutional discrimination against current and prospective

24  transgender military service members arising from President Trump's unlawful policies:

25  prohibiting transgender personnel from joining the military, forcing them to suppress their

26  identities or face discharge, and subjecting them to unequal treatment and stigmatization. (*See*

27  *generally* 2d Am. Compl., Dkt. No.347.) Both this Court and the Ninth Circuit have confirmed

28  Plaintiffs are entitled to discovery to substantiate their allegations that these policies ("the Ban")

PLAINTIFFS' RENEWED MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER THE
DELIBERATIVE PROCESS PRIVILEGE - 1
[Case No.: 2:17-cv-01297-MJP]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

were not animated by independent military judgment and were the product of impermissible discriminatory intent.

For nearly two years, Plaintiffs have tried to do so. They served three sets of requests for production containing 68 separate document requests. These requests go to the heart of Plaintiffs' claims, seeking, among other things, documents related to the government's purported justifications for the Ban; communications and materials considered by the so-called "Panel of Experts"—the body on which the government rests its core assertion that the Ban was animated by independent military judgment; and substantial factual information, including statistics and data regarding transgender military service, waivers for disqualifying conditions, and other objective data. (*See* Dkt. No. 299 at 3; Ex. 1, Resp. to Pls.' 1st RFPs; Ex. 2, Resp. to Pls.' 2d RFPs; Ex. 3, Resp. to Pls.' 3d RFPs.)

Defendants have stonewalled these efforts, insisting—without legal support and even after this Court and the Ninth Circuit concluded otherwise—that discovery should be limited to an "administrative record." (*E.g.*, Ex. 3, Resp. to Pls.' 3d RFPs at 3.) The deliberative process privilege, moreover, has been central to Defendants' effort to prevent meaningful discovery.[1] They have raised deliberative process objections to *every* request Plaintiffs have made—even those seeking plainly non-deliberative materials. And they have further obfuscated matters by failing to state whether they withheld any responsive documents for any specific document request, as Rule 34(b)(2)(C) requires. Defendants assert the deliberative process privilege as a basis for withholding or redacting over *50,000 responsive documents*, and as the *sole* basis for withholding or redacting approximately *35,000 responsive documents*.

**B.    The Ninth Circuit recognized that the Court may need to consider the events, information, and documents leading up to the Ban in order to evaluate it.**

Plaintiffs moved to compel documents withheld under the deliberative process privilege in May 2018, and the Court granted their motion on July 27, 2018. (Dkt. Nos. 245, 299.) The Court

---

[1]    Defendants also rely heavily on the presidential communications privilege. This motion does not address those claims, which Plaintiffs will address, if needed, at the appropriate time, consistent with the Ninth Circuit's guidance.

PLAINTIFFS' RENEWED MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER THE
DELIBERATIVE PROCESS PRIVILEGE - 2
[Case No.: 2:17-cv-01297-MJP]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

considered the *Warner* factors and concluded that the privilege "[did] not apply in this case." (Dkt. No. 299 at 7–9.) Defendants then filed a petition for a writ of mandamus to the Ninth Circuit. (Dkt No. 302.) The Ninth Circuit vacated this Court's decision but expressed no opinion on the ultimate merits of Plaintiffs' motion nor questioned the Court's core conclusions. Rather, the Ninth Circuit remanded for the Court to provide a more fulsome discussion and balancing of the relevant factors. *Karnoski v. Trump*, 926 F.3d 1180, 1206 (9th Cir. 2019). The Ninth Circuit found that two of the four factors—availability of other evidence and the government's role in the litigation—definitively favor Plaintiffs. *Id.* But it said the record was inadequate to evaluate the remaining factors, the relevance of the information and the "military's countervailing confidentiality interest," *id.*, and remanded with instructions for this Court to provide additional discussion of those factors.

The Ninth Circuit also resolved several points that bear directly on Plaintiffs' deliberative process challenge. *First*, the Court confirmed that heightened constitutional scrutiny—not rational basis—applies to Plaintiffs' claims. That standard expressly requires testing the government's justifications for its discriminatory classification to ensure they are "exceedingly persuasive … genuine, not hypothesized or invented post hoc in response to litigation." *Id.* at 1200 (quotations omitted). *Second*, the Ninth Circuit found that discovery should *not* be limited to the 2018 Memorandum and "Panel of Experts," recognizing, for example, that the "litigation may require the district court to consider the basis of the President's initial decision," which "may implicate … the deliberative process privilege." *Id.* at 1204. *Finally*, the Ninth Circuit indicated that when balancing the *Warner* factors, the Court should consider "categories" of documents separately only "*[i]f* Defendants persuasively argue that a more granular analysis would be proper"—placing the burden on Defendants to demonstrate that a "more granular" approach is necessary to evaluate the propriety of their privilege claims. *Id.* at 1206 (emphasis added).

## C.   Subsequent Meet and Confer

Following the Ninth Circuit's ruling, the parties met and conferred on two separate occasions by telephone and exchanged letters regarding their positions on the issues.

PLAINTIFFS' RENEWED MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER THE
DELIBERATIVE PROCESS PRIVILEGE - 3
[Case No.: 2:17-cv-01297-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

(D. Siegfried Decl. ¶¶ 9-17; Ex. 55, 7/25/2019 D. Siegfried Ltr.; Ex. 56, 8/2/2019 A. Carmichael Ltr.) Plaintiffs made various efforts to engage Defendants on narrowing the parties' disputes, but these conferences have not been productive because Defendants insist that the parties proceed on a document-by-document basis. The parties reached an impasse, precipitating this motion.

## LEGAL STANDARD

The deliberative process privilege protects materials that are "predecisional," meaning they were "generated before the adoption of an agency's policy or decision," and "deliberative," meaning they contain "opinions, recommendations, or advice about agency policies." *Warner*, 742 F.2d at 1161. "Purely factual material that does not reflect deliberative processes is not protected," *id.*, and the government must "segregate and disclose non-privileged factual information within a document." *Karnoski*, 926 F.3d at 1203-04; *Warner*, 742 F.2d at 1156. It is also a qualified privilege, and may be overcome where plaintiffs' claims and the needs of the case require disclosure. *Warner*, 742 F.2d at 1161. The party opposing discovery has the burden of establishing that the deliberative process privilege applies. *Greenpeace v. Nat'l Marine Fisheries Serv.*, 198 F.R.D. 540, 543 (W.D. Wash. 2000).

## ARGUMENT

**A.      The deliberative process privilege is inapplicable in this case because the government's decisionmaking is the central issue.**

The Court should overrule Defendants' deliberative process objections. The Ninth Circuit squarely held that Plaintiffs' constitutional claims turn on the government's justifications for discriminating against transgender service members—including whether they are "genuine, not hypothesized or invented *post hoc* in response to litigation." *Karnoski*, 926 F.3d at 1206 (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)). Yet that is precisely the evidence Defendants wish to shield under the qualified privilege. Under the Ninth Circuit's balancing test, Plaintiffs' need for these materials overrides the government's interest in non-disclosure.

To determine whether the privilege is overcome, the Ninth Circuit "balance[s] four factors": "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and

PLAINTIFFS' RENEWED MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER THE
DELIBERATIVE PROCESS PRIVILEGE - 4
[Case No.: 2:17-cv-01297-MJP]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1  independent discussion regarding contemplated policies and decisions." *Karnoski*, 926 F.3d at

2  1206. The privilege must be "strictly confined within the narrowest possible limits," *United*

3  *States ex rel. Poehling v. UnitedHealth Grp.*, 2018 WL 8459926, at *9 (C.D. Dec. 14, 2018), and

4  is especially weak where deliberations are precisely what are at issue. "[T]he fact that the

5  decision making process is at issue…weighs heavily against [an] assertion of privilege." *Thomas*

6  *v. Cate*, 715 F. Supp. 2d 1012, 1021 (E.D. Cal. 2010); *Johnson v. Wetzel*, 2016 WL 4158800, at

7  *5 (M.D. Pa. Aug. 5, 2016) ("[W]hen the constitutional integrity of the government's

8  deliberative process is called into question, the asserted privilege is accorded little weight.").

9  Indeed, many courts hold that the privilege "is not appropriately asserted" when a plaintiff's

10  claim "turns on the government's intent." *In re Subpoena Duces Tecum Served on the Office of*

11  *the Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998) (stating it is "obvious" the

12  privilege "has no place" in a "constitutional claim for discrimination").

13      No matter the test, however, when claims challenge discrimination within the

14  government's deliberative process, courts invariably find the privilege overcome. As one court

15  explained, the question "whether the privilege is categorically inapplicable or dependent on a

16  balancing of factors... is more stylistic than substantive," because "[w]here the deliberative or

17  decisionmaking process is the 'central issue' in the case, the need for the deliberative documents

18  *will* outweigh the possibility that disclosure will inhibit future candid debate among agency

19  decision-makers." *In re Delphi Corp.*, 276 F.R.D. 81, 85 (S.D.N.Y. 2011) (emphasis added);

20  *e.g.*, *Thomas*, 715 F. Supp. 2d at 1021; *Ariz. Dream Act Coal. v. Brewer*, 2014 WL 171923 (D.

21  Ariz. Jan. 15, 2014); *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118 (N.D. Cal.

22  2003).

23      So too here. The Ninth Circuit already held that "[t]he second and third criteria"—the

24  availability of other evidence and the government's role in the litigation—"favor Plaintiffs."

25  *Karnoski*, 926 F.3d at 1206. The same is true of the other two *Warner* factors.

26      **1.    The relevance of requested materials strongly favors disclosure.**

27      The Ninth Circuit held that "the 2018 Policy on its face treats transgender persons

28  differently than other persons, and consequently" this Court should "apply[] intermediate

PLAINTIFFS' RENEWED MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER THE
DELIBERATIVE PROCESS PRIVILEGE - 5
[Case No.: 2:17-cv-01297-MJP]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

scrutiny." *Karnoski*, 926 F.3d at 1201–02. Such heightened scrutiny puts evidence of the government's genuine deliberations and motivations squarely at issue in this suit. *See Virginia*, 518 U.S. at 533; *Ariz. Dream Act*, 2014 WL 171923, at *3 (holding documents "highly relevant" to rational basis challenge because "the Court must consider the actual intent behind [the] policy"). Evidence of the government's actual motivations is obviously relevant both to claims turning on the government's motivations and to its defense that the military was not influenced whatsoever by President Trump's announced policy. All of the categories of documents Plaintiffs requested (and Defendants withheld) are directly relevant to Plaintiffs' ability to substantiate their constitutional claims and to rebut Defendants' defenses.

**Carter Policy Formulation.** Documents regarding the formulation of the Carter Policy are directly relevant to rebutting Defendants' claims that the Ban is the product of reasoned and independent military judgment and showing their true motivation was unlawful. These documents would reveal, for example, whether a group of military experts considered the same evidence, argument, or purported justifications for the Ban and rejected them just two years prior. Additionally, this evidence would reveal information, testimony, or data that the "Panel of Experts" did *not* consider or evaluate, which would create the inference that the panel's considerations and decisions were constrained by the President's directives, consistent with Plaintiffs' theory of the case.

**Carter Policy Implementation.** The Carter Policy's implementation is likewise relevant to rebutting and undermining the Ban's purported justifications, including claimed concerns about unit cohesion and military readiness. Such documents (which cannot be predecisional) would demonstrate that the supposed reasons animating the Ban did not actually arise when the Carter Policy was implemented and open service was permitted. This would show the military abandoned "a less intrusive means" of achieving its goals under heightened scrutiny, *Karnoski*, 926 F.3d at 1200, and that the reasons offered for the Ban are pretextual and a cover for unconstitutional discrimination.

**Military Service by Transgender People between President Trump's Inauguration and July 2017 Tweets.** Documents about military service by transgender people between

PLAINTIFFS' RENEWED MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER THE
DELIBERATIVE PROCESS PRIVILEGE - 6
[Case No.: 2:17-cv-01297-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

President Trump's inauguration and the time he announced the Ban on Twitter in July 2017 are relevant to examining whether there was any basis in evidence for the purported justifications the President initially offered—which have been carried through in his subordinates' subsequent implementation and refinement of his directive. To the extent the current policy implemented what was decided in 2017, heightened scrutiny requires the government to justify—and Plaintiffs challenge—its policy at the time of decision. This is no less relevant because of the subsequent so-called "Panel of Experts," which Plaintiffs contend was a post-hoc effort to backfill a justification for an already-announced policy.

**Panel Communications.** These documents are relevant to Plaintiffs' claims that the panel's process was constrained. Such documents will reveal whether the panel was told what it could and could not consider and its perceived freedom to oppose the President's announced policy. Communications among panel members may also reveal impermissible discriminatory intent, stereotypes and overbroad generalizations, suppression of additional dissenting views, or that the panel's process was pretextual. Since the government seeks to rely heavily on military deference, this evidence is critical to understanding the true nature of the panel's motivations.

**Testimony, Documents, and Data the Panel Received.** Understanding the unfiltered scope of what the panel actually considered is crucial to assessing whether its deliberations were truly the product of reasoned and independent military judgment, or whether the evidence and data provided was incomplete or insufficient to justify its recommendations. Such documents are also relevant to compare what the panel considered versus what the Carter Policy Working Group considered.

**Panel Deliberations and Decisions.** These documents are indisputably relevant to the panel's "genuine, not hypothesized or invented" justifications for the government's discriminatory policy, and may show the extent to which political or other perceived constraints shaped the panel's discriminatory recommendations. *Virginia*, 518 U.S. at 533. That includes whether the panel even considered a "less intrusive means" of achieving its goals. *Karnoski*, 926 F.3d at 1200. The government's heavy reliance on military deference only amplifies the relevance of this information.

PLAINTIFFS' RENEWED MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER THE
DELIBERATIVE PROCESS PRIVILEGE - 7
[Case No.: 2:17-cv-01297-MJP]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

**February 2018 Department of Defense Report and Secretary Mattis' February 23, 2018 Memorandum.** Documents related to this Report are again relevant to decisionmakers' genuine motivations, and could reveal if non-military political or other considerations influenced what Defendants are asserting was purely a military decision requiring military deference.[2]

**President Trump's March 2018 Memorandum.** Documents related to the Memo are relevant to the actual motivations behind the 2018 policy. They may reveal the extent to which animus or non-military considerations undeserving of deference shaped that policy, and the extent to which the 2018 Policy and March Memorandum were pre-ordained from the start and constrained by the President, including his prior Tweets and Ban.

**Implementation of Secretary Mattis' February 2018 Memorandum and Transgender Military Service since February 2018.** These documents (in addition to being postdecisional and thus outside the scope of the privilege) are relevant to the military's experience with transgender service, and whether stated readiness concerns are actually reflected in that experience, or are instead *post hoc* justifications for discrimination. This evidence may reveal that, as the Carter Policy Working Group found, discrimination against transgender service members and applicants is actually harmful to military readiness and unit cohesion.

Relevance thus weighs strongly in favor of disclosure for each category of documents at issue.

### 2. Discovery would not chill frank and legitimate discussion.

The final *Warner* factor—whether disclosure will chill frank discussion—cannot salvage Defendants' privilege claims. Courts do not lightly assume disclosing deliberations will hamper future discussions. *E.g.*, *Univ. of Penn. v. E.E.O.C.*, 493 U.S. 182, 200-01 (1990) (rejecting "chilling effect" argument: while "it is possible" decisionmakers "may become less candid as the possibility of disclosure increases, others may simply ground their evaluations in specific

---

[2]    After a prolonged discovery dispute with a third party, Plaintiffs have obtained documents indicating that political appointees within the Department of Defense bypassed their own "Panel of Experts" after it apparently failed to supply adequate support for the policy, and *directly* solicited an anti-transgender advocate for help after the panel completed its work. Ex. 53-54. These documents just scratch the surface and without discovery from Defendants directly, Plaintiffs will not truly know the process culminating in the February 2018 report.

PLAINTIFFS' RENEWED MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER THE
DELIBERATIVE PROCESS PRIVILEGE - 8
[Case No.: 2:17-cv-01297-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

examples and illustrations in order to deflect potential claims of bias or unfairness"); *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1092 (9th Cir. 2002) (rejecting "chilling effect argument"); *Marilley v. McCamman*, 2012 WL 4120633, at *6 (N.D. Cal. Sept. 19, 2012). That is because candor among decisionmakers is not an end in itself; courts protect deliberations only so much as necessary to promote "the agency's ability to perform its functions." *Carter*, 307 F.3d at 1090; *In re Sealed Case*, 121 F.3d 729, 751 (D.C. Cir. 1997) (privilege does not protect candor at all costs given "the goal of open government").

The government cannot treat a common law, judicial policy in favor of candor as a shield against discovery of unlawful motivations, because the very purpose of the Fourteenth Amendment is to deter discriminatory policymaking. Indeed, when the purpose of a lawsuit is to "deliberately expose[] government decisionmaking to the light," any chilling concern "evaporates." *In re Subpoena*, 145 F.3d at 1424. And here the only views disclosure would chill are discriminatory ones, which cuts in favor of disclosure: "if because of this case, members of government agencies acting on behalf of the public at large are reminded that they are subject to scrutiny, a useful purpose will have been served." *Marilley*, 2012 WL 4120633, at *6; *accord Newport Pac. Inc. v. Cty. of San Diego*, 200 F.R.D. 628, 640 (S.D. Cal. 2001)). The same is true to the extent that discovery reveals a disconnect between the actual and stated degree of independent judgment underlying a particular policy.

The risk of chilling is particularly low here, where, unlike the typical situation where the government wants to shield opposing views it considered but did not adopt, the government has publicly aired, endorsed, and adopted *both* sides of the debate within a period of less than two years. If all internal policy deliberations truly focused on the merits of the Carter Policy versus the Ban—and not, say, animus or political constraints influencing decision-making—then there is no reason to think disclosure would discourage candid discussion. Moreover, to the extent communications involve reasoning the government ultimately adopted—whether the Carter Policy or the Ban—there is no chilling effect because "agency employees will generally be encouraged rather than discouraged by public knowledge that their policy suggestions have been adopted by the agency." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 161 (1975). The

PLAINTIFFS' RENEWED MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER THE
DELIBERATIVE PROCESS PRIVILEGE - 9
[Case No.: 2:17-cv-01297-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1    potential for chilling is further reduced here because the deliberations involve military and

2    medical experts bound and motivated by professional obligations to provide candid counsel,

3    insulating deliberations from a chilling effect. *See MacNamara v. City of N.Y.*, 249 F.R.D. 70, 83

4    (S.D.N.Y. 2008) (concluding disclosure would not chill candor among police because "NYPD

5    employees retain a strong incentive—namely, a desire to enhance public safety and to fulfill their

6    professional obligations—to relay to their superiors recommendations regarding operational

7    policies").

8         Finally, the Court could mitigate any residual concerns about publicly disclosing the

9    government's deliberations through a protective order. *E.g.*, *Sanchez v. Johnson*, 2001 WL

10   1870308, at *7 (N.D. Cal. Nov. 19, 2001) ("[T]he Court finds that the protective order that is

11   currently in place, with minor modification, will sufficiently protect Defendants interests."); *Del*

12   *Socorro Quintero Perez v. United States*, 2016 WL 499025, at *7 (S.D. Cal. Feb. 9, 2016).

13        In sum, under any balancing of the *Warner* factors, Plaintiffs' need for evidence of the

14   government's motivations underlying the Ban override the government's interest in non-

15   disclosure. The Ninth Circuit already found two of the four factors conclusively favor disclosure,

16   the documents Plaintiffs seek are directly relevant to their claims, and there is no legitimate

17   reason to fear that disclosure will have a chilling effect on future deliberations.

18        The government cannot meet its burden of "persuasively argu[ing] that a more granular

19   analysis would be proper," *Karnoski*, 926 F.3d at 1206, given its own approach to discovery and

20   privilege in this case.[3] Nevertheless, whether applied to the case as a whole or particularized by

21   specific categories of documents in dispute, further analysis of the *Warner* factors only confirms

22   the deliberative process privilege must yield.

23

24

25

26   _____

27   [3]    "After all, in the law, what is sauce for the goose is normally sauce for the gander." *Heffernan v. City of Paterson*, 136 S. Ct. 1412, 1418 (2016). Here, for example, the government ran a single search for responsive documents across all 68 of Plaintiffs' requests for production, without considering the specific categories of documents Plaintiffs requested. D. Siegfried Decl. ¶ 14. It likewise cut-and-pasted the same boilerplate privilege objections in response to every request. *See* Pls.' Mot. Compel Adequate Response, Dkt. No. 358, at 1-4.

28
PLAINTIFFS' RENEWED MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER THE
DELIBERATIVE PROCESS PRIVILEGE - 10          Newman Du Wors LLP
[Case No.: 2:17-cv-01297-MJP]

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1

**B.      The privilege does not apply to many of Plaintiffs' requests, which do not seek deliberative material.**

2

3      Independently, the deliberative process privilege is completely inapplicable to many of

4    Plaintiffs' requests. The privilege, as its name implies, is limited to policy-oriented opinions or

5    deliberations that "reveal the mental processes of the decisionmaker." *Assembly of Cal. v. U.S.*

6    *Dep't of Commerce*, 968 F.2d 916, 921 (9th Cir. 1992). It does not extend to "purely factual

7    material." *Julian v. U.S. Dep't of Justice*, 806 F.2d 1411, 1419 (9th Cir. 1986). Nor does it

8    permit the government to withhold communications that were adopted as the basis for a policy or

9    that post-date the decision to adopt the policy. *Sears*, 421 U.S. at 161. It is concerned only with

10    the quality of decisions—not the quality of after-the-fact justifications—and those later

11    deliberations cannot possibly impact a decision already made. *Id.* at 152; *accord Fishermen's*

12    *Finest Inc. v. Gutierrez*, 2008 WL 2782909, at *2 (W.D. Wash. July 15, 2008) (Pechman, J.) ("A

13    document that was prepared to support a decision already made is not predecisional.").

14      A party cannot elide this dispositive distinction by reframing mere justifications as

15    precursors to subsequent decisions. The Ninth Circuit rejects attempts to bring post-decisional

16    documents within the ambit of the privilege by claiming a "continuing process of agency self-

17    examination"; otherwise, "the privilege would be boundless," when it is supposed to be

18    "narrowly construed." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 981 (9th Cir. 2009);

19    *Greenpeace*, 198 F.R.D. at 543. Once a decision is made, all subsequent communications

20    necessarily are non-privileged justifications "to buttress that fait accompli." *Ensco Offshore Co.*

21    *v. Salazar*, 2010 WL 11538697, at *8 (E.D. La. Sept. 16, 2010).

22      Many of Defendants' privilege objections here contravene these settled principles,

23    asserting the deliberative process privilege in response to dozens of document requests that seek

24    (1) factual information, (2) information about non-policy oriented decisions, and (3) post-

25    decisional materials. For example, Defendants lodge privilege objections to Plaintiffs' request

26    for (i) operative military policies and procedures (RFP No. 13); (ii) documents related to waiver

27    applications and discharge proceedings (RFP Nos. 16-19); (iii) statistical data related to costs

28    associated with the Ban (RFP Nos. 25-26); (iv) statistical and factual information about military

PLAINTIFFS' RENEWED MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER THE
DELIBERATIVE PROCESS PRIVILEGE - 11
[Case No.: 2:17-cv-01297-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

service by transgender individuals (RFP Nos. 36-47, 50-54, 58-59, 66, 68); and (v) statistical and factual information related to military healthcare generally, including conditions unrelated to transgender status (RFP Nos. 47-50, 55-57). These requests for statistical data and information about non-policy-oriented decisions seek information plainly outside the privilege's scope. The same is true of documents regarding "implementation" of the Carter Policy and the Ban, "rescission" of the Carter Policy, panel documents that post-date its final vote, or documents post-dating the Mattis Report—all of which are post-decisional. (A complete list of inapplicable documents and requests is attached in Appendix A.)

Plaintiffs respectfully request the Court overrule these deliberative process privilege objections and compel Defendants to produce all improperly withheld responsive documents.

## CONCLUSION

If Defendants' objections and privilege claims stand, Plaintiffs will be blocked from doing exactly what this Court and the Ninth Circuit confirmed they have a right to do: gather documents and information related to serious allegations of unconstitutional discrimination. More important, meaningful judicial review of the Ban—and Defendants' assertion that it is the product of independent military judgment—will be nearly impossible because the Court will be forced to either accept or reject the government's claims on face value, rather than having a chance to examine the underlying evidence. The Court should overrule Defendants' deliberative process objections and compel Defendants to disclose all documents and information withheld on that basis.

PLAINTIFFS' RENEWED MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER THE
DELIBERATIVE PROCESS PRIVILEGE - 12
[Case No.: 2:17-cv-01297-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1   Respectfully submitted August 22, 2019.

2

3                                          **NEWMAN DU WORS LLP**

4

5                                          _____

6                                          Derek A. Newman, WSBA No. 26967
                                           *dn@newmanlaw.com*
7                                          Jason B. Sykes, WSBA No. 44369
                                           *jason@newmanlaw.com*
8                                          Rachel Horvitz, WSBA No. 52987
                                           *rachel@newmanlaw.com*
9                                          2101 Fourth Ave., Ste. 1500
                                           Seattle, WA 98121
10                                         (206) 274-2800

11
                                           **LAMDBA LEGAL DEFENSE AND**
12                                         **EDUCATION FUND, INC.**
                                           Tara Borelli, WSBA No. 36759
13                                         *tborelli@lambdalegal.org*
                                           Camilla B. Taylor (admitted pro hac vice)
14                                         Peter C. Renn (admitted pro hac vice)
15                                         Sasha J. Buchert (admitted pro hac vice)
                                           Kara N. Ingelhart (admitted pro hac vice)
16                                         Carl Charles (admitted pro hac vice)
                                           Paul D. Castillo (admitted pro hac vice)
17
                                           **OUTSERVE-SLDN, INC.**
18                                         Peter E. Perkowski (admitted pro hac vice)

19
                                           **KIRKLAND & ELLIS LLP**
20                                         James F. Hurst, P.C. (admitted pro hac vice)
                                           Stephen R. Patton (admitted pro hac vice)
21                                         Jordan M. Heinz (admitted pro hac vice)
                                           Vanessa Barsanti (admitted pro hac vice)
22                                         Daniel I. Siegfried (admitted pro hac vice)
                                           Joseph B. Tyson (admitted pro hac vice)
23

24                                         *Counsel for Plaintiffs*

25

26

27

28

PLAINTIFFS' RENEWED MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER THE
DELIBERATIVE PROCESS PRIVILEGE - 13          NEWMAN DU WORS LLP
[Case No.: 2:17-cv-01297-MJP]

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1

## CERTIFICATE OF SERVICE

2

The undersigned certifies under penalty of perjury under the laws of the United States of

3

America and the laws of the State of Washington that all participants in the case are registered

4

CM/ECF users and that service of the foregoing documents will be accomplished by the

5

CM/ECF system on August 22, 2019.

6

7

8

Jason B. Sykes, WSBA No. 44369
*jason@newmanlaw.com*
2101 Fourth Ave., Ste. 1500
Seattle, WA 98121
(206) 274-2800

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' RENEWED MOTION TO COMPEL
DOCUMENTS WITHHELD UNDER THE
DELIBERATIVE PROCESS PRIVILEGE - 14
[Case No.: 2:17-cv-01297-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

**Appendix A**

**Categories of Documents To Which The Deliberative Process Privileged Does Not Apply**

| Category of Documents | Document Request(s) | Basis |
|---|---|---|
| Operative military policies, directives, or procedures re transgender service members | **RFP No. 13:** All currently operative military policies, directives, or procedures that pertain exclusively to transgender service members. | • Non-deliberative<br>• Post-decisional |
| Waiver applications and discharge proceedings for transgender individuals | **RFP No. 16:** All Documents or Communications relating to any application (including any action taken on such application) by a transgender person for a waiver sought for the purpose of accessing into the U.S. military.<br><br>**RFP No. 17:** With respect to waivers sought by transgender people for the purpose of accessing into the U.S. military, Documents sufficient to show the number of such waivers requested, the number of such waivers granted, and the number of such waivers denied.<br><br>**RFP No. 18:** With respect to waivers sought by transgender people for the purpose of accessing into the U.S. military, all Documents or Communications relating to the purpose or bases for the denial of such waivers.<br><br>**RFP No. 19:** All Documents or Communications, between June 30, 2017 and the present, relating to discharge proceedings against any transgender service member serving in the U.S. military.<br><br>**RFP No. 20:** All Documents or Communications, between June 30, 2017 and the present, relating to any transgender person who has applied to join the U.S. military. | • Non-deliberative |

| Category of Documents | Document Request(s) | Basis |
|---|---|---|
| Statistical data related to costs associated with the Ban | **RFP No. 24:** All Documents or Communications relating to the cost of implementing the policy set forth in the August 25, 2017, memorandum entitled "Presidential Memorandum for the Secretary of Defense and the Secretary of Homeland Security."<br><br>**RFP No. 25:** All estimates or calculations, and related Documents and Communications, relating to the cost of separating currently serving transgender people from the military.<br><br>**RFP No. 26:** Documents sufficient to show the total annual amount spent and average, actual, or estimated annual per person cost of hormone therapy provided to service members for each of fiscal years 2015, 2016, and 2017, and for the year to date of fiscal year 2018, including without limitation hormone therapy for the treatment of hypogonadism, hypothyroidism, hyperthyroidism, prostate cancer, breast cancer, growth hormone deficiency, menopause, osteoporosis, and transgender hormone therapy. | • Factual<br>• Non-deliberative |

| Category of Documents | Document Request(s) | Basis |
|---|---|---|
| Statistical and factual information about military service by transgender individuals | **RFP No. 37:** Documents sufficient to show the number of persons accessed into the military while known by military officials to be transgender, and the number of persons retained by the military after becoming known as transgender, since June 30, 2016.<br><br>**RFP No. 38:** Documents sufficient to show both the number of persons accessed into the military while known by the military to have a diagnosis of gender dysphoria, and the number of persons retained by the military after a diagnosis of gender dysphoria while in military service, since June 30, 2016. | • Factual<br>• Non-deliberative |

| Category of Documents | Document Request(s) | Basis |
|---|---|---|
| Statistical and factual information about military service by transgender individuals (*cont'd*) | **RFP No. 39:** All documents relating to numbers or estimates of persons with gender dysphoria (whether or not presently diagnosed) currently serving in the military, or who are in the process of accessing.<br><br>**RFP No. 40:** All documents relating to the numbers or estimates of transgender persons (whether or not open about their gender identity) currently serving in the military, or who are in the process of accessing.<br><br>**RFP No. 41:** All documents describing or relating to differences in the number of transgender persons in the military and the number of persons with gender dysphoria in the military, if a difference in those numbers exists.<br><br>**RFP No. 42:** Documents sufficient to show, for each service branch since June 30, 2016, the name, rank, and service unit of each service member a) who requested a change to their gender marker in the Defense Enrollment Eligibility Reporting System (DEERS), and b) whose gender marker in DEERS has been changed.<br><br>**RFP No. 43:** Documents sufficient to show the number, identity, service branch and military unit, theatre, and circumstances of any transgender service member evacuated from theatres of deployment due to medical and/or mental health reasons since June 30, 2016, including the nature of the medical or mental health reason and the circumstances that led to the decision to evacuate.<br><br>**RFP No. 44:** Documents sufficient to show, for each service branch since June 30, 2016, the name, rank, and service unit of each transgender service member rendered non-deployable on account of gender dysphoria or transition-related medical care, and the duration of and specific reason(s) for such non-deployability. | • Factual<br>• Non-deliberative |

| Category of Documents | Document Request(s) | Basis |
|---|---|---|
| Statistical and factual information about military service by transgender individuals (*cont'd*) | **RFP No. 45:** Documents sufficient to show, for each service branch for the period since June 30, 2016, the name, rank, and service unit of each transgender service member who was deployed overseas, and the duration, location, and nature of their deployment.<br><br>**RFP No. 46:** Documents sufficient to show the considerations the military takes into account, and the process it utilizes, in determining which medical and mental health conditions and treatments should be included in Department of Defense Instruction (DODI) 6130.03.<br><br>**RFP No. 47:** Documents sufficient to show, for each service branch, the considerations the branch takes into account, and the process(es) it utilizes, both as to accession into military service and with respect to retention in service of current service members, when determining whether to grant applications for waivers of disqualifying mental or medical conditions including: hypogonadism; chest surgery; genital repair and/or reconstruction surgery; adrenal dysfunction; hyperparathyroidism; hypoparathyroidism; pituitary dysfunction; hormone treatment; conditions or medical histories described by DODI 6130.03 §§ 5.13-5.14; anxiety; depression; body dysmorphia; suicidal ideation; past suicide attempts; history of self-harm; post-traumatic stress disorder; and history of malignancy, including prostate, testicular, ovarian and breast malignancies.<br><br>**RFP No. 50:** Documents sufficient to show the number of waivers granted for service members seeking retention, and number of waivers denied for service members seeking retention, for each of the following conditions: hypogonadism; chest surgery; genital repair and/or reconstruction surgery; adrenal dysfunction; hyperparathyroidism; hypoparathyroidism; pituitary dysfunction; and hormone treatment; conditions or medical histories described by DODI 6130.03 §§ 5.13-5.14; anxiety; depression; body dysmorphia; suicidal ideation; past suicide attempts; history of self-harm; and post-traumatic stress disorder; history of malignancy, including without limitation history of prostate, testicular, ovarian or breast malignancies; since June 30, 2016. | • Factual<br>• Non-deliberative |

5

| Category of Documents | Document Request(s) | Basis |
|---|---|---|
| Statistical and factual information about military service by transgender individuals (*cont'd*) | **RFP No. 51:** Documents sufficient to show the number of openly transgender individuals granted waivers for non-gender-dysphoria conditions or histories, and allowed to be accessed or retained pursuant to those waivers, since June 30, 2016.<br><br>**RFP No. 52:** Documents sufficient to show the number of openly transgender individuals denied waivers for non-gender-dysphoria conditions or histories, and denied accession or retention absent those waivers, since June 30, 2016.<br><br>**RFP No. 53:**  All documents reflecting, referring or relating to any request by transgender persons for medical and/or mental health waivers of conditions disqualifying them from accession to or retention in the military, including without limitation all documents reflecting the date of and grounds for such request, whether the request was for accession or retention, whether the request was granted or denied, and the basis for such decision.<br><br>**RFP No. 58:**  All documents reflecting, referring, or relating to the reasons that transgender service members were placed on "limited duty" in the Army and Air Force over the "one-year period" referenced on page 33 of the February 2018 Department of Defense Report and Recommendations on Military Service by Transgender Persons.<br><br>**RFP No. 59:**  Documents sufficient to show, for each service branch by fiscal year from October 1, 2014 to the present, the name, rank, and service unit of each service member who has been discharged from military service due, in whole or in part, to their transgender status or diagnosis of gender dysphoria, including without limitation documents showing the date and specific stated reason for their discharge. | • Factual<br>• Non-deliberative |

| Category of Documents | Document Request(s) | Basis |
|---|---|---|
| Waiver requests by transgender individuals after April 12, 2019 | **RFP No. 54.**   All documents reflecting, referring, contemplating, or relating to requests made on or after April 12, 2019 to waive the disqualifying condition of gender dysphoria, including without limitation documents reflecting criteria that will inform decisions upon those waiver requests, documents reflecting the date of and grounds for each such request, documents showing whether each request was granted or denied and the basis for such decision, and documents showing whether those decisions were made upon the subject individual's attempted accession into, or instead retention by, the military. | • Factual<br>• Non-deliberative<br>• Post-decisional |
| Statistical and factual information related to military healthcare generally, including conditions unrelated to transgender status | **RFP No. 48:**   Documents sufficient to show the total number of applications granted, and number of applications denied, for waiver of disqualifying conditions listed in DODI 6130.03, since June 30, 2016.<br><br>**RFP No.  49:** Documents sufficient to show the number of waivers granted upon accession, and number of waivers denied upon accession, for each of the following conditions: hypogonadism; chest surgery; genital repair and/or reconstruction surgery; adrenal dysfunction; hyperparathyroidism; hypoparathyroidism; pituitary dysfunction; and hormone treatment; conditions or medical histories described by DODI 6130.03 §§ 5.13-5.14; anxiety; depression; body dysmorphia; suicidal ideation; past suicide attempts; history of self-harm; and post-traumatic stress disorder; history of malignancy, including without limitation history of prostate, testicular, ovarian or breast malignancies; since June 30, 2016. | • Factual<br>• Non-deliberative |

| Category of Documents | Document Request(s) | Basis |
|---|---|---|
| Statistical and factual information related to military healthcare generally, including conditions unrelated to transgender status (*cont'd*) | **RFP No. 50:** Documents sufficient to show the number of waivers granted for service members seeking retention, and number of waivers denied for service members seeking retention, for each of the following conditions: hypogonadism; chest surgery; genital repair and/or reconstruction surgery; adrenal dysfunction; hyperparathyroidism; hypoparathyroidism; pituitary dysfunction; and hormone treatment; conditions or medical histories described by DODI 6130.03 §§ 5.13-5.14; anxiety; depression; body dysmorphia; suicidal ideation; past suicide attempts; history of self-harm; and post-traumatic stress disorder; history of malignancy, including without limitation history of prostate, testicular, ovarian or breast malignancies; since June 30, 2016.<br><br>**RFP No. 55:** Documents sufficient to show the total number of mental health visits by all service members for each branch of service, by month, since July 13, 2015.<br><br>**RFP No. 56:**   Documents sufficient to show, for each branch of service since June 30, 2016, the number of exceptions to or exemptions made from sex-based standards for non-transgender females, and the reason(s) for such exceptions, including without limitation exceptions for standards respecting: physical fitness tests; body fat; dress standards; and/or boxing and combatives.<br><br>**RFP No. 57.**   Documents sufficient to show, for each branch of service since June 30, 2016, the branch's policies with respect to "limited duty," including without limitation the reasons for and/or circumstances under which a service member will or may be placed on limited duty. | • Factual<br>• Non-deliberative |

| Category of Documents | Document Request(s) | Basis |
|---|---|---|
| Implementation of the Carter Policy including complaints arising or attributed to open service by transgender service members, accessions by transgender individuals, or the Carter Policy | **RFP No. 36:**   All documents reflecting, referring, or relating to any complaints arising from or attributed to open service by transgender service members, accessions by transgender individuals, or the Carter Policy. | • Factual<br>• Non-deliberative<br>• Post-decisional |
| Information provided to or considered by the Department of Defense, Panel of Experts, Transgender Service Policy Work Group, and/or any other group or committee within the Department of Defense that reviewed or considered transgender issues | **RFP No. 29(a):** All Documents or Communications relating or referring to the February 2018 Department of Defense Report and Recommendations on Military Service by Transgender Persons (the "Report and Recommendations"), including without limitation: (a) all documents received, reviewed, or considered by the Department of Defense, Panel of Experts, Transgender Service Policy Working Group, and/or any other group or committee within the Department of Defense that reviewed or considered transgender issues; (b) all Communications to, from, or copying the Department of Defense, Panel of Experts, Transgender Service Policy Working Group, and/or any other group or committee within the Department of Defense that reviewed or considered transgender issues; (c) all Documents reflecting, containing, or setting forth any information or data received, reviewed, or considered by the Department of Defense, Panel of Experts, Transgender Service Policy Working Group, and/or any other group or committee within the Department of Defense that reviewed or considered transgender issues; (d) all Documents relating, reflecting, or referring to matters discussed at any meeting of the Panel of Experts, Transgender Service Policy Working Group, and/or any other group or committee within the Department of Defense that reviewed or considered transgender issues; (e) all drafts of the Report and Recommendations. | • Factual |

9

| Category of Documents | Document Request(s) | Basis |
|---|---|---|
| Information provided to or considered by the Department of Defense, Panel of Experts, Transgender Service Policy Work Group, and/or any other group or committee within the Department of Defense that reviewed or considered transgender issues (*cont'd*) | **RFP No. 61:** All documents reflecting or relating to the "analysis of accession standards, multi-disciplinary review of relevant data, and information about medical treatment for gender dysphoria and gender transition related medical care" that was provided to the Panel of Experts by the "Medical and Personnel Executive Steering Committee," as set forth at page 18 of the Report.<br><br>**RFP No. 62:** All documents reflecting or relating to the reports and the responses to "queries for additional information and analysis to support the Panel's review and deliberations" by the "Transgender Service Policy Working Group" and/or the "Medical and Personnel Executive Steering Committee," as set forth at page 18 of the Report.<br><br>**RFP No. 64:** All documents reflecting or relating to the "information and analyses about gender dysphoria, the treatment of gender dysphoria, and the effects of currently serving individuals with gender dysphoria on military effectiveness, unit cohesion, and resources" that was received and/or reviewed by the Panel of Experts as set forth at page 18 of the Report.<br><br>**RFP No. 65:**   All documents reflecting or relating to "the Department's own data and experience obtained since the Carter policy took effect" that is referenced at page 18 of the Report.<br><br>**RFP No. 66:** All documents reflecting or relating to the following references in the February 2018 Department of Defense Report and Recommendations on Military Service by Transgender Persons ("Report"): (a) the "[d]ata retrieved from [the] Military Health System data repository" cited at pages 21-22, footnotes 64-66, and page 41, footnote 161; (b) the "[d]ata reported by the Departments of Army, Navy, and Air Force" cited at page 31, footnotes 114-115, as well as at page 33, footnote 121 and page 41, footnote 163, and (c) the "Defense Health Agency, Supplemental Health Care Program Data" cited at pages 31-32, footnotes 119-120, and page 41, footnote 162. | • Factual |

| Category of Documents | Document Request(s) | Basis |
|---|---|---|
| Information provided to or considered by the Department of Defense, Panel of Experts, Transgender Service Policy Work Group, and/or any other group or committee within the Department of Defense that reviewed or considered transgender issues (*cont'd*) | **RFP No. 67:**  All documents referring or relating to the equal opportunity complaints discussed at page 37 of the Report, including copies of the complaints, email or other correspondence related to the complaints, and documents reflecting how the complaints were resolved.<br><br>**RFP No. 68:** Documents sufficient to show the basis for, and all data underlying or relating to, the purported increase in medical costs for service members with gender dysphoria as compared to service members without gender dysphoria, referenced at page 41 of the Report. | • Factual |
| Documents reviewed, considered, or relied upon for Secretary Mattis' February 22, 2018 Memorandum | **RFP No. 27(a):** All Documents or Communications relating or referring to Secretary James Mattis's February 22, 2018, Memorandum for the President with Subject: Military Service by Transgender Individuals (the "February 22, 2018, Memorandum"), including without limitation: (a) all documents reviewed, considered, or relied upon in preparing the February 22, 2018, Memorandum; and (b) all drafts of the February 22, 2018, Memorandum. | • Factual |
| Documents reviewed, considered, or relied upon in preparing President Trump's March 23, 2018 Memorandum | **RFP No. 32(a):** All Documents or Communications relating or referring to President Trump's March 23, 2018, Memorandum for the Secretary of Defense and the Secretary of Homeland Security with Subject: Military Service by Transgender Individuals (the "March 23, 2018, Memorandum"), including without limitation: (a) all documents reviewed, considered, or relied upon in preparing the March 23, 2018, Memorandum; and (b) all drafts of the March 23, 2018, Memorandum. | • Factual |

| Category of Documents | Document Request(s) | Basis |
|---|---|---|
| Implementation of the Carter Policy and the Ban, rescission of the Carter Policy, Panel of Expert documents that post-date its final vote, and documents post-dating the February 2018 Mattis report | Various RFPs | • Post-decisional |