# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

RYAN KARNOSKI et al.,

        Plaintiffs,

v.

DONALD J TRUMP et al.,

        Defendants.

CASE NO. C17-1297 MJP

ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL DOCUMENTS WITHHELD UNDER THE DELIBERATIVE PROCESS PRIVILEGE;

REQUEST NOS. 15, 29, 33, 36, AND 44

THIS MATTER comes before the Court on Plaintiffs' Renewed Motion to Compel Documents Withheld Under the Deliberative Process Privilege (Dkt. No. 364), and upon the Parties' Joint Status Report (Dkt. No. 398). Having reviewed the Motion, the Joint Status Report, the Response (Dkt. No. 380), the Reply (Dkt. No. 385), and all related papers, and having met with the Parties (Dkt. No. 399), the Court GRANTS Plaintiffs' Motion.

//

//

//

**Background**

I. **Requested Discovery**

The Parties are engaged in a protracted discovery battle regarding the Defendants' assertion of the deliberative process privilege over 35,000 responsive documents. (Dkt. No. 364 at 6.) Plaintiffs seek discovery to substantiate their allegations that Defendants' ban on transgender military service (the "Ban") was not animated by independent military judgment but was instead the product of impermissible discriminatory intent. (See Dkt. No. 347, Second Amended Complaint ("SAC"); Dkt. No. 364 at 6.)

Defendants argue the Ban is consistent with the recommendations of a "Panel of Experts" convened by then-Secretary of Defense James Mattis and tasked with "conduct[ing] an independent multi-disciplinary review and study of relevant data and information pertaining to transgender Service members." (See Dkt. No. 226 at 9-10; Dkt. No. 224, Ex. 2 at 19.) Defendants contend that in reaching its conclusions, the Panel considered "input from transgender Service members, commanders of transgender Service members, military medical professionals, and civilian medical professionals with experience in the care and treatment of individuals with gender dysphoria" and its analysis was "informed by the [DoD]'s own data obtained since the new policy began to take effect last year." (Dkt. No. 224, Ex. 1 at 3, Ex. 2 at 20.) The Panel's findings are set forth in a 44-page "Report and Recommendations on Military Service by Transgender Persons," which concludes that service by transgender individuals "would impede readiness, limit deployability, and burden the military with additional costs." (Dkt. No. 224, Ex. 2 at 46.)

//

//

## II. Procedural History

The Court previously granted in part and denied in part Plaintiffs' Motion to Compel Discovery Withheld Under the Deliberative Process Privilege. (Dkt. No. 364; Dkt. No. 394) Finding that the Defendants failed to respond to Plaintiffs' Requests for Production in a manner that would allow the Court to assess Defendants' privilege claims as required under Federal Rule of Civil Procedure 26(b)(5)(ii) or conduct the type of "granular analysis" mandated by the Ninth Circuit in Karnoski v. Trump, 926 F.3d 1180, 1206 (9th Cir. 2019), the Court ordered the Defendants to respond to Plaintiffs' first five Requests for Production, as provided by Plaintiffs in order of priority. (Dkt. No. 394.) The Court also adopted the reasoning and conclusions of the court in Doe 2 v. Esper, No. CV 17-1597 (CKK), 2019 WL 4394842, at *7 (D.D.C. Sept. 13, 2019), which found that the deliberative process privilege could "not be used to shield discovery into Defendants' decision-making process and intent when the extent and scope of that decision-making process is a central issue in this lawsuit." Id. at *7. The Doe court also found that the plaintiffs' need for the requested documents outweighed the deliberative process privilege. Id. at *8 (citing In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997)).

The Parties have now filed a Joint Status Report, which includes Plaintiffs' first five Requests for Production ordered by priority: Request Nos. 15, 29, 33, 36, and 44. (Dkt. No. 398.) On December 10, 2019, the Court met with the Parties to discuss the remaining disputes regarding these five Requests; Defendants informed the Court that they will produce responsive documents on December 20, 2019. (Dkt. No. 399.)

//

//

//

**Discussion**

**I.      Legal Standard**

The deliberative process privilege protects documents and materials which would reveal "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." N.L.R.B., 421 U.S. at 150.  For the privilege to apply, a document must be (1) "predecisional," meaning that it was "generated before the adoption of an agency's policy or decision," and (2) "deliberative," meaning that it contains "opinions, recommendations, or advice about agency policies." FTC v. Warner Commc'ns Inc., 742 F.2d 1156, 1161 (9th Cir. 1984).

The deliberative process privilege is not absolute and can be overcome where Plaintiffs' "need for the materials and the need for accurate fact-finding override the government's interest in nondisclosure." Id.  In making this determination, the Court weighs: "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." Id.  The Ninth Circuit found that the second and third factors—the availability of other evidence and the government's role in the litigation—favor Plaintiffs here. Karnoski, 926 F.3d at 1206.

As with all evidentiary privileges, "the deliberative process privilege is narrowly construed" and Defendants bear the burden of establishing its applicability. Greenpeace v. Nat'l Marine Fisheries Serv., 198 F.R.D. 540, 543 (W.D. Wash. 2000) (citations omitted).  In addition to showing that withheld documents are privileged, Defendants must comply with formal procedures necessary to invoke the privilege. Id.  "Blanket assertions of the privilege are

insufficient.  Rather [Defendants] must provide 'precise and certain' reasons for preserving the confidentiality of designated material." Id.

**II.     Requests for Production**

**A.  Request No. 29**

The Parties primarily dispute two categories of documents responsive to Request for Production No. 29: (1) the work and communications of non-voting members of the Panel and (2) drafts created by officials in the Office of the Under Secretary of Defense, who were tasked with writing the Report and Recommendations after the Panel concluded its work.  (Dkt. No. 399.)  Request for Production No. 29 seeks:

> All Documents or Communications relating or referring to the February 2018 Department of Defense Report and Recommendations on Military Service by Transgender Persons (the "Report and Recommendations"), including without limitation: (a) all documents received, reviewed, or considered by the Department of Defense, Panel of Experts, Transgender Service Policy Working Group, and/or any other group or committee within the Department of Defense that reviewed or considered transgender issues; (b) all Communications to, from, or copying the Department of Defense, Panel of Experts, Transgender Service Policy Working Group, and/or any other group or committee within the Department of Defense that reviewed or considered transgender issues; (c) all Documents reflecting, containing, or setting forth any information or data received, reviewed, or considered by the Department of Defense, Panel of Experts, Transgender Service Policy Working Group, and/or any other group or committee within the Department of Defense that reviewed or considered transgender issues; (d) all Documents relating, reflecting, or referring to matters discussed at any meeting of the Panel of Experts, Transgender Service Policy Working Group, and/or any other group or committee within the Department of Defense that reviewed or considered transgender issues; (e) all drafts of the Report and Recommendations.

(Dkt. No. 398 at 2-3.)

In response to this Request, Defendants have resisted producing responsive documents created by non-voting members of the Panel, arguing that these documents are not relevant because they involve people with a limited role in the Panel's work.  (Dkt. No. 398 at 5.)  The Court disagrees.  In arguing that the Ban is the product of the reasoned, independent judgment of

the Panel, Defendants have described a broad range of sources and input the Panel relied on in its analysis, including new data that previous reviews of military service by transgender individuals did not consider. (Dkt. No. 224, Ex. 1 at 3, Ex. 2 at 20.) The nature and scope of the input from non-voting members of the Panel is relevant to assessing Defendants' claims.

Further, the Court also finds that any chilling effect of disclosure can be "somewhat assuaged" by the actions discussed in Doe:

> For example, the Court can issue a protective order, Defendants can redact certain information, documents can be restricted to attorneys' eyes only, and the Court can conduct *in camera* review over any particularly sensitive documents.

2019 WL 4394842, at *9.

Plaintiffs also seek drafts, communications, and documents relied upon by officials in the Undersecretary of Defense's Office, who were tasked with drafting the Report and Recommendations after the Panel concluded its work. (Dkt. No. 399.) Defendants argue that these documents are not relevant because the officials were solely engaged in editing the Report for grammatical clarity and exposing this process would hinder future frank discussions between such low-level officials and their superiors. (Id.) But drafts solely focused on grammatical changes do not reflect "opinions, recommendations, or advice about agency policies," Warner, 742 F.2d at 1161, and therefore would not be protected by the deliberative process privilege. Alternatively, if officials in the Undersecretary of Defense's Office made substantive changes to the Report or engaged in additional fact-finding as Plaintiffs contend (Dkt. No. 399), documents created by or relied upon by these officials are relevant to assessing whether the Ban was implemented in reliance on the independent recommendations of the Panel. (See Dkt. No. 226 at 9-10; Dkt. No. 224, Ex. 2 at 19.) And while the Court is sensitive to the Defendants' argument

that producing these documents may inhibit future deliberations, these risks can be mitigated with a protective order, as discussed above.

**B. Requests for Production No. 15, 33, 36, and 44**

There are few disputes regarding the remaining Requests. The Parties agree that Defendants' response to Request for Production No. 29, discussed above, encompasses Request for Production No. 33, which seeks documents reflecting "any policies that were considered as alternatives, modifications, or refinements to the policies set forth in the March 23, 2018, Memorandum." (Dkt. No. 398 at 3.) Defendants have also agreed to respond to Request No. 36, which seeks all "complaints arising from or attributed to open service by transgender service members, accessions by transgender individuals, or the Carter Policy." (Id.) Defendants will either produce the complaints or inform the Plaintiffs that there are no remaining complaints to produce. (Dkt. No. 399.) And finally, Defendants informed the Court that responses to Request Nos. 15 and 44 will be included in their upcoming production on December 20, 2019. (Dkt. No. 399.)

**Conclusion**

Finding that Defendants' assertion of the deliberative process privilege is overcome by Plaintiffs' need for the materials and the need for accurate fact-finding, the Court ORDERS the Defendants to produce:

1) All documents responsive to Request for Production No. 29, including the names, communications, and deliberative documents of non-voting members of the Panel; and

2) Drafts, communications, and documents created or relied upon by officials in the Undersecretary of Defense's Office in drafting the Report and Recommendations.

To mitigate any potential chilling effect upon the future deliberations of government actors, these documents shall be produced for attorneys' eyes only. On February 3, 2020 the Parties will meet with the Court to assess Defendants' privilege claims regarding Plaintiffs' next five prioritized Requests for production.

The clerk is ordered to provide copies of this order to all counsel.

Dated December 18, 2019.

*[signature]*
Marsha J. Pechman
United States District Judge