The Honorable Marsha J. Pechman

1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

9

10

11  RYAN KARNOSKI, et al.,

12          *Plaintiffs*, and

13  STATE OF WASHINGTON,

14          *Plaintiff-Intervenor*,

15          v.

16  DONALD J. TRUMP, in his official capacity
    as President of the United States, et al.,
17

18          *Defendants*.

Case No. 2:17-cv-01297-MJP

**LCR 37 JOINT SUBMISSION**
**REGARDING DOCUMENTS**
**WITHHELD BY THE GOVERNMENT**
**AS NON-RESPONSIVE**

NOTE ON MOTION CALENDAR:
February 28, 2020

19

20

21

22

23

24

25

26

27

28

LCR 37 JOINT SUBMISSION RE DOCS WITHHELD
BY GOV'T AS NON-RESP
[Case No.: 2:17-cv-01297-MJP]

**NEWMAN DU WORS LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

**PLAINTIFFS' STATEMENT**

Plaintiffs are the moving party for this submission. Pursuant to Federal Rules of Civil Procedure 26, 34, and 37, and Local Rule 37, Plaintiffs request an order compelling Mark Esper, in his official capacity as Secretary of Defense, and the United States Department of Defense ("DoD") (together, "the Government") to produce documents being withheld as non-responsive belonging to otherwise responsive document families. The parties have met and conferred over the past four months in good faith to try and resolve this dispute without Court action, but with little to no progress made towards resolution, this dispute is now ripe for resolution by the Court. Plaintiffs respectfully request that the Court grant Plaintiffs' motion in full.

**PLAINTIFFS' OPENING ARGUMENT**

In a letter dated October 4, 2019, Plaintiffs identified for the Government discovery deficiencies related to the Government's withholding of documents from its production on the basis of purported "non-responsiveness," even though the withheld document was part of a responsive family group (*e.g.*, the Government produced a responsive email, but withheld the email attachments based on a purported "non-responsiveness" objection). (*See* February 28, 2020 Barsanti Decl. ¶ 2, Ex. 1.) For each withheld "non-responsive" document, Plaintiffs provided the document metadata and highlighted several examples of withheld documents with notable indicia of responsiveness, such as email subject and/or file name information referring to the Government's policy regarding transgender service members and the cost of transgender healthcare. By way of example, such email subjects and file names of withheld documents include "Transgender Question," "How much does a hysterectomy cost.docx," and "How Much Does an Orchiectomy Cost.docx." (*Id.*) On October 29, 2019, the parties met and conferred, and the Government agreed to re-review the handful of withheld document exemplars that Plaintiffs had specifically identified in their October 4 letter, but refused to take any steps to review documents beyond Plaintiffs' examples or rectify the broader issue. (*See* Barsanti Decl. ¶¶ 3-4, Ex. 2.) Worse, the Government attempted to shift its discovery burden by insisting that Plaintiffs sift through the limited metadata available for all 15,000 withheld documents and

LCR 37 JOINT SUBMISSION RE DOCS
WITHHELD BY GOV'T AS NON-RESP - 1
[Case No.: 2:17-cv-01297-MJP]

**NEWMAN DU WORS LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

identify specific Bates numbers that the Government should re-review for responsiveness. (Barsanti Decl. ¶ 3.)

Though the burden is not on Plaintiffs to ensure the Government's production is complete, to facilitate the discovery process and narrow the dispute, Plaintiffs agreed to provide a list of specific Bates numbers that plainly warranted re-review. On November 26, 2019, Plaintiffs provided a list of approximately 4,000 out of the 15,000 withheld documents with obvious indicia of responsiveness such as email subject lines or file names that expressly reference the DoD's policy regarding transgender personnel and asked the Government to re-review this smaller subset. (*See* Barsanti Decl. ¶ 5, Ex. 3.)

Several weeks later, in an email dated December 2, 2019, the Government indicated that it was now *declining* to review the subset of documents identified in Plaintiffs' November 26 letter. (Barsanti Decl. ¶ 6, Ex. 4.) Instead, the Government merely performed a sampling and concluded that "the vast majority (I would estimate over 95%) of the documents with the extension .msg in the file name were Outlook delivery or read receipts" and that such "delivery and read receipts are not responsive to any discovery request and are plainly irrelevant to Plaintiffs' claims." (*Id.*) The Government noted that the remainder of the withheld documents reflected discussions between medical professionals regarding the treatment of service members for gender dysphoria. Again, the Government concluded that these documents, *despite being a part of otherwise responsive families*, are non-responsive. (*Id.*) In yet another attempt to facilitate a resolution, Plaintiffs asked the Government to produce additional information regarding the content of a random sampling of 50 documents in order for the Plaintiffs to test the responsiveness of these withheld documents. (*See* Barsanti Decl. ¶ 7, Ex. 5.)

Over a month later, on January 17, 2020, the Government provided a spreadsheet with additional information concerning the random sampling. (*See* Barsanti Decl. ¶ 8, Ex. 6.) After taking several weeks to respond and several more weeks to review a mere sampling of 50 documents, it became clear from the limited information the Government did provide that the withheld documents are indeed independently responsive, and Plaintiffs once again requested their production. (*See* Barsanti Decl. ¶ 9, Ex. 7.) To date, the Government has not agreed to

LCR 37 JOINT SUBMISSION RE DOCS
WITHHELD BY GOV'T AS NON-RESP - 2
[Case No.: 2:17-cv-01297-MJP]

**NEWMAN DU WORS LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1  produce these wrongfully withheld documents, or otherwise review the other withheld

2  documents. Plaintiffs now move to compel the Government's documents wrongfully withheld

3  as non-responsive that are part of responsive document families.

4  **LEGAL STANDARD**

5  The Government has wrongfully withheld documents that, as indicated by their metadata

6  and relationship to other responsive documents, are responsive and relevant. Under the Federal

7  Rules, the Government carries the burden of collecting and producing all non-privileged,

8  responsive documents. Fed. R. Civ. P. 26(b); *see also Putterman v. Supreme Chain Logistics,*

9  *Ltd.*, No. C18-376RSM, 2018 WL 6179325, at *2 (W.D. Wash. Nov. 27, 2018) ("[T]he party

10 who resists discovery has the burden to show that discovery should not be allowed, and has the

11 burden of clarifying, explaining, and supporting its objections.") (citation omitted).

12 **ARGUMENT**

13 Despite its obligation under the Federal Rules to produce all non-privileged, relevant

14 documents in their entirety, the Government is improperly withholding documents in otherwise

15 responsive families on the alleged ground of non-responsiveness.[1] For example, the

16 Government has produced a responsive parent email but not produced one or more attachments

17 to the email and instead produced a slipsheet that says "Withheld for Non Responsiveness." The

18 Government has already acknowledged that the withheld documents belong to responsive

19 families because the Government produced the withheld documents' family members.

20 Moreover, the metadata of the withheld documents strongly indicates that the documents are, in

21 fact, independently responsive. In response, the Government argues that the withheld

22 documents are categorically non-responsive because they primarily reflect: (i) email read

23 receipts related to responsive documents; and (ii) medical professionals' discussions related to

24 service members' treatment plans for gender dysphoria. The Government's own assertions of

25 deliberative process privilege ("DPP") over other members of the documents' families and its

26 various explanations regarding the substance of this withheld material strongly indicate that the

27

28 _____

[1] A document family is a group of related documents that includes parent and child documents. The most common example is an email, known as the parent document, and its attachments, known as its children.

LCR 37 JOINT SUBMISSION RE DOCS
WITHHELD BY GOV'T AS NON-RESP - 3          **Newman Du Wors LLP**
[Case No.: 2:17-cv-01297-MJP]

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1    withheld documents are responsive and relevant. The law demands that these withheld

2    documents be produced.

3    **A.    The withheld documents are, in fact, relevant and responsive because they are**

4    **members of responsive families.**

5         The rule of completeness—Federal Rule of Evidence 106—requires that a party produce

6    *all* non-privileged documents in a family when it determines that any one member of the family

7    is responsive, as is the case here. *See* Fed. R. Evid. 106 ("If a party introduces all or part of a

8    writing or recorded statement, an adverse party may require the introduction, at that time, of any

9    other part—or any other writing or recorded statement—that in fairness ought to be considered

10   at the same time."). Courts hold that "[t]he logic of this evidentiary rule extends backwards to

11   discovery which often leads to a conclusion (or at least a presumption) that if something was

12   attached to a relevant e-mail, it is likely also relevant to the context of the communication." *Abu*

13   *Dhabi Commercial Bank v. Morgan Stanley & Co.*, No. 08 Civ. 7508(SAS), 2011 WL 3738979,

14   at *5 (S.D.N.Y. Aug. 18, 2011), *adopted without objection*, 2011 WL 3734236 (S.D.N.Y. Aug.

15   24, 2011).

16        This approach recognizes the practical importance of producing all documents in a

17   family to provide the necessary context for each family member. *See Sanchez Y Martin, S.A. de*

18   *C.V. v. Dos Amigos, Inc.*, No. 17cv1943-LAB (LL), 2019 WL 581715, at *11 (S.D. Cal. Feb.

19   13, 2019) (holding that "emails produced in discovery should be accompanied by their

20   attachments" and that doing otherwise is "effectively a redaction of responsive discovery");

21   *Virco Mfg. Corp. v. Hertz Furniture Sys.*, No. CV 13-2205 JAK(JCx), 2014 WL 12591482, at

22   *5–6 (C.D. Cal. Jan. 21, 2014) ("Further, by failing to produce email attachments, plaintiff has

23   effectively redacted, based upon relevance, portions of documents it otherwise apparently views

24   to be discoverable/relevant/responsive to defendants' discovery requests."); *see also Families*

25   *for Freedom v. U.S. Customs & Border Prot.*, No. 10 Civ. 2705(SAS), 2011 WL 4599592, at *5

26   (S.D.N.Y. Sept. 30, 2011) ("Context matters. The attachments can only be fully understood and

27   evaluated when read in the context of the emails to which they are attached. That is the way

28   they were sent and the way they were received. It is also the way in which they should be

LCR 37 JOINT SUBMISSION RE DOCS
WITHHELD BY GOV'T AS NON-RESP - 4            **NEWMAN DU WORS LLP**
[Case No.: 2:17-cv-01297-MJP]

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1   produced."); *Doe v. Trump*, 329 F.R.D. 262, 275–76 (W.D. Wash. 2018) ("It is a rare document

2   that contains only relevant information; and irrelevant information within an otherwise relevant

3   document may provide context necessary to understand the relevant information.").

4         Producing full families is such an accepted eDiscovery practice that the Department of

5   Justice's *own* standard production specifications require the production of entire families of

6   documents. (*See* Barsanti Decl. ¶ 10, Ex. 8. (delineating that the production of email repositories

7   shall include "all parent items (mail, calendar, contacts, tasks, notes, etc.).) and child files

8   (attachments of files to email or other items) with the parent/child relationship preserved"). That

9   the Department of Justice would apply a different standard now than it utilizes in other cases is

10  striking.

11
    **B.**    **The withheld documents' metadata show that they are independently responsive to**
12         **Plaintiffs' discovery requests.**

13        Moreover, even if the law did not demand production of the withheld documents

14  because they are part of responsive family groups, it is clear based on their metadata that they

15  are otherwise independently relevant and responsive. Though the onus is not on Plaintiffs to

16  parse the limited metadata associated with withheld documents for improperly withheld

17  documents, Plaintiffs did identify to the Government specific entries for which the email subject

18  line or file name *explicitly* refers to transgender military service or healthcare. *See* Barsanti

19  Decl. ¶ 5, Ex. 3. This is not to say that the other documents not included within Plaintiffs'

20  narrowed list are being properly withheld as non-responsive, but rather that Plaintiffs are unable

21  to determine the documents' independent relevance based on the information available to them.

22  The Government, after all, is the only party with access to the documents' contents.

23        The likelihood that these documents are responsive is further heightened by the fact that

24  they were shared amongst the members of the so-called "Panel of Experts" (the "Panel") or

25  those directly supporting the Panel. For example, senders and recipients of the withheld

26  documents include Panel members such as Mr. Anthony Kurta, General James McConville, and

27  Admiral William Moran. (*See* Barsanti Decl. ¶ 11.) Colonel Mary Krueger, who supported the

28  Panel, is also amongst the senders and recipients. (Barsanti Decl. ¶¶ 11-12, Ex 12 at 57:16.) As

LCR 37 JOINT SUBMISSION RE DOCS
WITHHELD BY GOV'T AS NON-RESP - 5
[Case No.: 2:17-cv-01297-MJP]

**NEWMAN DU WORS LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

is Mr. Lernes Hebert, who provided a December 15, 2017 declaration in this matter stating that he was "responsible for overseeing the human resource policies impacting the sustainment of the all-volunteer-force for the Department of Defense . . . ." and opined on the implementation of transgender accessions. (Dkt. No. 107 ¶ 1; Barsanti Decl. ¶¶ 11.) Moreover, the majority of the withheld documents are attachments to communications withheld on the basis of DPP, which is further evidence of their relevance to Plaintiffs' claims. (Barsanti Decl. ¶ 13.)

**C.  Discussions between medical professionals regarding service members' treatment plans for gender dysphoria are relevant because the documents were considered in connection with the formation of the ban.**

The Government also fails to articulate why communications between medical professionals regarding individualized treatment of a service member for gender dysphoria are not responsive. The Government previously detailed their collection and searching specifications for this Court (Dkt. No. 371-1, 8/29/19 Easton Decl.), and nowhere does it indicate that the Government collected documents from the DoD's general repository of service members' medical records or from individual treating physicians. Instead, the DoD collections focused on custodians involved in the formation of the Ban. (*Id.* at 2 (explaining that "DoD's search and review efforts were focused on material reasonably related to the formation and implementation" of the Ban).) To the extent the documents and communications regarding the medical treatment of a service member for gender dysphoria were reviewed in connection with the formation and implementation of the Ban, they are relevant and responsive. Moreover, the responsiveness of these withheld documents becomes all the more clear in light of the fact that many of them are attachments to communications between individuals supporting the Panel and even members of the Panel itself—communications that, in large part, the Government affirmatively recognizes are related to the development of the Ban because it is withholding them on the basis of DPP.

The Government's argument that documents relating to the treatment of gender dysphoria are categorically non-responsive is its attempt to have it both ways: the Government has withheld the parent communications between members of the Panel on the basis that they reveal the specific formation of the Ban itself, but at the same time, the Government argues that

LCR 37 JOINT SUBMISSION RE DOCS
WITHHELD BY GOV'T AS NON-RESP - 6
[Case No.: 2:17-cv-01297-MJP]

**NEWMAN DU WORS LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1   the documents considered in conjunction with those communications—including the medical

2   records of service members treated for gender dysphoria and medical professionals' analyses—

3   are somehow non-responsive. This is yet another example of the Government improperly using

4   DPP as both a shield and a sword.

**D.     The relevance of email read receipts cannot be separated from the relevance of the underlying communications.**

7   The Government, citing to no authority, asserts that "delivery and read receipts are not

8   responsive to any discovery request and are plainly irrelevant to Plaintiffs' claims." (Barsanti

9   Decl. ¶ 6, Ex. 4.) Attempting to justify its position, the Government argued that the "substantive

10  content was produced to Plaintiffs (or, if applicable, withheld for privilege), whereas the non-

11  responsive delivery and read receipts were not." (*Id.*) This position has no support in the law.

12  Courts routinely determine that electronic read receipts are relevant as to whether an individual

13  received a certain document or to confirm that an organization issued certain guidance. *See*

14  *Azeveda v. Comcast Cable Commc'ns LLC*, No. 5:19-cv-01225-EJD, 2019 WL 5102607, at *2

15  (N.D. Cal. Oct. 11, 2019) (citing, *inter alia*, read receipt to find that plaintiff received opt-out

16  materials); *Solomon v. Jacobson*, No. ED15CV01453VAP (JPRx), 2016 WL 6156189, at *2

17  (C.D. Cal. May 25, 2016) (citing, *inter alia*, read receipts to refute defendant's claim that his

18  email was not functioning and that he had not received motion to compel); *see also Lee v.*

19  *Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 452 (6th Cir. 2011) (citing

20  police officers' read receipts for police department training email as evidence that department

21  actively trained officers).

22  Read receipts directly relate to the substance of a responsive communication and can

23  show whether an intended recipient of an email received the communication if disputed.

24  Because each of the read receipts at issue is a family member of a responsive document, the

25  read receipts are presumptively also responsive and must be produced.

LCR 37 JOINT SUBMISSION RE DOCS
WITHHELD BY GOV'T AS NON-RESP - 7
[Case No.: 2:17-cv-01297-MJP]

**NEWMAN DU WORS LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1

## DEFENDANTS' OPENING ARGUMENT[2]

The documents Plaintiffs seek to have produced are ones that Defendants individually reviewed to determine responsiveness and subsequently withheld from production as not responsive. The largest categories of documents are: (1) "delivery notifications," "read receipts," and "journal reports" which are automatically generated when an e-mail is delivered, opened, or in the case of a journal report, when the Microsoft Exchange server is journaling; and (2) communications between medical professionals regarding individualized treatment of a service member for gender dysphoria. These documents are not relevant to the dispute before the Court, and the burden of producing them tilts the balancing test required by Rule 26 towards Defendants. Plaintiffs try to confuse the issue by arguing that these non-responsive documents should nonetheless be produced because of their "family" relationship with documents Defendants have already produced, or because they have metadata that suggests the documents are relevant despite Defendants' previous review of the documents. The Civil Rules do not mandate this slavish approach to family documents, and Plaintiffs have not articulated why the metadata alone establishes the relevance of the documents. Accordingly, the Court should not direct re-review and production of these records.

## LEGAL STANDARD

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Proportionality hinges on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* The court must limit discovery that "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Id.* 26(b)(2)(C)(i).

---

[2] The expedited procedures of Local Rule 37(a)(2) for resolving discovery disputes are only available upon "agreement" of the parties. Defendants have not given their consent to the expedited procedures and reiterate their objection to Plaintiffs' use of Local Rule 37(a)(2) without their consent.

LCR 37 JOINT SUBMISSION RE DOCS
WITHHELD BY GOV'T AS NON-RESP - 8
[Case No.: 2:17-cv-01297-MJP]

**NEWMAN DU WORS LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

**ARGUMENT**

**A.    Production of Read Receipts, Delivery Notifications, and Journal Reports Is Not Proportional to the Needs of this Case.**

The vast majority of the documents deemed not responsive are read receipts, delivery notifications sent automatically by Microsoft Outlook, and journal reports. "Read receipts" are sent to confirm an e-mail was opened by its recipient, and "delivery notifications" are sent to confirm delivery of the email message to the recipient's mailbox. *See* Microsoft Office Support, "Add and Request Read Receipts and Delivery Notifications," https://support.office.com/en-us/article/Add-and-request-read-receiptsand-delivery-notifications-a34bf70a-4c2c-4461-b2a1-12e4a7a92141. Likewise, sd.mil email accounts reside on journaled Exchange servers, which create a journal report when the server is journaling. "A journal report is the message that's recorded by journaling. The journal report contains the original message as an unaltered file attachment." Microsoft Office Support, Journaling in Exchange Server, "https://docs.microsoft.com/en-us/exchange/policy-and-compliance/journaling/journaling?view=exchserver-2019#journal-reports. Where relevant here, the original substantive message was attached to the journal report. These automatically generated records do not contain any substantive information responsive to Plaintiffs' discovery requests. Nonetheless, Plaintiffs speculate that these notifications might be "relevant as to whether an individual received a certain document or to confirm that an organization issued certain guidance," although Plaintiffs do not point to any communications for which they need confirmation that the e-mail was actually received by its addressees. *See* Plaintiffs' Submission, *supra*, at § B.2.d.

That absence of specificity is telling. There is no dispute in this case as to whether Defendants' e-mail systems were functioning during the relevant time period. Absent such a dispute, Plaintiffs cannot explain to what issue the read receipts and delivery notifications are relevant. Nor do they explain why the e-mails themselves are not adequate to understand who received documents or guidance. The read receipts, delivery notifications, and journal reports are, at best, cumulative to what the e-mail address fields already indicate. Because Plaintiffs

LCR 37 JOINT SUBMISSION RE DOCS
WITHHELD BY GOV'T AS NON-RESP - 9
[Case No.: 2:17-cv-01297-MJP]

**Newman Du Wors LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1  "ha[ve] not provided sufficient information to show that" producing these documents "would

2  reveal any more relevant information" than what the e-mails themselves show, the Court should

3  not grant Plaintiffs' motion. *Weidenhamer v. Expedia, Inc.*, 2015 WL 7158212, at *6 (W.D.

4  Wash. Nov. 13, 2015) (denying motion to compel defendant to search the e-mail of account

5  representatives for approximately 170 different airlines because it had already searched the

6  individual who served as a liaison for baggage fee complaints).

7  Moreover, Plaintiffs' focus on the possible relevance of the read receipts loses sight of

8  the inquiry Rule 26(b) demands. Under circumstances that do not maintain here, an individual

9  read receipt *could* be relevant information, particularly when the provision of notice is critical to

10  the claims or disputed by the parties, as the cases Plaintiffs cite demonstrate. *See Azeveda v.*

11  *Comcast Cable Comm'cs LLC*, 2019 WL 5102607, at *7 (N.D. Cal. Oct. 11, 2019) (holding that

12  a valid arbitration agreement existed because defendant had shown plaintiff "was given

13  meaningful opportunity to opt out of the agreement," as demonstrated, *inter alia*, by the fact that

14  defendant possessed a read receipt of an e-mail containing opt-out information); *Solomon v.*

15  *Jacobson*, 2016 WL 6156189, at *2 (C.D. Cal. May 25, 2016) (introducing read receipts to

16  rebut plaintiff's claim that his e-mail was not functioning); *Lee v. Metro. Gov. of Nashville &*

17  *Davidson Cnty.*, 432 F. App'x 435, 452 (6th Cir. July 18, 2011) (citing read receipts to show

18  that police department had sent training bulletin on taser use to two of its officers). But all these

19  cases do is acknowledge the possible relevance of read receipts as an evidentiary matter. None

20  of these cases addresses the issue of proportionality in discovery—that is, the weighing of the

21  benefits and burdens of producing particular sets of documents. That analysis, mandated by

22  Civil Rule 26, favors Defendants here. Producing thousands of read receipts, delivery

23  notifications, and journal reports when there is no issue concerning notice as to e-mail, or

24  dispute as to the functioning of Defendants' e-mail system, is precisely the sort of

25  "unreasonably cumulative or duplicative" discovery the Court "must limit." Fed. R. Civ. P.

26  26(b)(2)(C)(i); *see also Thompson v. HAL Nederland N.V.*, 2018 WL 6696689, at *2 (denying

27  motion to compel discovery regarding accidents "on other ships in Defendants' fleet over the

28  past 10 years [as] cumulative and duplicative" and limiting discovery to ship where the disputed

LCR 37 JOINT SUBMISSION RE DOCS
WITHHELD BY GOV'T AS NON-RESP - 10
[Case No.: 2:17-cv-01297-MJP]

**NEWMAN DU WORS LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

accident occurred).

**B.    Production of Individual Treatment Plans for Transgender Service Members Is Not Proportional to the Needs of this Case**

Plaintiffs' argument to compel production of the individual treatment plans of service members is also meritless. Unsurprisingly, although Defendants made an effort to focus their search on custodians involved in the formation of the Mattis Policy, the custodians searched and the search terms used necessarily swept in documents that are not related to the formation of the Mattis Policy. Plaintiffs argue that, "[t]o the extent the documents and communications regarding the medical treatment of a service member for gender dysphoria were reviewed in connection with the formation and implementation of the [Mattis Policy], they are relevant and responsive." *See* Plaintiffs' Submission, *supra*, at § B.2.d. But Defendants have already produced or agreed to produce the inputs to the Panel of Experts, including all deliberative documents and communications related to the work of the Panel of Experts that were sent, received or presented to any member of the Panel during the decision-making process.[3] Unless the Panel considered it as a part of its deliberations, the course of treatment for a particular service member has no bearing on programmatic decisions regarding military policy towards transgender service members.

Moreover, while Plaintiffs argue that the chart the Government prepared for the Plaintiffs indicated "that the withheld documents are indeed independently responsive," *id.*, they fail to explain why that is the case for any of the documents at issue here, including the sample set of documents on which Defendants provided comments. For instance, the document "How

---

[3] Defendants recently discovered two sets of documents subject to the prior *Doe* order that they intend to produce by February 28. First, following inquiries from *Doe* plaintiffs' counsel, Defendants discovered that 126 family members of Air Force documents released in response to the *Doe* order were mistakenly still being withheld under the deliberative process privilege. Second, Defendants recently conducted a supplemental collection from a Department of Defense intranet site used by members of the Panel of Experts in relation to their work on the Panel. Defendants made this collection in the interest of ensuring completeness of the record. Defendants are planning to release 42 documents arising from this collection (although, Defendants note that a number of these documents have been previously produced in discovery pursuant to Defendants' prior collections. *See* USDOE0028908, USDOE00289508, USDOE00288103, USDOE0289261 (production no. 39)). In addition, Defendants are releasing 36 documents that on re-review Defendants have determined contain largely factual information and therefore DOD is withdrawing its prior deliberative process privilege claims. Defendants are not currently aware of any other documents responsive to the *Doe* order that are being withheld as deliberative in relation to the Panel deliberations.

LCR 37 JOINT SUBMISSION RE DOCS
WITHHELD BY GOV'T AS NON-RESP - 11
[Case No.: 2:17-cv-01297-MJP]

**Newman Du Wors LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1   much does a hysterectomy cost.docx" contains outside analysis of how much these procedures

2   cost in the *private* sector, not the military. It was attached to an e-mail currently being withheld

3   for deliberative process privilege that postdates the Panel's deliberations, and as such,

4   implicates the mandamus petition currently pending before the Ninth Circuit. Other documents

5   in the fifty-document sample upon which Defendants provided comment included a 2016 press

6   release announcing the Carter policy, a photocopy of a service member's passport, a curriculum

7   vitae for a plastic surgeon, an incomplete draft attendance roster for a medical conference, and

8   Cigna's insurance coverage criteria for gender surgery. Such documents are not relevant to the

9   formation and implementation of the Mattis Policy and were properly marked nonresponsive.

10          Plaintiffs argue that Defendants are trying "to have it both ways" by withholding parent

11   communications that must "reveal the specific formation of the" Mattis Policy because they

12   were withheld on deliberate process grounds, while arguing that "documents considered in

13   conjunction with those communications . . . are somehow non-responsive." *See* Plaintiffs'

14   Submission, *supra*, at § B.2.d. That reasoning is flawed. First, it is not the case that every

15   document withheld on deliberative process privilege grounds necessarily relates to "the

16   formation and implementation of" the Mattis Policy. Second, because relevance is contextual, it

17   matters whether a record is being considered for relevance as an attachment to a communication

18   that is being produced, or on its own because the parent communication is privileged and not

19   discoverable, as Plaintiffs claim to be the case for many of these documents. Despite asserting

20   privilege over the parent document, Defendants individually reviewed the attachments to such

21   communications to determine if privilege extended to the attachments and to consider whether,

22   despite being attached to privileged materials, the attachments were responsive. If the parent

23   document is eventually produced, the relevance of attachments may have to be reconsidered, *see*

24   Fed. R. Evid. 106, but whether that reevaluation should occur hinges on the Ninth Circuit's

25   consideration of the mandamus petition that is now pending.

26   **C.      Plaintiffs' "Responsive Families" and Metadata Arguments Are Without Merit**

27          Given the flimsiness of Plaintiffs' argument that Rule 26 requires production of these

28   documents, Plaintiffs opened their submission with a broader, categorical argument about

1  relevance: that "*all* non-privileged documents in a family" should be produced when a member

2  of that family is deemed responsive, even if (as explained above) there would be no justification

3  for producing those documents in isolation. Plaintiffs' Submission, *supra*, at § B.2.a. But the

4  key case this argument relies upon is not categorical. In *Abu Dhabi*, it was unclear whether the

5  plaintiff had reviewed attachments identified by defendants separately for relevance purposes

6  and decided to withhold them on that basis. *Abu Dhabi Commercial Bank v. Morgan Stanley &*

7  *Co.*, 2011 WL 3738979, at *6 (S.D.N.Y. Aug. 18, 2011), *adopted without objection*, 2011 WL

8  3734236 (S.D.N.Y. Aug. 24, 2011). The Court ordered those unreviewed documents produced,

9  but reserved judgment on remaining attachments pending consideration of those records. *Id.* at

10  *8. The Special Master recognized that, "[c]onceptually, there is a good basis for considering

11  each item (each e-mail and each attachment) separately," and that "if an e-mail attaches three

12  disparate items in one communication package, that does not mean that all three items relate to

13  the same thing or would be equally relevant to a discovery request." *Id.* at *5. And he found that

14  "simply requiring [plaintiff] to produce all non-privileged attachments that were not produced

15  but were attached at some point in time to relevant e-mails that [plaintiff] has already produced

16  may be inefficient, and its benefit may not be justified by the burden and expense to Plaintiffs."

17  *Id.* at *7. Although he recognized a "prevailing practice," based on "anecdotal evidence and

18  secondary materials," that parties should "produce any non-privileged attachment to an e-mail if

19  the e-mail is determined to be relevant," that is clearly not a categorical rule, as the rest of the

20  order demonstrates. *Id.* at *5. Nothing in *Abu Dhabi* suggests that the relevance and

21  proportionality considerations of Rule 26(b) no longer apply when considering attachments.[4]

22         The limitations of Plaintiffs' categorical rule become particularly apparent when

23  considering the documents at issue here. Read receipts, delivery notifications, and journal

24  reports have virtually negligible relevance, and do not need to be introduced to understand the

25  communications Defendants produced. Such an analysis is applicable to other types of

26

27

28  _____

[4] Similarly, while the production specifications from DOJ's Civil Division Plaintiffs cite in their submission are consistent with these general principles, that guidance does not stand for the proposition that the balancing test of Rule 26(b) requires production of all email attachments, in all circumstances, no matter their relevance.

LCR 37 JOINT SUBMISSION RE DOCS
WITHHELD BY GOV'T AS NON-RESP - 13
[Case No.: 2:17-cv-01297-MJP]

**Newman Du Wors LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1   attachments to relevant e-mails which Defendants already reviewed for responsiveness, as well.

2   As to attachments to e-mails withheld under a privilege assertion, which Plaintiffs claim

3   constitute many of the documents which concern them, *Abu Dhabi* only addressed "responsive,

4   non-privileged attachments to emails [the plaintiff] *produced*." *Abu Dhabi*, 2011 WL 3738979

5   at *1 (emphasis added). It does not suggest that the non-responsive attachments to e-mails that

6   have been *withheld* for privilege are subject to production. Neither do the other cases Plaintiffs

7   rely upon. *Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.*, 2019 WL 581715, at *10–11

8   (ordering defendant to "reproduc[e] . . . emails with their attachments in consecutive order" and

9   holding that "emails produced in discovery should be accompanied by their attachments");

10  *Virco Mfg. Corp. v. Hertz Furniture Sys.*, 2014 WL 12591482, at *5–6 (granting defendants'

11  motion to compel production of "attachments to emails that have previously been produced").[5]

12  Again, if the communications to which these documents were attached are eventually produced,

13  the relevance determination may need to be reassessed to see if it is necessary to understand a

14  produced document. Fed. R. Evid. 106. But until such a production is made, there is no basis to

15  countermand Defendants prior determination of relevance.

16      Finally, Plaintiffs argue that the metadata Defendants have already provided shows that

17  many of the documents in question should be produced, either because "the email subject line or

18  file name explicitly refers to transgender military service or healthcare," or because the

19  documents were shared among members of the Panels of Experts or those directly supporting

20  the Panel. Plaintiffs' Submission, *supra*, at pt. B.2.b. But Plaintiffs again make no attempt to

21  show *why* this is "clear" from either the metadata accompanying Defendants' production, or

22  from the supplemental explanations of non-responsiveness Defendants provided. Plaintiffs

23  concede that, despite the metadata, that "other documents not included within Plaintiffs'

24  narrowed list are being properly withheld as nonresponsive." Nonetheless, Plaintiffs would have

25  Defendants conduct a second responsiveness review of documents already so reviewed, in the

26

27

28

---

[5] The remaining cases Plaintiffs cite deal with the redaction of nonresponsive information from otherwise responsive records, which is not at issue here. *Families for Freedom v. U.S. Customs & Border Prot.*, 2011 WL 4599592, at *2 (S.D.N.Y. Sept. 30, 2011) (FOIA); *Doe v. Trump* F.R.D. 262, 275–76 (W.D. Wash. 2018).

LCR 37 JOINT SUBMISSION RE DOCS
WITHHELD BY GOV'T AS NON-RESP - 14          **NEWMAN DU WORS LLP**
[Case No.: 2:17-cv-01297-MJP]

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1    hope of identifying some marginally responsive document that, in any event, is not germane to

2    the legal question the Court must answer in this case. As the special master in *Abu Dhabi*

3    recognized, such a review risks being "inefficient" and "burdensome," without conferring any

4    meaningful benefit on the Plaintiffs, particularly since Defendants already reviewed the

5    attachments for relevance (which was not true in the *Abu Dhabi* case). *Abu Dhabi*, 2011 WL

6    3738979, at *7.

7            For these reasons, the Court should not compel production of these documents.

8                                    **PLAINTIFFS' REPLY[6]**

9            The Government fails to combat Plaintiffs' arguments that the withheld documents are

10   responsive, and foregoes any attempt to meet its burden to specifically allege why additional

11   production would be unduly burdensome. Moreover, the Government misleadingly misquotes

12   Plaintiffs' argument and misrepresents Plaintiffs' efforts to facilitate progress and identify

13   withheld documents with obvious indicia of responsiveness. Because the withheld documents

14   are relevant and responsive, and their production would entail minimal effort and cost, the Court

15   should direct the production of all withheld documents produced to Plaintiffs as non-responsive

16   slipsheets.

17
18   **A.      The Government fails to combat the argument that the withheld read receipts are responsive.**

19           The Government asserts a strawman argument that the withheld read receipts, all of

20   which are related to responsive communications, are not responsive because Plaintiffs have not

21   questioned the soundness of the Government's email system. As indicated by the cases cited by

22   Plaintiffs, courts regularly find read receipts relevant as to whether individuals reviewed emails,

23   absent disputes over the integrity of email systems. *See Azeveda v. Comcast Cable Commc'ns*

24   *LLC*, NO. 5:19-cv-01225-EJD, 2019 WL 5102607, at *7 (N.D. Cal. Oct. 11, 2019); *Lee v.*

25   *Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 452 (6th Cir. 2011). The

26

27   ───────────────
     [6] The issues addressed by the parties in this submission relate to global issues touching on each and every one of
28   Plaintiffs' requests for production. Plaintiffs note that LCR 37(a)(2)(D), which sets a one-half page reply limit per
     disputed discovery request, does not anticipate such global submissions. In line with the intent of the rule, Plaintiffs
     have limited their contribution to this submission to twelve pages in accordance with LCR 37(a)(2)(E).

LCR 37 JOINT SUBMISSION RE DOCS
WITHHELD BY GOV'T AS NON-RESP - 15          **NEWMAN DU WORS LLP**
[Case No.: 2:17-cv-01297-MJP]

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1    Government has not distinguished this case law.

2        The Government also fails to acknowledge the relevance of the withheld read receipts in

3    the context of the upcoming witness depositions. To the extent any of the Government's

4    witnesses deny or cannot recollect reviewing certain sent emails, read receipts and the like may

5    assist a witness's memory or combat a denial. Plaintiffs need not be required to, nor can they,

6    predict whether these read receipts are important because of their relation to a particular email

7    for a particular witness. The relevancy of these documents simply cannot be separated from

8    their parent communication.

9
**B.      The Government misrepresents Plaintiffs' efforts to build a non-exhaustive list of**
10   **improperly withheld documents.**

11       The Government egregiously misquotes Plaintiffs in an attempt to convince the Court

12   that Plaintiffs have conceded that certain non-responsive slipsheets are not relevant, rather than

13   accurately depict the parties' meet and confer history, during which Plaintiffs narrowed the list

14   of withheld documents in the hopes of facilitating progress. Plaintiffs' Submission, *supra*. The

15   Government writes, "Plaintiffs concede that, despite the metadata, that 'other documents not

16   included within Plaintiffs' narrowed list are being properly withheld as nonresponsive.'"

17   Government's Submission, *supra*, at Section I.A. Yet this is entirely the opposite of what

18   Plaintiffs have repeatedly asserted in both their correspondence with the Government and this

19   very submission. Plaintiffs' Submission, *supra*, at Section I.B ("***This is not to say that*** the other

20   documents not included within Plaintiffs' narrowed list are being properly withheld as non-

21   responsive, but rather that Plaintiffs are unable to determine the documents' independent

22   relevance based on the information available to them." (emphasis added)). Plaintiffs' previous

23   communications with the Government have clearly conveyed Plaintiffs' position that the

24   narrowed list of withheld documents is not exhaustive, that it reflects Plaintiffs' best efforts to

25   work with the limited data available to them, that the presentation of the list does not waive the

26   Government's duty to produce all responsive documents, and that each of these withheld

27   documents is, in fact, relevant and responsive based on its association with a responsive record.

28   (*See* Barsanti Decl. ¶ 5, Ex. 3.) The Government's misleading quotation reflects not the clarity

LCR 37 JOINT SUBMISSION RE DOCS
WITHHELD BY GOV'T AS NON-RESP - 16      **NEWMAN DU WORS LLP**
[Case No.: 2:17-cv-01297-MJP]

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1  of Plaintiffs' submission and these communications, but rather the Government's efforts to

2  avoid its obligations under discovery.

3
**C.   The withheld medical treatment plans for service members with gender dysphoria**
4  **bear numerous independent indicia of responsiveness.**

5          The Government's now labors to argue that the withheld documents related to the

6  medical treatment of transgender individuals are somehow irrelevant and non-responsive. It

7  seems to willfully ignore the likelihood that service members' gender dysphoria medical

8  treatment plans—particularly those exchanged by members of or individuals supporting the

9  Panel of Experts and particularly those for which the Government claims DPP over the parent

10  email—are responsive to Plaintiffs' RFPs.

11          Similarly, with respect to the sampling of documents for which the Government

12  provided Plaintiffs' additional information, it summarily dismisses their relevance despite the

13  obvious relation to the claims at issue in this case. For example, the Government concludes

14  without support that a withheld document relating to the cost of a gender transition surgery is

15  non-responsive simply because it discusses private sector costs. Likewise, the Government

16  dismisses a withheld document discussing the coverage criteria for gender transition surgeries

17  of Cigna, a major insurance carrier. The Government does not and cannot explain why

18  documents related to the cost of gender transition surgeries or insurance coverage for such

19  surgeries are *categorically* non-responsive to Plaintiffs' RFPs simply because they focus on

20  private sector practices. In fact, this Court has previously determined that medical documents

21  are relevant to the formulation of the Mattis Policy. (Dkt. No. 412, Hr'g Tr. (Feb. 3, 2020) at

22  50:1–14.)

23          Bizarrely, the Government contends that the relevance of a document is contextual based

24  on whether or not its associated communications are being withheld for privilege or have been

25  produced. Notably the Government cites no authority for this illogical proposition. While the

26  associated communication may color or provide context to its attachments, which is precisely

27  Plaintiffs' point regarding the rule of completeness—Federal Rule of Evidence 106—an

28  attachment cannot suddenly be considered irrelevant because the parent communication is being

LCR 37 JOINT SUBMISSION RE DOCS
WITHHELD BY GOV'T AS NON-RESP - 17        **NEWMAN DU WORS LLP**
[Case No.: 2:17-cv-01297-MJP]

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1   withheld for reasons other than relevance.

2   **D.     The Government puts forth no evidence regarding the burden of production.**

3           Completely absent from the Government's submission is any information supporting its

4   argument that production of the withheld material would be burdensome, such as evidence of

5   the associated time or cost. The Government merely vaguely alludes to the burden of producing

6   read receipts, but as evidenced by the Government's own submission and previous

7   communications with Plaintiffs, it has already collected and reviewed the requested documents,

8   thus the burden of production is minimal at best. (Government's Submission, *supra*; Barsanti

9   Decl. ¶ 6, Ex. 4 (12/2/19 email).) This is in stark contrast to the case law cited by the

10  Government, *Weidenhamer v. Expedia, Inc.*, in which the parties' dispute centered on the

11  burden of *searching* the accounts of an additional 170 entities that had *not* already been

12  collected and reviewed. No. C14-1239RAJ, 2015 WL 7158212, at *6 (W.D. Wash. Nov. 13,

13  2015).

14          Just as in the case of the withheld read receipts, the Government fails to provide specific

15  facts supporting the assertion that the production of the individual treatment plans would pose

16  an undue burden. The Government has already gathered the medical treatment plans at issue and

17  produced a slipsheet. As early as December 2, 2019, the Government's counsel reviewed the

18  withheld medical treatment plans. (*See* Barsanti Decl. ¶ 6, Ex. 4.) Furthermore, the

19  Government's submission and its discussion of individual documents within the withheld group

20  indicate that the Government further reviewed the documents. Government's Submission,

21  *supra*. The marginal cost and time associated with simply producing these documents are

22  negligible. Moreover, the Government unilaterally elected to withhold responsive documents

23  and produce a slipsheet, creating for itself any supposed burden. That the Government must

24  now go back and reproduce the actual documents instead of slipsheets is its own doing, and

25  should have no impact on Plaintiffs' ability to obtain the wrongfully withheld documents.

26          For all these reasons, the Government's burden arguments should be given no weight.

27  *See e.g., Hawkins v. Kroger Co.*, No. 15cv2320-JM(BLM), 2019 WL 4416132, at *13 n.7 (S.D.

28  Cal. Sept. 16, 2019) (overruling a burden objection and finding that the objecting party failed to

LCR 37 JOINT SUBMISSION RE DOCS
WITHHELD BY GOV'T AS NON-RESP - 18      **NEWMAN DU WORS LLP**
[Case No.: 2:17-cv-01297-MJP]

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

"allege (1) specific facts, which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence," and "(2) sufficient detail regarding the time, money and procedures required to comply with the purportedly improper request") (quoting *Daisy Trust v. JP Morgan Chase Bank., N.A.*, No. 2:13-cv-00966-RCJ-VCF, 2017 WL 3037427, at *2 (D. Nev. July 18, 2017)).

**E.      The Government's mandamus petition does not apply here.**

The Government once again confuses the issue and asserts that certain of these withheld documents are subject to the mandamus petition pending before the Ninth Circuit. Not one of the non-responsive withheld documents are withheld for privilege. The Government has never claimed privilege over these documents, nor has it provided any associated privilege log information. The Government has asserted DPP over other documents in these families—by the Government's own admission here, sometimes improperly. The Government strangely acknowledges in its submission that it is withholding an email "for deliberative process privilege that postdates the Panel's deliberations. . . ." Government Submission, *supra*, at Section I.B. As DPP does not protect post-deliberation communications, the Government should produce the withheld email immediately. Aside from this admission, the documents *actually* subject to DPP are not at issue here. Thus, the issues in the mandamus petition have no bearing on this dispute, the requested documents are not subject to the Ninth Circuit's administrative stay, and Plaintiffs need not establish the *Warner* factors over these documents.

**CONCLUSION**

Because each of the documents withheld for non-responsiveness is a member of an otherwise responsive family and therefore responsive, because thousands of the documents bear independent indicia of responsiveness, and because the Government has failed to assert any detail regarding the supposed burden of reproduction, Plaintiffs request the Court order the Government to produce all documents previously withheld and produced to Plaintiffs only as slipsheets bearing the text "Withheld for Non Responsiveness."

LCR 37 JOINT SUBMISSION RE DOCS
WITHHELD BY GOV'T AS NON-RESP - 19
[Case No.: 2:17-cv-01297-MJP]

**NEWMAN DU WORS LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATION**

I certify that the full response by the responding party has been included in this submission, and that prior to making this submission the parties conferred to attempt to resolve this discovery dispute in accordance with LCR 37(a).

Respectfully submitted, February 28, 2020

**NEWMAN DU WORS LLP**

s/ Rachel Horvitz
Derek A. Newman, WSBA No. 26967
*dn@newmanlaw.com*
Jason B. Sykes, WSBA No. 44369
*jason@newmanlaw.com*
Rachel Horvitz, WSBA No. 52987
*rachel@newmanlaw.com*
2101 Fourth Ave., Ste. 1500
Seattle, WA 98121
(206) 274-2800

**LAMDBA LEGAL DEFENSE AND
EDUCATION FUND, INC.**
Tara Borelli, WSBA No. 36759
*tborelli@lambdalegal.org*
Camilla B. Taylor (admitted pro hac vice)
Peter C. Renn (admitted pro hac vice)
Sasha Buchert (admitted pro hac vice)
Kara Ingelhart (admitted pro hac vice)
Carl Charles (admitted pro hac vice)
Paul D. Castillo (admitted pro hac vice)

**OUTSERVE-SLDN, INC. N/K/A MODERN
MILITARY ASSOCIATION OF AMERICA**
Peter Perkowski (admitted pro hac vice)

**KIRKLAND & ELLIS LLP**
James F. Hurst, P.C. (admitted pro hac vice)
Steve Patton (admitted pro hac vice)
Jordan M. Heinz (admitted pro hac vice)
Vanessa Barsanti (admitted pro hac vice)
Daniel I. Siegfried (admitted pro hac vice)
Sam Ikard (admitted pro hac vice)

*Counsel for Plaintiffs*

LCR 37 JOINT SUBMISSION RE DOCS
WITHHELD BY GOV'T AS NON-RESP - 20
[Case No.: 2:17-cv-01297-MJP]

**NEWMAN DU WORS LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1

**CERTIFICATE OF SERVICE**

2      The undersigned certifies under penalty of perjury under the laws of the United States of

3  America and the laws of the State of Washington that all participants in the case are registered

4  CM/ECF users and that service of the foregoing documents will be accomplished by the

5  CM/ECF system on February 28, 2020.

6

7                              s/ Rachel Horvitz
                               _____
8                              Rachel Horvitz, WSBA No. 52987
                               *rachel@newmanlaw.com*
9                              2101 Fourth Ave., Ste. 1500
                               Seattle, WA 98121
10                             (206) 274-2800

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28