|  |  |
|---|---|
| UNITED STATES DISTRICT COURT<br>WESTERN DISTRICT OF WASHINGTON<br>AT SEATTLE | |
| RYAN KARNOSKI, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>DONALD J TRUMP, et al.,<br><br>  Defendants. | CASE NO. C17-1297 MJP<br><br>ORDER ON LCR 37 JOINT DISCOVERY MOTION TO COMPEL DEFENDANTS TO SEEK AND PRODUCE INFORMATION REASONABLY AVAILABLE AND WITHIN THEIR CONTROL |

The above-entitled Court, having received and reviewed the LCR 37 Joint Submission Regarding the State of Washington's discovery requests (Dkt. No. 482), along with relevant portions of the record, rules as follows:

IT IS ORDERED that Washington's Motion to Compel Defendants to Seek and Produce Information Reasonably Available and Within Their Control is GRANTED:

(1) Defendants must fully respond to the State of Washington's discovery requests by conducting a reasonable and comprehensive search for responsive information. If no such information exists, Defendants must provide amended discovery responses stating that "no such information exists" along with a declaration from Defendants'

       counsel describing Defendants' search criteria and declarations from each document custodian searched providing that no such responsive material exists.

  (2) Alternatively, as proposed by Washington, Defendants may stipulate that they will limit their evidence at trial on the issues of lethality, deployability, unit cohesion, and budget constraints to the information they identified in this motion as responsive to Washington's discovery requests. (Id. at 25 n. 12.)

  (3) Defendants are to produce the requested information or file the proposed stipulation by **May 8, 2020**.

## Discussion

In this LCR 37 Joint Submission, the State of Washington moves to compel Defendants to provide a complete response to Washington's discovery requests—specifically, Interrogatories, Nos. 9 and 12 and Requests for Production, Nos. 9, 12, 14-17 and 20—a subset of the 18 interrogatories and 21 requests for production Washington served on Defendants on July 5, 2019. Washington's discovery requests focus on information that would establish the number of transgender Washingtonians who have been affected by the military's policies with respect to open service by transgender members, both leading up to and following Defendants' current ban on open service. (Dkt. No. 482 at 2.) In response to Washington's discovery requests, Defendants provided answers to 12 interrogatories and have produced 36 documents, but answered many of the requests by asserting that they "have identified no material responsive to Plaintiff-Intervenor's request" or that they do not "track" the requested information. (Dkt. No. 482 at 7-9; Dkt. No. 483, Declaration of Chalia Stallings-Ala'ilima ("Stallings-Ala'ilima Decl."), ¶ 2, Ex. A at 25-31, 33-34; ¶ 3, Ex. B at 26-31, 34-37.)

1   Arguing that Defendants' limited production and ambiguous responses make it
2   impossible to determine whether Defendants conducted inadequate searches or if the requested
3   information actually does not exist, Washington now asks the Court to compel Defendants to
4   fully respond to these discovery requests by conducting additional searches or stating clearly that
5   no additional information exists. (Dkt. No. 482 at 14.) Where no responsive information exists,
6   Washington asks the Court to compel Defendants to submit sworn affidavits describing their
7   searches and the negative outcomes for each. (Id.) Defendants make two arguments in response:
8   (1) The Court may only review material considered by the Panel of Experts, so the additional
9   information Washington requests is irrelevant, and (2) Defendants have already fully complied
10  with their discovery obligations. (Dkt. No. 482 at 14-24.) The Court finds neither of
11  Defendants' arguments persuasive.
12  Defendants first argue, as they have before, that Washington is not entitled to further
13  information because the Ninth Circuit was clear in previously granting the writ of mandamus that
14  "the reasonableness of the 2018 Policy must be evaluated on the record supporting that decision
15  and with the appropriate deference due to a proffered military decision." (Dkt. No. 482 at 15
16  (citing Karnoski v. Trump, 926 F.3d 1180, 1207 (9th Cir. 2019)).) According to Defendants,
17  "Washington's insistence on extra-record discovery would essentially create a new record and
18  invite the Court to make its own determination of the appropriate policy." (Dkt. No. 482 at 16.)
19  But as the Court recently explained, Defendants confuse the evidentiary standard at trial
20  with the broader discovery standard, which allows parties to obtain discovery regarding any
21  nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26. Under
22  Rule 26, the concept of relevance "'has been construed broadly to encompass any matter that
23  bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may
24

be in the case.'" Olberg v. Allstate Ins. Co., No. C18-0573-JCC, 2019 WL 6033699, at *2 (W.D. Wash. Nov. 14, 2019) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)); (see also Dkt. No. 485 at 3-5 (explaining that the standard for evaluating the record at trial is not before the Court on a discovery motion).)

Here, Plaintiffs seek information that would establish the number of transgender Washingtonians who have been affected by the military's policies with respect to open service by transgender members, both leading up to and following Defendants' current ban on open service. (Dkt. No. 482 at 2.) As Washington argues, this information is relevant to the Court's review of Defendants' ban on transgender military service under the heightened scrutiny standard identified by the Ninth Circuit. (Dkt. No. 482 at 10.) This standard requires the Court to review Defendants' process and intent, and whether the ban significantly furthers important government interests. (Dkt. No. 482 at 10 (citing Karnoski, 926 F.3d at 1199-1200).) The Court finds that Washington's requests seek information that is relevant to that inquiry.

Defendants next argue that they have produced all responsive material in their possession. In response, Washington points to several instances where it appears Defendants failed to conduct adequate searches. For example, in response to Interrogatory No. 9, asking Defendants to identify the number of transgender Washington service members, Defendants objected that they "do not track service members or applicants by gender identity and [have] no means of searching for the requested information as it pertains to 'transgender Washington service members.'" (Stallings-Ala'ilima Decl., Ex. A at 25-26.) Yet in a related case, Doe 2 v. Esper, No. CV 17-1597 (CKK), 2019 WL 4394842 (D.D.C. Sept. 13, 2019), Defendants produced a spreadsheet showing at least eight transgender service members stationed in Washington at Fort Lewis and Naval Base Kitsap, indicating that Defendants do track such

1   information.  (Stallings-Ala'ilima Decl., ¶ 6, Ex. D.)  Further, Washington contends that during

2   the Parties' meet and confer on March 8, 2020, Defendants' represented that they were aware of

3   approximately 1,500 service members nationwide with a diagnosis of gender dysphoria, further

4   evidence that Defendants track this information.  (Id., ¶ 5.)

5        Defendants also frequently responded to requests by stating that they have "identified no

6   material responsive to Plaintiff-Intervenor's request," creating confusion about whether

7   Defendants did not search for the information or whether responsive documents actually do not

8   exist.  (Dkt. No. 482 at 7-9; Stallings-Ala'ilima Decl., ¶ 2, Ex. A at 25-31, 33-34; ¶ 3, Ex. B at

9   26-31, 34-37.)  Defendants' responses, coupled with evidence that they failed to produce certain

10  non-privileged, requested documents, demonstrate that they have not complied with their

11  discovery obligations.  See, e.g., Trotsky v. Travelers Indem. Co., No. C11-2144-JCC, 2013 WL

12  12116153, at *3 (W.D. Wash. May 8, 2013) (finding that defendants could not respond to

13  discovery requests by asserting that "no such documents exist" where there was evidence to the

14  contrary).  The Court therefore GRANTS Washington's motion and ORDERS Defendants to

15  fully and adequately respond to Washington's discovery requests.

**Conclusion**

     Finding that Washington's discovery requests seek relevant information and Defendants have failed to adequately respond, the Court GRANTS Washington's motion and ORDERS the Defendants to adequately respond to Washington's requests by diligently searching for and producing the requested information.  Where no such information exists, Defendants must provide amended discovery responses stating that "no such information exists" along with a declaration from Defendants' counsel describing Defendants' search criteria and declarations from each document custodian searched providing that no such responsive material exists.

Alternatively, as proposed by Washington, Defendants may stipulate that they will limit their evidence at trial on the issues of lethality, deployability, unit cohesion, and budget constraints to the information they identified in this motion as responsive to Washington's discovery requests.

Defendants shall produce the requested information or file their stipulation by **May 8, 2020.**

The clerk is ordered to provide copies of this order to all counsel.

Dated April 20, 2020.

Marsha J. Pechman
Senior United States District Judge