UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RYAN KARNOSKI, et al., | CASE NO. C17-1297 MJP |
| Plaintiffs, | ORDER RE JUNE 23, 2020 STATUS CONFERENCE; |
| v. | JOINT SUBMISSION RE *IN CAMERA* REVIEW OF 350 DOCUMENT SAMPLING OF DEFENDANTS' DELIBERATIVE PROCESS PRIVILEGE ASSERTIONS (DKT. NOS. 497, 514) |
| DONALD J TRUMP, et al., | |
| Defendants. | |

THIS MATTER comes before the Court upon the Parties' Joint Submission Regarding Defendants' Deliberative Process Privilege Claims (Dkt. No. 497), and June Joint Status Report (Dkt. No. 534). Having reviewed the 350 documents submitted pursuant to the Court's Order on the Joint Submission, reviewed the Parties' Joint Status Report, and having heard from the Parties during the June 23, 2020 status conference (Dkt. No. 535), the Court rules as follows:

(1) Defendants are ORDERED to produce a randomized selection of 500 additional

documents that were withheld solely on the basis of the deliberative process privilege

by <u>July 1, 2020</u>.  The Parties must meet and confer before selecting the 500 documents.  If they cannot agree on mutual search terms, the Plaintiffs are to select random documents and the Parties are to follow the procedure outlined in the Court's Order on the Parties' Joint Submission re Defendants' Deliberative Process Privilege Claims.  (Dkt. No. 514 at 1-2.)

(2) Also by <u>July 1, 2020</u>, the Parties are ORDERED to answer the Court's questions, *infra*, regarding the 350 documents previously submitted for *in camera* review and provide any additional information regarding the decisional timeline described in <u>Karnoski v. Trump</u>, 926 F.3d 1180, 1188-1198 (9th Cir. 2019), in order to aid the Court's analysis of whether Defendants have asserted the deliberative process privilege over documents that are predecisional; and

(3) The Court finds that its Order regarding the Joint Submission on Defendants' motion for a protective order regarding Plaintiffs' Rule 30(b)(6) deposition topics (Dkt. No. 519), applies to any assertion of the deliberative process privilege during a deposition. Defendants may instruct a witness not to answer where the testimony is protected by the privilege but must make a full explanation of the basis of their objection on the record.  Should the Court find that Defendants' objection is unwarranted, Defendants will be required to produce the witness again at their own expense.

## Discussion

### A.  Documents Submitted for *in camera* Review

On May 4, 2020, Plaintiffs moved to compel Defendants to produce one percent of the 35,000 documents Defendants are withholding solely on the basis of the deliberative process privilege for *in camera* review, arguing that Defendants had "misapplied the privilege in many

1    instances." (Dkt. No. 497 at 4.)  On May 14, 2020, the Court granted the Plaintiffs' motion and

2    ordered Defendants to produce 350 documents randomly selected through the document review

3    platform, Relativity, and a corresponding privilege log by May 26, 2020.  (Dkt. No. 514.)  On

4    that date, Defendants produced only 196 documents, instead completing their production by June

5    5, 2020.  (Dkt. Nos. 524, 529.)  Defendants were then directed to file an amended privilege log

6    that included the Government's PrivWithhold page number range for each document, in line with

7    Defendants' previous privilege logs.  (Dkt. No. 532.)  Defendants filed an updated privilege log

8    on June 18, 2020.  (Dkt. No. 533.)

9        The Court has now reviewed the documents submitted for *in camera* review and finds

10   that Defendants have inappropriately asserted the privilege over many of the submitted

11   documents.  For other documents, the Court is unable to ascertain whether the privilege was

12   appropriately asserted without additional information.  To assess the extent of Defendants'

13   assertion of the privilege and to provide guidance to Defendants on any patterns of erroneous

14   assertion of the privilege, the Court ORDERS Defendants to produce an additional 500 randomly

15   selected documents that were withheld solely on the basis of the deliberative process privilege

16   for *in camera* review.

17       Further, the Parties shall (1) answer the following questions and (2) provide any

18   additional information the Parties find necessary to supplement the decisional timeline listed

19   below as it relates to whether the withheld documents are to be considered predecisional within

20   the framework of the deliberative process privilege.

21       1.  Questions regarding document designations

22       During the Court's preliminary assessment of the 350 documents submitted for *in camera*

23   review, it noted a number of documents stamped with "Draft Deliberative Document" or

24

JOINT SUBMISSION RE IN CAMERA REVIEW OF 350 DOCUMENT SAMPLING OF DEFENDANTS'
DELIBERATIVE PROCESS PRIVILEGE ASSERTIONS (DKT. NOS. 497, 514) - 3

"Draft/Working Papers/Pre-Decisional/For Official Use."  It appears that this marking was done by the military.  (<u>See, e.g.</u>, document beginning at PrivWithhold 3186.)  This is to be distinguished from the PrivWithold marking on the documents.

       Defendants:

              <u>Question 1</u>: How did the markings get on the document?

              <u>Question 2</u>: Who applied the markings and which standard was used by the entity doing the marking?

              <u>Question 3</u>: Is there a formal military policy for applying such markings on documents? If so, attach a copy of that policy in your response to this Order.

              <u>Question 4</u>: What inference, if any, should the Court take from the markings?

              <u>Question 5</u>: What inference, if any, should the Court take from the absence of any such marking?

       Plaintiffs: What are your views, if any, on these markings?

       2.  <u>Policy timeline</u>

       In evaluating the Government's assertion of the deliberative process privilege, the Court must determine whether each submitted document is predecisional, meaning that "it was generated before the adoption of an agency's policy or decision."  <u>F.T.C. v. Warner Commc'ns Inc.</u>, 742 F.2d 1156, 1161 (9th Cir. 1984).  The following timeline was set forth by the Ninth Circuit in <u>Karnoski</u>, 926 at 1188-98.

       •  In 2015, then-Secretary of Defense Ashton Carter created a working group to study the implications of transgender service in the military.  <u>Id.</u> at 1188.

- In June 2016 Secretary Carter ordered the armed forces to adopt a new policy allowing transgender individuals to serve openly in the military.[1] Id.

- On June 30, 2017 then-Secretary of Defense James Mattis deferred accessing transgender applicants into the military until January 1, 2018. Id.

- On July 26, 2017, President Trump announced a ban on transgender service in the military. Id.

- On August 25, 2017 President Trump followed his Twitter Announcement with a Presidential Memorandum directing the Secretary of Defense, and the Secretary of Homeland Security "to return to the longstanding policy and practice on military service by transgender individuals that was in place prior to June 2016" and directing the Secretary of Defense, in consultation with the Secretary of Homeland Security to submit "a plan for implementing" the general policy and specific directives of the Memorandum. Id. at 1189.

- On September 14, 2017 Secretary Mattis acknowledged receipt of the Presidential Memorandum, issued "Interim Guidance" providing that the pre-2016 policies prohibiting the accession of transgender individuals into the military would remain in effect and no new sex reassignment surgical procedures for military personnel would be permitted after March 22, 2018. Id. at 1190. Secretary Mattis also directed the Deputy Secretary of Defense and the Vice Chairman of the Joint Chiefs of Staff to

---

[1] In its Order re the Government's Withheld Communications With Third Parties, the Court wrote that based upon emails reviewed *in camera*, the Government and RAND consultants knew by at least February 6, 2016 that the RAND Report and Carter policy would be made public, but if the Government had information that indicated an earlier or later date, it was to file the information by May 20, 2020. (Dkt. No. 509 n. 1.) To date, the Government has not filed any additional information.

lead the DoD in developing an Implementation Plan, to be supported by a panel of experts drawn from the DoD and DHS.  Id.

- In February 2018 the DoD produced its Report and Recommendation based on the Panel's work.  Id. at 1191.

- On February 22, 2018 Secretary Mattis forwarded the Report to the President accompanied by a memorandum that made several policy recommendations.  Id.

- On March 23, 2018 the President accepted Secretary Mattis's recommendations, revoked the 2017 Presidential Memorandum, and authorized the implementation of "any appropriate policies concerning military service by transgender individuals."  Id. at 1192.

To aid the Court with its analysis, the Parties are directed to provide any necessary supplemental information regarding this timeline, as well as their positions on the dates that the Carter policy and Mattis policy should be considered adopted.[2]  To highlight what the Court is examining, for example, PrivWithold document 3782 is an unclassified email chain dated December 8-10, 2014.  The Government has claimed it as privileged under the deliberative process privilege, notwithstanding, as indicated above, that the Secretary of Defense did not create a working group to study the implications of transgender service until much later in 2015.  Why should this be considered predecisional for purposes of the privilege?  Similarly, as one of several examples, PrivWithold document 4765-4769 is an email chain dated August 8, 2016, and then forwarded again on November 9, 2016.  Why would this be considered

---

[2] Earlier today, the Government provided the Court with a "Statement of Undisputed Material Facts" that was filed in the related case, Doe v. Esper, 20-cv-10530 (D. Mass) (Dkt. No. 36-17).  The Government may rely on this statement to supplement the timeline reproduced above, but the Court still seeks the Government's position on the dates the Carter and Mattis policies should be considered adopted for purposes of analyzing what is predecisional as it relates to the deliberative process privilege.

1  predecisional, in light of the July 2016 Carter policy adoption, which preceded the Mattis policy

2  group formation?

3  **B.  Privilege Assertions During Depositions**

4       On May 8, 2020, Defendants moved for a protective order to limit Plaintiffs' Rule

5  30(b)(6) topics.  The Court denied Defendants' motion for a protective order, finding that

6  Plaintiffs' Rule 30(b)(6) deposition topics are within the scope of the litigation, but the Court

7  held that Defendants are permitted to instruct their witnesses not to answer questions implicated

8  by the Ninth Circuit's administrative stay covering Plaintiffs' Requests for Production Nos. 15

9  and 29.  (Dkt. Nos. 415, 519.)  Defendants now "seek clarification as to what procedures the

10  Court intends for Defendants to follow when asserting the deliberative process privilege in a

11  deposition when the topic does not fall under Plaintiffs' Requests for Production 15 or 29."

12  (Dkt. No. 534 at 3.)

13       The Court finds that the same procedures outlined in its Order on Defendants' motion for

14  a protective order (Dkt. No. 519), apply to all assertions of the deliberative process privilege.

15  Defendants may instruct their witnesses not to answer questions that would elicit testimony

16  protected by the privilege but must state the basis for their objection on the record in detail.  If

17  the Court rules that the Plaintiffs have overcome the deliberative process privilege or Defendants

18  have misapplied the privilege, Defendants will be required to provide dates for their witnesses'

19  availability within 10 days of any ruling and will bear the cost of these additional depositions,

20  including travel costs and expenses for Plaintiffs' counsel.

21  **Conclusion**

22       In conclusion, in order to further the Court's analysis of the Government's deliberative

23  process privilege assertions, by July 1, 2020:

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

(1) Defendants are ORDERED to produce for *in camera* review a randomized selection of 500 additional documents that were withheld solely on the basis of the deliberative process privilege;

(2) Both Parties are ORDERED to answer the Court's questions regarding the 350 documents previously submitted for *in camera* review and provide any necessary additional information regarding the decisional timeline provided.

Further, the Court finds that during depositions Defendants may instruct their witnesses not to answer where the testimony is protected by the deliberative process privilege but Defendants must state the basis for their objection on the record in detail.  Should the Court find that Defendants' objection is unwarranted, Defendants will be required to produce the witness again at their own expense.

The clerk is ordered to provide copies of this order to all counsel.

Dated June 24, 2020.

Marsha J. Pechman
United States Senior District Judge