UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RYAN KARNOSKI, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, et al.,<br><br>    Defendants. | CASE NO. C17-1297 MJP<br><br>ORDER DENYING MOTION TO STAY THE COURT'S JULY 15, 2020 ORDER (DKT. NO. 545) |

THIS MATTER comes before the Court on Defendants' Motion to Stay Compliance with the Court's Discovery Order. (Dkt. No. 547.) Having reviewed the Motion, the Response (Dkt. No. 553), the Reply (Dkt. No. 560), and the related record, the Court DENIES the Motion.

**Background**

Once again the Court is required to discuss the Government's assertion of the Deliberative Process Privilege ("DPP") over tens of thousands of documents. This particular discovery dispute is now more than two years old and has been the subject of dozens of previous motions, Orders, and the Government's two petitions for writs of mandamus with the Ninth Circuit. To date, the Government continues to withhold 25,000 documents solely on the basis of

the DPP and over 40,000 documents based on the DPP in combination with other privileges. (See Dkt. No. 547 at 2 n. 1.)

1. Procedural Background

The Court first addressed Defendants' DPP claims on July 27, 2018, when it granted Plaintiffs' first Motion to Compel Discovery Withheld Under the Deliberative Process Privilege. (Dkt. No. 245; Dkt. No. 299). In its Order, the Court noted that while several other courts have recognized that the privilege does not apply to cases involving claims of governmental misconduct or where the government's intent is at issue, the application of the privilege in cases involving these claims "appears to be an open question in the Ninth Circuit." Vietnam Veterans of Am. v. CIA, 2011 WL 4635139, at *10 (N.D. Cal. Oct. 5, 2011). The Court therefore evaluated Defendants' DPP claims under the balancing test set forth in FTC v. Warner Commc'ns Inc., 742 F.2d 1156, 1161 (9th Cir. 1984), which determines whether Plaintiffs are able to overcome a properly asserted DPP claim. The Court ordered Defendants to produce the requested documents.

In response, the Government filed a Petition for a Writ of Mandamus with the Ninth Circuit. (See Dkt. No. 302.) Almost eleven months later, the Ninth Circuit issued a Writ of Mandamus, concluding, in part, that the record was insufficient to establish the relevance of the documents as balanced against the possible "chilling effect" of disclosure. Karnoski v. Trump, 926 F.3d 1180 (9th Cir. 2019). The Ninth Circuit suggested that on remand, when evaluating Defendants' DPP claims, this Court should "consider classes of documents separately when appropriate" and, "[i]f Defendants persuasively argue that a more granular analysis would be proper, [the Court] should undertake it." Id.

On remand, Plaintiffs filed a second Motion to Compel Documents Withheld Under the Deliberative Process Privilege. (Dkt. No. 364.) After evaluating groupings of contested documents organized by individual Requests for Production, the Court ordered Defendants to produce documents responsive to Plaintiffs' Request for Production No. 15, which seeks "[a]ll documents or communications relating to Secretary of Defense Ash Carter's Directive Type Memo 16-005," and Request No. 29, which seeks "Documents or Communications relating or referring to the February 2018 Department of Defense Report and Recommendations on Military Service by Transgender Persons." (Dkt. No. 398 at 2-3; Dkt. No. 402 at 34:19-20.)

Following the Court's ruling, Defendants filed their second Petition for a Writ of Mandamus, asking that the Ninth Circuit:

> [R]everse the district court's orders of December 18, 2019, February 3, 2020, and February 7, 2020, and order that plaintiffs are not entitled to any further deliberative documents from the two requests for production (RFPs) at issue in these orders—RFP 29 and RFP 15—given plaintiffs' inadequate showing of need under the proper standard for overcoming the deliberative process privilege.

(Dkt. No. 414, Ex. 1 at 11.) On February 12, 2020, the Ninth Circuit granted Defendants' request for a temporary administrative stay of the Court's December 18, 2019, February 3, 2020, and February 7, 2020 orders challenged in Defendants' petition. (Dkt. No. 415.) That temporary stay remains in effect today—six months after its entry—although Plaintiffs recently asked for clarification of the scope of the stay, noting that it was entered before any briefing had been submitted and can no longer be considered temporary. (Dkt. No. 561, Ex. 1.)

Following the Government's Petition, the Circuit took the unusual step of inviting the Court to address the Petition; the Court filed its response on March 5, 2020. (Dkt. No. 416.) Oral argument on Defendants' Petition was recently set for October 14, 2020. (Dkt. No. 559.)

//

//

### 2. Problems with the Government's Privilege Assertions

Until March 2020, the Court's process for analyzing Defendants' privilege claims was based on the assumption that the Government properly asserted the DPP over each of the 35,000 withheld documents (now reduced to 25,000) and that the relevant question was therefore whether the Plaintiffs were able to overcome the privilege under the balancing test set forth in Warner.

But in March, upon two motions to compel brought by Plaintiffs, the Court ordered the Government to submit documents for *in camera* review for the first time and these submissions raised serious concerns about the Government's review process and privilege assertions. First, Plaintiffs moved to compel the Government's withheld communications with third parties, asking the Court to conduct an *in camera* review of the Government's DPP and attorney-client privilege claims over communications with 487 third party custodians from the Government's privilege logs. (Dkt. No. 440.) The Government objected on the grounds that its communications with those third parties are shielded by the "consultant corollary" doctrine. (Id. at 20-22.) But when the Court ordered the Government to submit the privilege-claimed documents for *in camera* review, the Government produced communications from only 14 of the 487 persons identified by Plaintiffs, conceding that there was no colorable privilege claim for the remaining 473 custodians. (See Dkt. Nos. 461, 509.) Further, of the 1,500 pages of documents the Government did submit to the Court, only one document was arguably privileged. (Dkt. No. 509 at 9.) One particularly egregious example of the Government's over-assertion was a copy of the publicly available RAND Report indicating it could be purchased for $22.50, but which the Government had marked as subject to the DPP. (Id. at 4.)

1        Plaintiffs' second motion to compel in March sought documents that are part of an
2 otherwise responsive "family group" of produced material but were withheld on the grounds of
3 "non-responsiveness"; as an example, the Government withheld attachments to emails as
4 "non-responsive" where the email itself was produced.  (Dkt. No. 449.)  After the Court granted
5 Plaintiffs' Motion, the Government informed the Court that while the Government had not
6 asserted any privilege over these documents or listed them on a privilege log, the Government
7 was now claiming the documents were protected from disclosure by the attorney-client privilege,
8 the attorney work product privilege, the DPP, and the executive privilege.  (Dkt. No. 463 at 2.)
9 The Court ordered Defendants to submit the subset of documents that Defendants believed to be
10 privileged to the Court for *in camera* review along with a privilege log.  (Dkt. No. 464.)  After
11 reviewing the approximately 1,700 pages the Government submitted, the Court found that for
12 most of these documents—which included summaries of press accounts prepared by foreign
13 governments, responses to Congressional questions, and non-privileged communications that
14 were simply sent to attorneys—the Government's privilege assertions strayed far outside the
15 bounds of the claimed privileges.  (Dkt. No. 522 at 5.)
16        Following these rulings, on May 4, 2020 Plaintiffs brought a motion to compel the
17 Government to submit a random sample of 350 documents for *in camera* review, one percent of
18 the total documents the Government was still withholding solely on the basis of the deliberative
19 process privilege.  (Dkt. No. 497.)  It seemed evident that before the Court could apply the
20 balancing test set out in the Ninth Circuit's decision, as directed by Warner, 742 F.2d at 1161, it
21 first had to determine if the documents at issue even qualified as being subject to the DPP, rather
22 than simply accepting the Government's privilege assertions.  To qualify for the DPP, "a
23 document 'must be *both* (1) 'predecisional' or 'antecedent to the adoption of agency policy' and
24

(2) 'deliberative,' meaning 'it must actually be related to the process by which policies are formulated.'" National Wildlife Federation v. U.S. Forest Service, 861 F. 2d 1114, 1117 (9th Cir. 1988) (citation omitted, emphasis in original). In its *in camera* review of the Government's DPP claims, the Court found that many documents were neither predecisional nor deliberative.

The Court granted Plaintiffs' motion and after reviewing the Government's submission of 350 randomly selected documents withheld as privileged under the DPP, the Court ordered the Government to submit an additional 500 randomly selected documents to the Court for *in camera* review in order to further determine the scope of the Government's privilege claims. (Dkt. No. 545.) Yet before submitting the set of 500 documents, the Government itself determined that 90 of those documents (or 18% of the total) were not subject to a proper DPP claim. (Dkt. No. 542 n. 1.)

After reviewing each of the 850 documents individually and applying the two-step test set out in National Wildlife Federation, the Court concluded that nearly 90% were not privileged. (Dkt. No. 545 at 5.) The Court also noted that the Government failed to segregate portions of documents which may be partially protected by the DPP from those that are not, despite its obligation to do so. See Karnoski, 926 F.3d at 1204 (quoting Army Times Publ'g Co. v. Dep't of Air Force, 998 F.2d 1067, 1071 (D.C. Cir. 1993)) ("Unlike the presidential communications privilege, the deliberative process privilege does not protect documents in their entirety; if the government can segregate disclosed non-privileged factual information within a document, it must.").

In sum, in its four submissions for *in camera* review, the Government has displayed largescale and pervasive failures in its discovery process, leaving the Court with little, if any confidence that the Government is properly asserting the DPP privilege over the remaining

1  withheld documents.  Further, the Government's lawyers recently admitted that although they
2  have been strenuously arguing against the disclosure of these documents for years, they have not
3  personally reviewed the withheld documents, making the Court's "granular" review all the more
4  difficult where arguments about the documents are often made in general, hypothetical terms.
5  (Dkt. No. 548.)

6        3.  <u>July 15, 2020 Order</u>

7      Based on the Court's growing concerns that the Government has been haphazardly and
8  mistakenly labelling documents as privileged without proper review, the age of this particular
9  discovery dispute, and in light of the enormous task remaining of reviewing the 25,000 to 40,000
10 withheld documents over which the Government has claimed the DPP, on July 15, 2020 the
11 Court outlined a discovery management tool that would speed the Court's review going forward.
12 (Dkt. No. 545.)  Defendants were ordered to review their list of documents withheld solely on
13 the basis of the DPP and apply the temporal filter of July 13, 2015 through June 30, 2016 and
14 September 14, 2017 through January 11, 2018, the timeframes that the Carter and Mattis Policies
15 were being considered, respectively.  (<u>Id.</u> at 2.)  This timeframe was based on the Court's review
16 of the relevant record, the Ninth Circuit's discussion in <u>Karnoski</u>, 926 at 1188-98, and the
17 Parties' answers to questions posed by the Court about the two Policies.  (Dkt. Nos. 536,
18 540-42).

19     The Court concluded that going forward, documents outside this timeframe are
20 presumptively not privileged under the DPP because they are not predecisional, "but if it turns
21 out that some documents falling outside the predecisional and post-decisional date ranges are
22 properly the subject of DPP, specific documents can be brought to the Court's attention on
23 subsequent motion." (Dkt. No. 545 at 6-7.)  Defendants were also ordered to produce documents
24

from their 850-document submission that were reviewed *in camera* and determined not to be privileged. (Dkt. No. 545 at 11.) The Order specifically exempted documents subject to the stay in the pending Mandamus Petition.

On July 20, 2020 the Government brought the current Motion to Stay the Court's Jul 15, 2020 Order. (Dkt. No. 547.) In response, Plaintiffs propose that the Court make two modifications to its Order that would allow the Government to submit privileged documents that fall outside the timeframes the Court has adopted for *in camera* review without motion practice. (Dkt. No. 553 at 11.) For the reasons discussed below, the Court DENIES the Government's Motion and adopts Plaintiffs' proposed modifications to the Court's July 15, 2020 Order.

**Discussion**

A stay pending appeal "is an intrusion into the ordinary processes of administration and judicial review." Nken v. Holder, 556 U.S. 418, 427 (2009) (internal quotation marks and citation omitted). As such, it is "not a matter of right, even if irreparable injury might otherwise result." Id. at 433 (citation omitted). "It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." Id. (internal quotation marks and citation omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." Id. at 433-34.

In determining whether to grant a stay, the Court considers: (1) whether Defendants have made a strong showing that they are likely to succeed on the merits of their Mandamus Petition; (2) whether Defendants will be irreparably injured absent a stay; (3) whether a stay will substantially injure Plaintiffs; and (4) whether the public interest supports a stay. Id. at 434.

//

//

**A. Likelihood of Success on the Merits**

The Government first argues that the Court's July 15 Order is likely to be contrary to the Ninth Circuit's ruling on the Governments' pending mandamus petition because: (1) the Order would require the production of a large trove of documents, and is therefore not a "granular" discovery order; (2) the Order misapplies the predecisional requirement; and (3) the Court has selected timeframes that "are not congruent with the facts of this case." (Dkt. No. 547 at 7-8.)

As to the first objection, the Order challenged by the Government specifically carves out the documents subject to the pending Mandamus Petition. Moreover, the pending Mandamus Petition is unrelated to the Court's July 15, 2020 Order. The Government's pending mandamus petition requests that the Ninth Circuit "reverse the district court's orders of December 18, 2019, February 3, 2020, and February 7, 2020 . . . given [P]laintiffs' inadequate showing of need under the proper standard <u>for overcoming the deliberative process privilege</u>." (Dkt. No. 414, Ex. 1 at 11 (emphasis added).) The challenged Orders did not evaluate whether the Government properly asserted the DPP in the first place, but assumed the withheld documents met the threshold of being predecisional and deliberative. (Dkt. No. 545 at 11.) Subsequent *in camera* review showed the error of the Court's assumption. Finally, the Government fails to explain why the Court's *in camera* document-by-document review of the Government's 850-document submission was not "granular," yet the Government resists producing these documents as well.

The Government's second and third objections relate to the time frame chosen as a discovery management tool to deal with the "predecisional requirement." As noted in the Court's Order, one DPP requirement is that it be "predecisional," so that the privilege applies "prior to the time the decision is made" and not to "communications made after the decision and designed to explain it." (Dkt. No. 545 at 4 (quoting <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S.

132, 151-52 (1975)).  In an attempt to get the Parties' views on the issues, the Court submitted written questions to the Parties and received responses.  From the Government's perspective, the time frame at issue began in March 2014, when certain individuals began to consider transgender policies, and continues through today.  (Dkt. No. 545 at 5.)  Although this is in keeping with the way it has handled its DPP designations, this approach reads out of existence the requirement that documents be predecisional.

The Government's objections that the Court's focus on the Carter and Mattis Policies could lead to mass disclosure of deliberative documents relating to other policies, is misplaced.  (Dkt. No. 547.)  To begin, the policies at issue here are the Carter and Mattis policies and the withheld documents are responsive to Plaintiffs' discovery requests, which were focused on the current litigation over these Policies.  (Dkt. No. 547 at 8.)  The Government does not explain why thousands of documents related to other policies would be responsive to discovery requests seeking "[a]ll Documents and Communications related to the [Mattis] Policy," for example.  (Dkt. No. 365, Ex. 1 at 3.)

More importantly, the Court's timeframes are a discovery management tool, meant to counteract the Government's troubling and apparently prevalent practice of mislabeling documents as privileged, while also aiding the Court's review of the 25,000 to 40,000 documents the Government continues to withhold under the DPP.  Should the Government determine that certain deliberative documents fall outside of the Court's proposed timeframes for presumptively privileged documents, the Court's Order makes clear that the Government can bring those individual documents to the Court's attention for an *in camera* review.  (Dkt. No. 545 at 11.)  This procedure also allows the Government another opportunity to review its privilege claims and to redact documents in accordance with its obligations, as outlined by the Ninth Circuit.

1         Finally, the Government's concerns about the timeframes chosen by the Court do not
2 warrant a stay, especially when mitigated by Plaintiffs' proposals.  The Government is
3 particularly concerned with producing drafts created by officials in the Office of the
4 Undersecretary of Defense, who were tasked with writing the Report and Recommendations
5 after the Panel concluded its work on January 11, 2018.  The Government has taken
6 contradictory positions on these documents.  On December 10, 2019, the Government's lead
7 attorney, Andrew Carmichael, told the Court that these "[d]rafts aren't deliberative process.
8 [These documents are] little subparts of the decision, tweaking how you're going to do a
9 particular sentence or how you're going to write a particular paragraph," and the documents were
10 created after "the final decision was made."  (Dkt. No. 402 at 27:24-25, 28:19, 30:18-19.)  But
11 the Government now argues that these drafts are not only predecisional but "some of the most
12 sensitive documents in this case."  (Dkt. No. 547 at 9.)  The Government's inconsistent position
13 on these documents notwithstanding, the Court finds that the Government's concerns can be
14 addressed by Plaintiffs' proposed modifications to the review process.
15         Plaintiffs suggest that the Court make clear in its order that the Government can submit
16 any documents it claims are privileged but outside the proposed timeframe for *in camera* review
17 without separate motion practice.  (Dkt. No. 553 at 11.)  Second, Plaintiffs suggest the
18 Government immediately submit for *in camera* review the documents dated January 11, 2018 to
19 February 22, 2018—representing the period between the Panel of Expert's recommendations and
20 the date the Department of Defense published the 44-page Report and Recommendation—so the
21 Court can assess whether these documents are predecisional and deliberative, as the Government
22 now argues.  (Id.)  The Court adopts both proposals.  The Government will be permitted to bring
23 any privileged document to the Court's attention for *in camera* review, without motion practice,
24

1 and shall submit any privileged documents from the timeframe January 11, 2018 to February 22,
2 2018 for the Court's *in camera* review by **August 28, 2020**.

### B. Likelihood of Irreparable Harm

The Government has also failed to demonstrate a likelihood of irreparable harm. The Government's assertion that the Court's July 15, 2020 Order "will result in the irretrievable disclosure of thousands of privileged documents relating to multiple military policies" ignores explicit protections in the Order, which allow specific documents to be brought to the Court's attention upon subsequent motion. (Dkt. No. 545 at 6-7; Dkt. No. 547 at 4.) Further, as discussed above, the Court adopts Plaintiffs' proposal that in lieu of production, the Government may submit any privileged document falling outside the Court's proposed timeframes for *in camera* review without motion practice. This procedure allows the Government an additional level of protection while acknowledging that the Government's troubling practice of over-asserting privileges means it is no longer entitled to the benefit of the doubt.

### C. Injury to Plaintiffs and Impact on the Public Interest

Finally, the Court finds that a stay would harm Plaintiffs and the public interest. While the Government guesses that the Ninth Circuit will issue its ruling on the second petition for a writ of mandamus "in short order," the Circuit recently set oral argument for October 14, 2020, eight months after the Government filed its petition. (Dkt. Nos. 547 at 5; 559.) Given this timing and the 11 months it took the Circuit to adjudicate the Government's first petition, the Court finds it unlikely that the Ninth Circuit will issue a ruling shortly. And as the Plaintiffs recently noted, under the current policy, "hundreds if not thousands of lives [] are directly affected every single day," preventing countless potential servicemembers from "fulfilling a dream they have had their entire lives." (Dkt. No. 565 at 24:14-16, 24:22-23.) "It is

heartbreaking to our plaintiffs every time we have to tell them there is a further delay in the case." (Id. at 25:7-9.)

Because this discovery dispute is years old and has caused numerous delays to the Court's case schedule, and because Plaintiffs and the public have a strong interest in the timely determination of the issues of national and constitutional importance involved in this matter, the Court finds that further delays would cause substantial injury to the Plaintiffs and negatively impact the public interest. (See, e.g., Dkt. No. 347 (Second Amended Complaint), ¶¶ 69, 79, 90; Dkt. No. 130, Declaration of Ryan Karnoski, ¶¶ 22-23.)

**Conclusion**

The Government has failed to demonstrate a likelihood of success on the merits or that irreparable injury will result in the absence of a stay. The Court therefore DENIES the Government's motion. Further, the Court adopts Plaintiffs' proposals, modifying the July 15, 2020 Order as follows:

(1) The Government may bring any privileged documents outside the timeframe of July 13, 2015 through June 30, 2016 and September 14, 2017 through January 11, 2018 to the Court for an *in camera* review without motion practice;

(2) The Government must submit all privileged documents from the time period January 11, 2018 to February 22, 2018 to the Court for *in camera* review by **August 28, 2020**.

The Government is ORDERED to comply with the Court's July 15, 2020 Order (Dkt. No. 545) with these additional modifications by **August 28, 2020**.

//

//

//

1 | The clerk is ordered to provide copies of this order to all counsel.

Dated August 17, 2020.

*[signature]*
Marsha J. Pechman
United States Senior District Judge